HARMEET K. DHILLON  
Assistant Attorney General  
Civil Rights Division  

TIMOTHY COURCHAINE  
United States Attorney  
District of Arizona  

ERIC V. NEFF  
Acting Chief, Voting Section  
Civil Rights Division  

BRITTANY E. BENNETT  
Trial Attorney, Voting Section  
Civil Rights Division  
U.S. Department of Justice  
4 Constitution Square, Room 8.141  
150 M Street NE  
Washington, D.C. 20002  
Telephone: (202) 704-5430  
Email: Brittany.Bennett@usdoj.gov  

Attorneys for Plaintiff, UNITED STATES OF AMERICA  

UNITED STATES DISTRICT COURT  
FOR THE DISTRICT OF ARIZONA  

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>ADRIAN FONTES, in his Official Capacity as Secretary of State for the State of Arizona,<br><br>Defendant. | CASE NO: 2:26-cv-00066-SMB<br><br>MEMORANDUM IN SUPPORT OF THE REQUEST FOR ORDER TO COMPEL PRODUCTION OF RECORDS PURSUANT TO 52 U.S.C. § 20701, *et seq.* |

**MEMORANDUM OF LAW**

1

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................5

II. BACKGROUND ................................................................................................6

   A.  Title III of the Civil Rights Act of 1960............................................. 6

   B.  The Attorney General is Demanding Federal Election Records Under the CRA to Assess Arizona's NVRA and HAVA Compliance……………………………………………..……………….8

III. ARGUMENT………………………………………………………..............10

   A. The United States is Entitled to An Order to Compel Production Under the CRA………………………………………………………………..10

   B. The CRA Does Not Permit Defendant to Withhold Federal Elections Because of Privacy Concerns………..…………………………………..12

   C. The Attorney General is Entitled to Relief Under the CRA's Summary Proceeding for Obtaining Federal Election Records……………………13

IV. CONCLUSION………………………………………………………………15

# TABLE OF AUTHORITIES

**Cases**

*Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960) .............................. 6

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ........................................ 12

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) ...................................................... 5, 12

*Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm. Pleas Oct. 1, 2025) ................................................................................................................. 13

*Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961) ................................................ 6

*Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012) ............................................................ 12

*In re Gordon*, 218 F. Supp. 826 (S.D. Miss. 1963) .............................................................. 7

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962) .................................................................. 7

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ........................................................... passim

*Smith v. City of Jackson*, 544 U.S. 228 (2005) .................................................................. 14

*Sullivan v. Summers*, 769 F. Supp. 3d 455 (D. Md. 2025) ................................................ 13

**Statutes**

A.R.S. §16-168(F) ............................................................................................................. 11

5 U.S.C. § 552a ..................................................................................................................... 9

52 U.S.C. § 20501(b)(3) ....................................................................................................... 8

52 U.S.C. § 20507 .............................................................................................................. 14

52 U.S.C. § 20507(a)(4) ....................................................................................................... 8

52 U.S.C. § 20507(i)(1) .................................................................................................... 6, 8

52 U.S.C. § 20510(a) ......................................................................................................... 14

52 U.S.C. § 20701 ....................................................................................................... 5, 6, 11

52 U.S.C. § 20703 ........................................................................................................ passim

52 U.S.C. § 20706 .............................................................................................................. 11

52 U.S.C. § 21083(a)(1)(A) ................................................................................................. 8

52 U.S.C. § 21083(a)(2)(B)(iii) ......................................................................................... 11

52 U.S.C. § 21083(a)(5)(A)(i) ........................................................................................ 9, 11

52 U.S.C. § 21083(a)(5)(A)(ii) ........................................................................................ 11

52 U.S.C. § 21083(c) ......................................................................................................... 9

**Constitutional Provisions**

U.S. Const. art. VI ........................................................................................................... 12

Case 2:26-cv-00066-SMB   Document 8   Filed 01/07/26   Page 4 of 16

# I. INTRODUCTION

Section 301 of Title III of the Civil Rights Act of 1960 ("CRA") imposes a "sweeping" obligation on election officials. *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962).[1] It provides, "Every officer of election shall retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election…" 52 U.S.C. § 20701 (transferred from 42 U.S.C. § 1974) (emphasis added).

Section 303 provides the Attorney General of the United States a correspondingly sweeping power to obtain Federal election records: "Any record or paper required by [52 U.S.C. § 20701] to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying … by the Attorney General or [her] representative…." 52 U.S.C. § 20703. The written demand need only "contain a statement of the basis and the purpose therefor." *Id.*; *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam).

On July 28, 2025, the Attorney General, through her representatives, made a written request to Secretary Fontes to produce certain information regarding Arizona's procedures for complying with the statewide voter registration list ("SVRL") maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq*. Ex. 1, Dep't Ltr. to Fontes dated July 28, 2025 ("July 28 Letter"). On August 14, 2025, the Attorney General sent another letter making a demand for records specifically under the CRA. Ex. 3, Dep't Ltr. to Fontes dated August 14, 2025 ("August 14 Letter"). Secretary Fontes explicitly refused to comply with either demand for records.

---

[1] Caselaw addressing the CRA in any depth is confined to courts within the Fifth Circuit in the early years following the CRA's enactment. Since then, courts have not had occasion to revisit the issue. The United States is unaware of any courts disagreeing with the Fifth Circuit's approach to the CRA.

Pursuant to Section 305 of the CRA, the United States moves for an order to compel production that requires Secretary Fontes to produce the Federal election records identified in the written demand. *See Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 855-56 (M.D. Ala. 1960), *aff'd and adopted in full sub nom. Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961) (per curiam). The CRA displaces the Federal Rules of Civil Procedure by creating a "special statutory proceeding." *Lynd*, 306 F.2d at 225. "All that is required is a simple statement by the Attorney General" after making a written demand for Federal election records and papers covered by the statute, explaining that the person against whom an order is sought has failed or refused to make the requested records "'available for inspection, reproduction, and copying…'" *Id.* at 226 (quoting 52 U.S.C. § 20703). The United States has satisfied those requirements. Accordingly, the United States respectfully requests that the Court issue an order to compel Defendant to produce the federal election records described in its written demand.

## II.     BACKGROUND

### A. Title III of the Civil Rights Act of 1960.

Under Section 301 of the CRA, every "officer of election" must "retain and preserve … all records and papers which come into his possession relating to any … act requisite to voting in [a Federal] election" for a period of twenty-two months from that election. 52 U.S.C. § 20701. Section 303 of the CRA provides, "Any record or paper required by section 301 to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or [her] representative…." 52 U.S.C. § 20703. The written demand "shall contain a statement of the basis and the purpose therefor." *Id.*

1    If an officer of election refuses to comply with the CRA's command, the Act requires "a special statutory proceeding in which the courts play a limited, albeit vital, role" in assisting the Attorney General's investigative powers. *Lynd*, 306 F.2d at 225. The Attorney General or her representative may request a Federal court to issue an order directing the officer of election to produce the demanded records, akin to "a traditional order to show cause, or to produce in aid of an order of an administrative agency." *Id.*

The special proceeding is "summary" in "nature" and neither "plenary [n]or adversary." *In re Gordon*, 218 F. Supp. 826, 826-27 (S.D. Miss. 1963); *see Kennedy v. Bruce*, 298 F.2d 860, 863 (5th Cir. 1962) (noting that this procedure "does not amount to the filing of a suit of any kind"). "All that is required is a simple statement by the Attorney General that after a … written demand" for Federal election records covered by Section 301 of the CRA (52 U.S.C. § 20701), "the person against whom an order for production is sought … has failed or refused to make such papers 'available for inspection, reproduction, and copying ….'" *Lynd*, 306 F.2d at 226 (quoting 52 U.S.C. § 20703). The court does not entertain "any other procedural device or maneuver—either before or during any hearing of the application—to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Id.* (quoting 52 U.S.C. § 20703). Rather, "[t]he Court, with expedition, should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down without delay for suitable hearing on the matters open for determination." *Id.*

Those matters, though, are "severely limited." *Id.* The court may adjudicate only: (1) "whether the written demand has been made"; and (2) "whether the custodians against whom orders are sought have been given reasonable notice of the pendency of the proceeding." *Id.* Neither "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand" nor "the scope of the order to produce" is open for review. *Id.*; *see* .. As the Fifth Circuit has explained, "No showing even of a prima facie case of a violation of Federal law need be made." *Id.* (citation omitted). Instead, "[i]f, after issuance of an order to produce, a genuine

7

dispute subsequently arises as to whether or not any specified particular paper or record comes within [52 U.S.C. § 20701's] broad statutory classification," that issue may be decided by the court. *Lynd*, 306 F.2d at 226.

### B. The Attorney General is demanding Federal election records under the CRA to assess Arizona's NVRA and HAVA compliance.

On July 28, 2025, the Attorney General, acting through her representatives at the Department of Justice ("Department"), sent a letter to Secretary Fontes, Chief Election officer of Arizona, regarding Arizona's compliance with Federal list maintenance requirements. Ex. 1. The NVRA and HAVA have list maintenance requirements "to protect the integrity of the electoral process." 52 U.S.C. § 20501(b)(3). The statutes impose certain recordkeeping duties and require reasonable efforts to maintain lists of eligible voters for federal elections. *See* 52 U.S.C. §§ 20507(a)(4), 20507(i)(1), 21083(a)(1)(A). The U.S. Election Assistance Commission's ("EAC") biennial Election Administration and Voting Survey ("EAVS") report was released in June 2025 ("2024 EAVS Report"). The survey includes each State's report of election administration activities including information regarding their list maintenance procedures.

The July 28 Letter requested a copy of Arizona's SVRL within fourteen days of the date of the letter. Ex. 1. It further requested Secretary Fontes to produce the requested information and records by encrypted email or via the Department's secure file-sharing system, Justice Enterprise File Sharing (JEFS). *Id.*

On August 8, 2025, Secretary Fontes responded to the July 28 Letter stating his office was unable to comply within 14 days due to the nature of the request. Ex. 2, Fontes Ltr. to Dep't dated August 8, 2025 ("August 8 Letter"). The August 14 letter responded by requesting responses to the July 28 Letter regarding Arizona's answers to the most recent EAVS survey by no later than August 21, 2025. Ex. 3. The August 14 Letter also requested an electronic copy of the SVRL be produced by August 21, 2025. *Id.*

The August 14 Letter explained "Section 303 of the CRA provides, in pertinent part, 'Any record or paper required by section 20701 to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person

8

1   having custody, possession, or control of such record or paper, be made available for
2   inspection, reproduction, and copying at the principal office of such custodian by the
3   Attorney General or his representative…' *See* 52 U.S.C. § 20703." Ex. 3 at 2.

4         The August 14 Letter specifically demanded the electronic copy of Arizona's SVRL
5   with *all fields*, which means the registrant's full name, date of birth, residential address, his
6   or her state driver's license number or the last four digits of the registrant's social security
7   number as required under HAVA to register individuals for federal elections. *See* 52 U.S.C.
8   § 21083(a)(5)(A)(i). Ex. 3 at 1.

9         On August 29, 2025, Secretary Fontes responded to the August 14 Letter with
10  responses to the EAVS data requests. However, Secretary Fontes refused to comply with
11  the Attorney General's CRA demand to produce Arizona's SVRL. Secretary Fontes based
12  his noncompliance on Arizona privacy law which he asserts prohibits Arizona from
13  producing the information sought by the Attorney General. Ex. 4, Fontes Ltr. to Dep't dated
14  August 29, 2025 ("August 29 Letter").

15        The August 14 Letter explained to Secretary Fontes that "HAVA specifies that the
16  'last 4 digits of a social security number . . . shall not be considered a social security number
17  for purposes of section 7 of the Privacy Act of 1974.' *See* 5 U.S.C. § 552a note; 52 U.S.C.
18  § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained
19  in the Driver's [Privacy] Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted
20  when the disclosure is for use by a government agency in carrying out the government
21  agency's function to accomplish its enforcement authority as the Department is now
22  doing." Ex. 3 at 2.

23        To alleviate the privacy concerns raised by Secretary Fontes, the Department
24  already made clear in the August 14 Letter that the Attorney General and her
25  representatives would comply with Federal privacy laws applicable to the demanded
26  Federal election records. For example, the Department pointed out that in addition to the
27  Privacy Act, the CRA provides:
28        Unless otherwise ordered by a court of the United States, neither the
          Attorney General nor any employee of the Department of Justice, nor any

other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

*Id.* (quoting 52 U.S.C. § 20704).

### III. ARGUMENT

**A. The United States is entitled to an Order to Compel Production under the CRA.**

An order to compel production of documents under the CRA is appropriate when the United States files a "simple statement" describing its written demand for inspection, reproduction, and copying, and explaining that the officer of election to whom it was directed has "failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Lynd*, 306 F.2d at 226 (citation omitted). The written demand must include "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703.

The August 14 Letter satisfies these requirements by: (1) making a written demand for inspection, reproduction, and copying of federal election records, including the SVRL and records of voter registration application within twenty-two months of a Federal election; (2) directing that demand to Secretary Fontes, an officer of election as defined by Section 306 of the CRA;[2] and (3) stating that the purpose of the demand is to "ascertain

---

[2] Section 306 provides:

> As used in this chapter, the term ''officer of election'' means any person who, under color of any Federal, State, Commonwealth, or local law, statute, ordinance, regulation, authority, custom, or usage, performs or is authorized to perform any function, duty, or task in connection with any application, registration, payment of poll tax, or other act requisite to voting in any general, special, or primary election at which votes are cast for candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico.

52 U.S.C. § 20706.

1  Arizona's compliance with the list maintenance requirements of the NVRA and HAVA." Ex. 3 at 2.

Secretary Fontes relies on Arizona law A.R.S. §16-168(F), which restricts public access to information in the state's voter registration database. *See* August 29 Letter citing A.R.S. §16-168(F). Secretary Fontes' reliance on state law to deny the Attorney General's demand for a copy of Arizona's SVRL is without merit and insufficient. Officers of election have no discretion to refuse or otherwise limit the federal election records or papers or the content of those records made available to the Attorney General. *See* 52 U.S.C. § 20703; *see also* 52 U.S.C. § 20701 (referring to "all records and papers").

The Attorney General cannot assess compliance with HAVA and the NVRA without the full, unredacted SVRL and other requested federal election records pertaining to Arizona's list maintenance efforts. HAVA prohibits a state from processing a voter registration application without the applicant's driver's license number, where an applicant has a current and valid driver's license, or, for other applicants, the last four digits of the applicant's social security number; for those lacking both identification numbers, the state must assign a unique HAVA identifier. *See* 52 U.S.C. § 21083(a)(5)(A). Without the data including those identification numbers, the United States cannot evaluate the state's compliance with HAVA.

Similarly, HAVA requires list maintenance to "be conducted in a manner that ensures" the elimination of duplicate names from the statewide list. 52 U.S.C. § 21083(a)(2)(B)(iii). Unredacted voter files, including the three identification numbers described above, are needed to determine if the state has a reasonable program of identifying and removing duplicate voter registrations. That is why twenty-five states (including Arizona) share the identical information sought by the Attorney General here with a private organization known as the Electronic Registration Information Center ("ERIC")[3]. Secretary Fontes routinely shares this data with ERIC.

---

[3] https://ericstates.org/who-we-are/

The same unredacted federal election records, including the SVRL, are needed to assess Arizona's compliance with the NVRA. The use of unredacted voter data ensures that matches to identify deceased and duplicate voters are more accurate and complete.

Secretary Fontes has rejected the United States's written demand pursuant to the CRA to produce Arizona's SVRL, a federal election record. Consequently, the United States respectfully requests that this Court issue an Order compelling Secretary Fontes to immediately produce those records through a secure method. *See Lynd*, 306 F.2d at 226; *Coleman*, 313 F.2d at 868.

### B. The CRA does not permit Defendant to withhold federal elections because of privacy concerns.

Defendant has refused to produce the federal election records demanded by the Attorney General under the CRA because she contends that Arizona's privacy law and the Federal Privacy Act prohibit cooperation without an appropriate purpose stated by the Attorney General. First, the August 14 letter provided Secretary Fontes with the Attorney General's purpose for the demand. Second, the Supremacy Clause of the Constitution says otherwise. It is a basic tenet of our federal system that when Federal and State law conflict, the federal law governs. *See* U.S. Const. art. VI. As this Circuit has explained, if a federal election law like the NVRA and state law "do not operate harmoniously in a single procedural scheme for federal voter registration, then Congress has exercised its power to 'alter' the state's regulation, and that regulation is superseded." *Gonzalez v. Arizona*, 677 F.3d 383, 394 (9th Cir. 2012) (en banc), *aff'd sub nom. Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013).

A South Carolina court recently confronted the same argument from an individual voter seeking to enjoin state officials from cooperating with the Department. Addressing federal preemption over state statutes governing privacy, the court explained, "Federal law likely requires the Election Commission to provide the requested information to DOJ, and while DOJ has also pointed to the National Voter Registration Act and the Help America Vote Act, Title III [of the Civil Rights Act] alone is sufficient to reach that conclusion." *Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm. Pleas Oct.

1, 2025), attached to the Declaration of Eric Neff as Ex. 5, at 10. The court noted, "Title III requires that, for 22 months after a federal election, a state election official 'retain and preserve' 'all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election.' 52 U.S.C. § 20701." *Id.* at 10-11. The court reasoned:

> Title III has long been understood to "encompass[], among other things, voting registration records," *McIntyre v. Morgan*, 624 F. Supp. 658, 664 (S.D. Ind. 1985), which is not surprising given the scope of the statutory text. And since HAVA's enactment two decades ago, registration records must include either "the applicant's driver's license number" or "the last four digits of the applicant's social security number." 52 U.S.C. § 21083(a)(5)(A). The Attorney General (or his representative) may demand in writing "[a]ny record or paper" that a state election official must keep under § 20701. *Id*. § 20703. That demand must simply "contain a statement of the basis and the purpose therefor." *Id*.

*Id.* at 11. As a result, the court found, "DOJ's request for South Carolina's voter registration list fits comfortably within this legal framework" and denied the voter's request to enjoin the state's production of its list to the Department. *Id.* at 11-12. For those reasons, *id.*, any state-law privacy right to the contrary is preempted by the CRA's broad grant of access to the Attorney General. *See* 52 U.S.C. § 20703; *Sullivan v. Summers*, 769 F. Supp. 3d 455, 461 (D. Md. 2025) Consequently, the Attorney General is entitled to the federal election records she has demanded from Secretary Fontes under the CRA, notwithstanding any conflicting state privacy laws.

**C.     The Attorney General is entitled to relief under the CRA's summary proceeding for obtaining federal election records.**

The CRA displaces the Federal Rules of Civil Procedure and creates a "special statutory proceeding" under which Secretary Fontes, as an officer of election for Arizona, must produce the voter-registration lists and other federal election records demanded by the Attorney General.[4] *Lynd*, 306 F.2d at 225. The court in *Lynd* reasoned that a special

---

[4] Although this Motion for an Order to Compel Production is made under the CRA, the United States notes that the NVRA includes a similar requirement for production of Federal

13

proceeding was necessary to obtain federal election records because no other procedural device or maneuver was available:

> There is no place for a motion for a bill of particulars or for a more definite statement under F.R.Civ.P. 12(e), 28 U.S.C.A. There is no place for any other procedural device or maneuver— either before or during any hearing of the application— to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand. [52 U.S.C. § 20703]. Thus with respect to the reasons why the Attorney General considers the records essential, there is no place, either as a part of pleadings, discovery, or trial, for interrogatories under F.R.Civ.P. 33, oral depositions of a party under F.R.Civ.P. 26(a), 30, production of documents under F.R.Civ.P. 34, or request for admissions as to facts or genuineness of documents or other things under F.R.Civ.P. 36, 37.

*Id.* at 226.

The "special statutory proceeding" of these statutes is "a summary proceeding." *Id.* at 225-26. To institute this proceeding, the United States need only file a "simple statement" describing its written demand for the federal election records and explaining that Secretary Fontes, acting as an officer of election for Arizona, "failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Id.* at 226 (citation omitted). Accordingly, the Court "should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down without delay for suitable hearing on the matters open for determination." *Id.* The Attorney General's right to reproduction and copying of Federal election records is not dependent upon any other showing. *Id.* Therefore, the United States respectfully requests that this Court issue an Order directing Secretary Fontes to produce the federal election records described in the Attorney General's written demand.

---

election records. *See* 52 U.S.C. § 20507, 20510(a). "[W]hen Congress uses the same language in two statutes having similar purposes … it is appropriate to presume that Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality opinion).

14

## IV.   CONCLUSION

For the foregoing reasons, the United States requests that this Court enter an Order directing Defendant to comply with the Attorney General's demand pursuant to the CRA and provide an electronic copy of Arizona's SVRL with *all fields* including the name, date of birth, driver's license number, last four digits of the social security number or the HAVA unique identifier.  Those records should be provided electronically to the United States within five days.

DATED: January 7, 2026                                          Respectfully submitted,


TIMOTHY COURCHAINE                                   HARMEET K. DHILLON
United States Attorney                                         Assistant Attorney General
District of Arizona                                                Civil Rights Division

                                                                           ERIC V. NEFF
                                                                           Acting Chief, Voting Section
                                                                           Civil Rights Division

                                                                           /s/  *Brittany E. Bennett*
                                                                           BRITTANY E. BENNETT
                                                                           Trial Attorney, Voting Section
                                                                           Civil Rights Division
                                                                           U.S. Department of Justice
                                                                           4 Constitution Square
                                                                           150 M Street NE, Room 8.141
                                                                           Washington, D.C. 20002
                                                                           Telephone: (202) 704-5430
                                                                           Email: brittany.bennett@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2026, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ *Brittany E. Bennett*
Brittany E. Bennett
Trial Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.141
Washington, D.C. 20002
Telephone: (202) 704-5430
Email: brittany.bennett@usdoj.gov