D. Andrew Gaona (028414)
Sambo (Bo) Dul (030313)
Austin C. Yost (034602)
**COPPERSMITH BROCKELMAN PLC**
2800 North Central Avenue, Ste 1900
Phoenix, AZ 85004
T: (602) 381-5469
agaona@cblawyers.com
bdul@cblawyers.com
ayost@cblawyers.com

Lalitha D. Madduri (039970)*
Max C. Accardi*
Kevin R. Kowalewski*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
T: (202) 968-4490
lmadduri@elias.law
maccardi@elias.law
kkowalewski@elias.law

*Attorneys for Proposed Intervenor-Defendant the Arizona Alliance for Retired Americans*

*Pro Hac Vice Application Forthcoming

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV-26-00066-PHX-SMB |
| Plaintiff, | **UNOPPOSED MOTION TO INTERVENE AS DEFENDANT BY THE ARIZONA ALLIANCE FOR RETIRED AMERICANS** |
| v. | |
| Adrian Fontes, in his official capacity as Secretary of State, | **Oral Argument Requested** |
| Defendant. | |

Pursuant to Federal Rule of Civil Procedure 24, the Arizona Alliance for Retired Americans (the "Alliance") moves to intervene as a defendant in this lawsuit. The Court should grant this motion because the Alliance satisfies all the requirements for intervention as of right under Rule 24(a), and, alternatively, permissive intervention under Rule 24(b).

Counsel for the Alliance has conferred with the existing parties. Counsel for Plaintiff indicated that Plaintiff takes no position on the motion. Counsel for Defendant indicated that Defendant does not oppose the motion.

## INTRODUCTION

The U.S. Department of Justice ("DOJ") recently embarked on an unprecedented nationwide campaign to compile sensitive personal information on voters in a centralized federal database. As part of this effort, DOJ sued Arizona's Secretary of State on January 6, 2026, seeking to compel him to turn over the State's complete and unredacted voter registration list, which contains sensitive and private information about every voter in Arizona. This unlawful demand intrudes not only upon Arizona's constitutional prerogative to maintain and protect its own voter registration list—and the explicit guarantees it has made to voters that their private information will not be shared—it also directly intrudes upon the privacy rights of Arizona voters whose data will be disclosed if DOJ prevails.

Arizona law specifies that "the month and day of birth date, the social security number or any portion thereof, the driver license number or nonoperating identification license number, the Indian census number, the father's name or mother's maiden name, the state or county of birth and the records containing a voter's signature and a voter's email address shall not be accessible or reproduced by any person," except under limited circumstances—none of which are present here. A.R.S. § 16-168(F). DOJ's requested relief runs roughshod over these privacy protections, which the Arizona Alliance for Retired Americans (the "Alliance") seeks to preserve.

The Alliance—which has nearly 51,000 members statewide—moves to intervene to represent and protect its members' interests in preventing improper disclosure of their sensitive and personal information, as well as the Alliance's own organizational interests

1

which stand to be threatened by this action. Although the Secretary of State has thus far resisted disclosure, as a governmental defendant, he must consider the "broader public-policy implications" of the issues presented in this suit, unlike the Alliance, which is solely concerned with protecting its members and constituents' privacy, "full stop." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538–39 (1972)). As a result, the Alliance's interests are not adequately protected by the existing parties. And, indeed, courts have recently come to this exact conclusion in granting sister chapters of the Alliance intervention as of right under Rule 24(a) in nearly identical lawsuits that DOJ has brought against other states. *See* **Ex. C**, Text Order, *United States v. Amore*, No. 25-cv-00639 (D.R.I. Jan. 6. 2026) (granting intervention as of right to Rhode Island Alliance); *United States v. Benson*, No. 1:25-CV-1148, 2025 WL 3520406 (W.D. Mich. Dec. 9, 2025) (granting intervention as of right to Michigan Alliance); *see also* **Ex. C** (granting intervention as of right to labor union and individual voters); *United States v. Oregon*, No. 6:25-CV-01666-MTK, 2025 WL 3496571 (D. Or. Dec. 5, 2025) (granting intervention as of right to advocacy organization and individual voters in Oregon case).

Alternatively, the Alliance should be granted permissive intervention under Rule 24(b), to ensure that Arizona voters—whose sensitive and personal information is *the* target of DOJ's request for relief—have a voice and will be heard from in these proceedings. The Alliance's presence will also help to develop the issues and ensure vigorous presentation of arguments that are most pertinent to the voters who are threatened by this suit and that the existing Defendant may be limited in presenting. The Alliance is also uniquely situated to offer insight into the parallel proceedings, many of which involve its sister chapters, who have been granted intervention (as of right, as noted above), or permissively. *See* **Ex. D**, Order, *United States v. Simon*, No. 25-cv-3761 (D. Minn. Jan. 6, 2026), ECF No. 90 (granting permissive intervention to Minnesota Alliance); *see also* **Ex. E**, Order, *United States v. Bellows*, 25-cv-468 (D. Me. Dec. 12, 2025), ECF No. 49 (granting permissive intervention to individual voters); **Ex. F**, Order, *United States v. Scanlan*, No. 25-cv-371

2

(D.N.H. Jan. 5, 2026), ECF No. 23 (granting permissive intervention to individual voters); **Ex. G**, Order Granting Mot. to Intervene as Def., *United States v. Nago*, 25-cv-00522 (D. Haw. Jan. 5, 2026), ECF No. 20 (granting permissive intervention to similarly situated organizations); **Ex. H**, Mins. of Mot. Hr'g, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Nov. 24, 2025), ECF No. 70 (granting permissive intervention to similarly situated organizations by oral order).[1]

## BACKGROUND

**I.  Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional principles of federalism.**

The U.S. Constitution "invests the States with responsibility for the mechanics" of federal elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, as a default matter, the Constitution assigns to the states the responsibility of determining eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013). While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that *states* are the custodians of voter registration data.

Thus, in 1993, Congress enacted the National Voter Registration Act ("NVRA"), which charges *states*—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including maintaining voter lists (subject to strict procedural safeguards), *id.* § 20507(c)–(g). It similarly makes *states* the custodians of those lists. *See Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018). Later, Congress enacted the Help America Vote Act ("HAVA") "to improve voting systems and voter access." *RNC v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). HAVA requires states to create a "computerized statewide voter registration

---

[1] Still other courts have granted motions to intervene by Alliance chapters and others without indicating whether the intervention is permissive or by right. *See, e.g.*, **Ex. I**, Order, *United States v. Galvin*, 25-cv-13816 (D. Mass. Jan. 6, 2026), ECF No. 30 (granting intervention to Massachusetts Alliance); **Ex. J**, Order, *United States v. Oliver*, 25-cv-1193 (D.N.M. Dec. 15, 2025), ECF No. 9 (granting intervention to New Mexico Alliance).

list," 52 U.S.C. § 21083(a)(1), and to "perform list maintenance" consistent with the highly deferential provisions of the NVRA. *Id.* § 21083(a)(2). HAVA is also abundantly clear that this list is to be "defined, maintained, and administered at the State level." *Id.* § 21083(a)(1)(A). Indeed, its legislative history stressed that "[h]istorically, elections in this country have been administered at the state and local level. This system has many benefits that must be preserved." H.R. Rep. No. 107-329, pt. 1, at 31–32 (2001). Among them, that "[t]he dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome." *Id.* at 32. Accordingly, neither the NVRA nor HAVA tasks the federal government with duties related to voter lists, *by design*. Congress has intentionally "left it up to the States to maintain accurate lists of those eligible to vote in federal elections." *Husted*, 584 U.S. at 761.

**II.   The Department of Justice has embarked on an unprecedented nationwide campaign to collect personal voter registration data held by the states.**

In the spring of 2025, DOJ launched a campaign to demand broad and unprecedented access to state voter files, including personal information about each voter. It has reportedly sent demands to at least 40 states, with plans to make similar demands on all 50.[2] The vast majority have declined to turn over sensitive personal information that is typically protected by state law. *See supra* note 2.

DOJ has now filed lawsuits against 23 states and the District of Columbia to compel production of that data. While DOJ has repeatedly claimed that it need not offer any justification for its demands, it reportedly seeks to use the data to create a national voter database to attempt to substantiate unfounded accusations that millions of non-citizens have voted illegally in recent elections. *See infra* note 3. In recent public statements, moreover,

---

[2] *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Dec. 5, 2025), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information; Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://perma.cc/8VP4-WRXD.

4

Assistant Attorney General Harmeet Dhillon made clear that DOJ also intends to use the information to attempt to compel removal of *hundreds of thousands* of voters from the rolls.³ And, as a brief filed in one of these lawsuits by several states that have received these demands from DOJ details, in some cases, DOJ has sought not simply read-only access, but "materials that define or explain how" the voter information is coded into the registration database, "potentially because additional information about database coding would assist in transferring data . . . into other federal databases." Brief of Amici Curiae Maryland et al. in Support of Motion to Dismiss at 6, *United States v. Bd. of Elections of N.Y.*, No. 25-cv-1338 (N.D.N.Y. Jan. 6, 2026). Indeed, as that brief also details, in recent months the federal government has repeatedly sought to transfer and utilize sensitive information given to or possessed by it for other uses that threaten the citizenry in a number of ways. *Id.* at 2–5. These concerns are similarly present here.

DOJ sent Arizona a letter on August 14, 2025, demanding an "electronic copy of Arizona's [statewide voter registration list] with *all fields*," including "the registrant's full name, date of birth, residential address, . . . state driver's license number or the last four digits of the registrant's social security number." ECF No. 1 ¶ 27. The letter asserted DOJ was empowered by HAVA to demand such data. *Id.* ¶ 26. Secretary Fontes responded on August 29, refusing to comply with DOJ's demands based on "state and federal privacy laws which . . . prohibit[] Arizona from producing the information sought." *Id.* ¶ 29.

**III.    The Department of Justice sues Arizona for its complete voter list.**

DOJ filed this suit on January 6, 2026, seeking to compel Arizona to provide its full statewide voter registration list. ECF No. 1. The Complaint names Adrian Fontes, in his official capacity as Arizona Secretary of State, as the sole Defendant. *Id.* ¶ 8. Although the Complaint alleges that DOJ seeks this data to ensure that Arizona is complying with the

---

³ *See* AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 ET), https://x.com/AAGDhillon/status/2001659823335616795 (stating in video discussing these lawsuits: "You're going to see hundreds of thousands of people in some states being removed from the voter rolls.").

5

1  NVRA and HAVA, it does not assert *any* claims under those laws. Instead, DOJ brings only
2  one claim, which it asserts under the Civil Rights Act of 1960, 52 U.S.C. § 20703 ("Section
3  303"), a statute that permits DOJ to review certain voting records and papers for the purpose
4  of enabling investigations "concerning infringement or denial of . . . constitutional voting
5  rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962).

6        Section 303 does not support DOJ's sweeping demands. Congress enacted that
7  provision to preserve "the right of all qualified citizens to vote without discrimination," and
8  specifically to facilitate "investigation[s]" authorized under the Civil Rights Act of 1957,
9  which recalcitrant local officials had frustrated through the destruction of records. H.R. Rep.
10 No. 86-956, at 7 (1959). This history "leaves no doubt but that [Section 303] is designed to
11 secure a more effective protection of the right to vote." *Alabama ex rel. Gallion v. Rogers*,
12 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285
13 F.2d 430 (5th Cir. 1961). Yet DOJ admits that it is not seeking to enforce these laws or
14 investigate the unconstitutional denial of the right to vote. Instead, it claims to be evaluating
15 Arizona's list maintenance efforts under the NVRA and HAVA. *See generally* ECF No. 1.
16 Section 303 of the Civil Rights Act thus has no application here. And, even if it did apply,
17 it does not prohibit states from redacting sensitive voter information that has nothing to do
18 with investigating the denial of the right to vote, just as states may under the NVRA. *See*
19 *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025); *Pub.*
20 *Int. Legal. Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024).

21       It is also notable that, in the first few waves of its otherwise nearly identical lawsuits
22 against other states, DOJ *did* assert NVRA and HAVA claims.[4] However, it has abandoned

---

[4] The United States filed numerous cases on different dates in September 2025, alleging claims under the NVRA, HAVA, and Section 303. *See* Compl., *United States v. Bellows*, No. 25-cv-468 (D. Me. Sep. 16, 2025); Compl., *United States v. Oregon*, No. 25-cv-1666 (D. Or. Sep. 16, 2025); Compl., *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Sep. 25, 2025); Compl., *United States v. Bd. of Elections of N.Y.*, No. 25-cv-1338 (N.D.N.Y. Sep. 25, 2025); Compl., *United States v. Benson*, No. 25-cv-1148 (W.D. Mich. Sep. 25, 2025); Compl., *United States v. Simon*, No. 25-cv-3761 (D. Minn. Sep. 25, 2025); Compl., *United States v. Scanlan*, No. 25-cv-371 (D.N.H. Sep. 25, 2025); Compl., *United States v. Pennsylvania*, No. 25-cv-1481 (W.D. Pa. Sep. 25, 2025).

those claims in the most recent waves of these lawsuits, including here against Arizona.[5] DOJ's change of tactic is an implicit admission that it does not have a basis to pursue these actions under HAVA or the NVRA, and in that regard at least, DOJ is correct.

## IV. The Alliance and its members are threatened by DOJ's demands.

The Arizona Alliance for Retired Americans is a nonpartisan § 501(c)(4) membership organization and the chartered state affiliate of the Alliance for Retired Americans, a grassroots organization with over 4.4 million members nationwide. *See* **Ex. A**, Decl. of Dora Vasquez ("Vasquez Decl.") ¶ 4. The Alliance is dedicated to ensuring social and economic justice and protecting the civil rights of retirees after a lifetime of work, including by ensuring that its members have access to the franchise and can meaningfully participate in Arizona's elections. *Id.* ¶¶ 7–8. In Arizona, it represents nearly 51,000 retirees from public- and private-sector unions, community organizations, and individual activists in every single county. *Id.* ¶ 4. They are deeply concerned about how DOJ may use their sensitive personal voter information, not least of all because the current Administration has repeatedly disregarded privacy protections over sensitive personal data. *Id.* ¶¶ 9–10, 13.[6]

---

[5] None of the United States' later-filed cases allege NVRA or HAVA claims—each alleges only a single claim under Section 303. *See* Compl., *United States v. Hanzas*, No. 25-cv-903 (D. Vt. Dec. 1, 2025); Compl., *United States v. DeMarinis*, No. 25-cv-03934 (D. Md. Dec. 1, 2025); Compl., *United States v. Albence*, No. 25-cv-01453 (D. Del. Dec. 2, 2025); Compl., *United States v. Amore*, No. 25-cv-00629 (D.R.I. Dec. 2, 2025); Compl., *United States v. Hobbs*, No. 25-cv-6078 (W.D. Wash. Dec. 2, 2025); Compl., *United States v. Toulouse Oliver*, No. 25-cv-1193 (D.N.M. Dec. 2, 2025); Compl., *United States v. Griswold*, No. 25-cv-3967 (D. Colo. Dec. 11, 2025); Compl., *United States v. Nago*, No. 25-cv-00522 (D. Haw. Dec. 12, 2025); Compl., *United States v. Galvin*, No. 25-cv-13816 (D. Mass. Dec. 12, 2025), ECF No. 1; Compl., *United States. v. Aguilar*, No. 3:25-cv00728 (D. Nev Dec. 12, 2025); Compl., *United States v. Evans*, No. 25-cv-04403 (D.D.C. Dec. 18, 2025); Compl., *United States v. Raffensperger*, No. 25-cv-0548 (M.D. Ga. Dec. 18, 2025); Compl., *United States v. Matthews*, No. 3:25-cv-3398 (C.D. Ill. Dec. 19, 2025), ECF No. 4; Compl., *United States v. Wis. Elections Comm'n*, No. 3:25-cv-1036 (W.D. Wis. Dec. 18, 2025); Compl., *United States v. Thomas*, No. 26-cv-00021 (D. Conn. Jan. 6, 2026).

[6] For example, public reports have indicated that the Department of Government Efficiency ("DOGE") placed the security of millions of Social Security numbers at risk through improper maintenance. *See* Nicholas Nehamas, *DOGE Put Critical Social Security Data at Risk, Whistle-Blower Says*, N.Y. Times (Aug. 26, 2025), https://www.nytimes.com/2025/08/26/us/politics/doge-social-security-data.html. Election officials from multiple states have publicly questioned whether the Trump Administration misled them regarding the purpose for its requests for voter information, citing reports that DOJ had shared voter information with the Department of Homeland Security. Quentin

7

Many of the Alliance's members are concerned that amassing and centralizing all of this information in one place will heighten the risks of Social Security fraud, identity theft, and other types of fraud frequently targeted at older Americans. *Id.* ¶ 11. The Alliance also fears that granting DOJ's sweeping, invasive demand will deter its members from engaging in the electoral process and discourage them from registering to vote out of fear that their personal information will be mishandled, or worse, weaponized. *Id.* ¶¶ 13–14. This will harm the Alliance's civic engagement work, by diminishing the effectiveness of those efforts, and impair the organization's mission. *Id.* ¶ 14.

To protect these interests, sister chapters of the Alliance for Retired Americans have sought—and obtained—intervention in numerous nearly identical suits DOJ has brought against other states, including in Rhode Island, Massachusetts, Minnesota, New Mexico, and Michigan. *See* **Exs. C, D, I, J;** *Benson*, 2025 WL 3520406. The Alliance similarly seeks to participate in this case to protect the voting rights of its members and constituents, as well as its own organizational mission. Vasquez Decl. ¶¶ 4–14.[7]

## **LEGAL STANDARD**

The standard for intervention is "broadly construed" because "a liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Arizonans for Fair Elections v. Hobbs*, 335 F.R.D. 261, 265 (D. Ariz. 2020) (quoting *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011)).

To determine whether an applicant has a right to intervene under Federal Rule of Civil Procedure 24(a)(2), courts apply a "four-part test":

---

Young, *State Election Officials in Letter Ask if They Were 'Misled' by Trump Administration*, Colo. Newsline (Nov. 18, 2025, at 7:15 ET), https://coloradonewsline.com/2025/11/18/state-election-officials-misled-trump/.

[7] The Alliance has also repeatedly been involved in litigation in Arizona involving other voting-rights and election issues, to vindicate similar interests. *See, e.g., Ariz. All. for Retired Ams., Inc. v. Crosby*, 256 Ariz. 328, 537 P.3d 818 (Ariz. Ct. App. 2023); *RNC v. Fontes*, CV2024-050553 (Maricopa Cnty. Super. Ct. May 10, 2024); *Ariz. Free Enter. Club v. Fontes*, No. S1300CV202300872 (Yavapai Cnty. Super. Ct. Apr. 25, 2024); *Ariz. Free Enter. Club v. Fontes*, No. S1300CV202300202 (Yavapai Cnty. Super. Ct. Apr. 25, 2024); *Strong Cmtys. Found. of Ariz. Inc. v. Yavapai County*, No. S13000V202400175 (Yavapai Cnty. Super. Ct.).

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010) (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006)). Rule 24(b) separately permits the Court to allow anyone to intervene where "the motion is timely" and "the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Arizonans for Fair Elections*, 335 F.R.D. at 268 (citation omitted); *see also* Fed. R. Civ. P. 24(b).[8] The Alliance satisfies both standards here.[9]

## ARGUMENT

**I.     The Alliance is entitled to intervene as a matter of right.**

The Court should grant the Alliance's motion to intervene as of right under Rule 24(a)(2) because it has timely moved to participate, the disposition of this case could impair its ability to protect significant interests—the privacy rights of its members and constituents, and its mission-critical work—and no existing party adequately represents those interests.

**A.     The motion to intervene is timely and does not prejudice the parties.**

In determining whether a motion for intervention as of right is timely, courts consider the totality of the circumstances, with a focus on three factors:

> (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay. When evaluating these factors, courts should be mindful that the crucial date for assessing the timeliness of a motion to intervene is when proposed

---

[8] Courts within the Ninth Circuit have at times required intervenors to show "independent grounds for jurisdiction." *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002). But the Ninth Circuit has made clear the requirement "does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011); *see also Roosevelt Irrigation Dist. v. United States*, No. CV-15-00439-PHX-JJT, 2015 WL 13747124, at *6 (D. Ariz. Sep. 3, 2015) (same). That is the case here.

[9] Rule 24 requires a motion to intervene to "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). The Alliance attaches a proposed Answer to this motion. *See* **Ex. B**. However, should it be granted intervention, the Alliance respectfully reserves the right to file a Rule 12(b) motion.

9

>intervenors should have been aware that their interests would not be adequately protected by the existing parties.

*W. Watersheds Project v. Haaland*, 22 F.4th 828, 835–36 (9th Cir. 2022) (citation modified).

The Alliance's motion to intervene is indisputably timely. DOJ brought this suit on January 6, 2026, ECF No. 1, and this motion follows only two days later—before any responsive pleadings or dispositive motions have been filed. No case schedule has been set, and no deadlines would need to be altered if intervention were granted. The Alliance will abide by any future deadlines set by the Court, so there is "no possible prejudice" to any party if intervention is granted. *Arizonans for Fair Elections*, 335 F.R.D. at 265–66; *see United States v. Alisal Water Corp.*, 370 F.3d 915, 922 (9th Cir. 2004) (prejudice occurs where "intervention would inject new issues into the litigation" or "relief . . . [would be] delayed" (citation omitted)); *see also W. Watersheds Project*, 22 F.4th at 839 ("That this litigation may become more tangled and complex with the addition of interested parties is not a basis for denial of intervention.").

> **B.    The disposition of this case will impair the Alliance's ability to protect its interests, as other courts have recognized in parallel litigation.**

The Alliance has significant protectable interests that stand to be impaired by DOJ's requested relief here, thereby satisfying the intertwined second and third elements of Rule 24(a)(2).

"[A] prospective intervenor 'has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation.'" *Wilderness Soc'y*, 630 F.3d at 1179 (quoting *Lockyer*, 450 F.3d at 441). Consistent with its liberal standard, "Rule 24(a)(2) does not require a specific legal or equitable interest," and "it is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (alteration omitted) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993)). "[T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.*

10

1  (citation omitted). It is thus sufficient to show that "disposition of the action 'may' practically impair a party's ability to protect their interest in the subject matter of the litigation." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011) (quoting Fed. R. Civ. P. 24(a)(2)). Once the proposed intervenor has shown some protectable interest, courts generally "have little difficulty concluding that the disposition of [a] case may, as a practical matter, affect" those interests. *Lockyer*, 450 F.3d at 442.

The Alliance satisfies Rule 24(a)(2)'s standards. The Alliance opposes the disclosure of its members' sensitive personal information to DOJ. *See supra* Background § IV. Courts regularly find that precisely these types of concerns support intervention. *See, e.g.*, *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 827 (9th Cir. 2021) (recognizing "straightforward" significantly protectable interest in confidentiality of non-public documents); *In re Sealed Case*, 237 F.3d 657, 663–64 (D.C. Cir. 2001) (holding intervenors had "legally cognizable interest in maintaining the confidentiality" of records). Importantly, Arizona law protects against disclosure of the voter registration data of the Alliance's members. A.R.S. § 16-168(F). And the Alliance is credibly concerned about the consequences of the disclosure of its members' sensitive information to DOJ, including because of the potential risk of data breaches that would expose them to identity-theft scams, and because of the potential for retaliation by the federal government against individuals who engage in civic advocacy efforts disfavored by the current administration. Vasquez Decl. ¶¶ 10–14.

Further, the Alliance and its members have "an interest in keeping their information private from DOJ, whether or not disclosure to the DOJ produces any additional harm." *Benson*, 2025 WL 3520406, at *3. Individuals have an intrinsic right to the sanctity of information that is deeply personal and sensitive, and once that information is disclosed, "the cat is out of the bag." *In re Sealed Case*, 237 F.3d at 664 (citation omitted) (finding impairment when intervenor's confidential information was at risk of disclosure); *see also Kalbers*, 22 F.4th at 828 (holding intervenor's "interest in keeping its documents confidential would obviously be impaired by an order to disclose" those documents). DOJ,

11

in asking Defendant to violate Arizona law by turning over such sensitive information, threatens to irreparably harm the Alliance's members.

The Alliance's voter engagement and turnout work will also be harmed if DOJ's requested relief is granted. Its members are predominantly senior citizens, a population frequently targeted by identity-theft scams. As a result, the Alliance has found that retirees are often hesitant to turn over personal identifying information. Vasquez Decl. ¶¶ 10–11. If members know that their sensitive identifying information will be disclosed to a DOJ that they do not trust to handle it with care, they may be discouraged from engaging in the political process, undermining the Alliance's core mission. *Id.* Courts have long recognized that organizations have a significant protectable interest in preserving and pursuing their own mission-critical organizational work, particularly when it comes to ensuring members' ability to vote. *See, e.g.*, *Jud. Watch, Inc. v. Ill. State Bd. of Elections*, No. 24 C 1867, 2024 WL 3454706, at *3 (N.D. Ill. July 18, 2024); *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020); *Issa v. Newsom*, No. 2:20-CV-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020).

Given these significant interests, the Alliance easily satisfies Rule 24(a)(2)'s requirements. *See Benson*, 2025 WL 3520406, at *4; *Oregon*, 2025 WL 3496571, at *2–3.

**C.    The Alliance's interests are not adequately represented by existing parties.**

The Alliance cannot be assured of adequate representation in this matter if it is denied intervention. "[T]he burden of making this showing is minimal" and is "satisfied if the applicant shows that representation of its interests *may* be inadequate." *Hoopa Valley Tribe v. U.S. Bureau of Reclamation*, 648 F. Supp. 3d 1196, 1204 (E.D. Cal. 2022) (emphasis added) (quoting *Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)); *see also Berger*, 597 U.S. at 196 (citing *Trbovich*, 404 U.S. at 538 n.10). Accordingly, courts are "liberal in finding" this requirement to be met because "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests." 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*

§ 1909 (3d ed. 2024). In evaluating adequacy of representation, courts in the Ninth Circuit consider three factors:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Citizens for Balanced Use*, 647 F.3d at 898 (citation omitted).

Here, the Alliance has distinct interests from the existing parties, all of which are governmental actors bound by federal and state laws governing voter list maintenance activities. No existing party adequately represents those distinct interests.

DOJ plainly does not, as it seeks to forcibly compel production of Arizona's unredacted state voter registration list—including the sensitive data of Alliance members. While the existing Defendant has, to date, resisted that demand, he too does not adequately represent the Alliance's specific interests. Federal courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). This is because a government-official defendant's interests are "necessarily colored by [their] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998). The Ninth Circuit has recognized that "the government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" *Citizens for Balanced Use*, 647 F.3d at 899 (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)); *see also Conservation L. Found. of New Eng., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) (explaining "a governmental entity charged by law with representing the public interest of its citizens" will not necessarily "advance the narrower interest of a private entity").

The Supreme Court recently emphasized this point, explaining that public officials must "bear in mind broader public-policy implications," whereas private litigants—like the

13

Alliance—seek to vindicate their own rights "full stop." *Berger*, 597 U.S. at 195–96 (citing *Trbovich*, 404 U.S. at 538–39). Thus, the Court cautioned that courts should not conduct the adequacy of representation analysis at too "high [a] level of abstraction," and reaffirmed that, even where the parties' interests "seem[] closely aligned," the burden to demonstrate inadequate representation remains "minimal" unless those interests are "identical." *Id.* at 196 (citation omitted). In other words, even if Defendant continues to also oppose the relief that DOJ seeks at a high level of abstraction, it does not follow that the Secretary shares "identical" interests to civic membership organizations committed to protecting their members and encouraging political participation. *See id.*

Here, the Defendant and the Alliance do not share "identical" interests. For one, the Secretary is obliged to enforce the requirements of the NVRA and HAVA, in addition to state laws governing maintenance of the voter registration list. Thus, by definition, he has an obligation to weigh and carry out public duties that the Alliance does not share. *See, e.g.*, *Bellitto v. Snipes*, No. 16-cv-61474, 2016 WL 5118568, at *2 (S.D. Fla. Sep. 21, 2016) (concluding adequate representation was not guaranteed where existing defendant was "an elected official" whose interpretation of the NVRA might not be aligned with intervenors' interests). Indeed, the NVRA specifically requires state election officials to "balance competing objectives"—maintaining accurate and current voter rolls while promoting access to the ballot box—that do not pertain to the Alliance or its interests. *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019). In view of those circumstances, adequate representation of the Alliance's and its members' interests is hardly "assured." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 132–33 (2d Cir. 2001) (explaining this factor is met where parties' interests are not "so similar" as to assure adequacy of representation). These considerations may oblige Defendant to "negotiate[] a settlement that would [be] contrary to the interest of the prospective intervenors," itself reason to find the Alliance's interests not adequately represented. *Fiandaca v. Cunningham*, 827 F.2d 825, 833 (1st Cir. 1987); *see also Kane County v. United States*, 928 F.3d 877, 895–96 (10th Cir. 2019) (recognizing

"administration of . . . litigation resources" and "inclin[ation] to settle" may further establish inadequate representation)

The Alliance, however, is not burdened with the existing Defendant's public duties and obligations to enforce the NVRA and HAVA—it is focused entirely on maintaining the privacy of its members' sensitive personal information and promoting its own organizational objectives. As a result, the Alliance is well-positioned to press legal arguments that cannot be "equally asserted" by the existing parties given their public duties. *Does 1 Through 7 v. The Taliban*, No. 6:22-cv-990, 2023 WL 4532763, at *5 (N.D.N.Y. July 12, 2023). Other courts have recognized this and granted intervention as of right to other Alliance chapters and similar organizations, in parallel cases brought by DOJ. *See, e.g.*, **Ex. C**; *Benson*, 2025 WL 3520406, at *10–12; *Oregon*, 2025 WL 3496571, at *4–5.

## II. Alternatively, the Court should grant permissive intervention.

In the alternative, the Court should grant the Alliance permissive intervention because it has "defense[s] that share[] with the main action a common question of law or fact" and its intervention will not "'unduly delay or prejudice the adjudication of the original parties' rights." *Ariz. Democratic Party v. Hobbs*, No. CV-20-01143, 2020 WL 6559160, at *1 (D. Ariz. June 26, 2020) (quoting Fed. R. Civ. P. 24(b)). The motion is timely and, given the Alliance's commitment to adhering to the case schedule that the Court imposes, does not risk prejudicing existing parties. *See supra* Argument § I.A. And the Alliance's defenses depend on the resolution of many of the same questions of fact and law—including the strength of DOJ's evidence and the proper application of Section 303. *See* **Ex. B** (the Alliance's Proposed Answer).

Courts routinely grant permissive intervention to ensure that voters (or organizations representing voters' interests) have a say in litigation concerning their rights.[10] That rationale applies with force here. The Alliance's members indisputably have

---

[10] *See, e.g., RNC v. Aguilar*, No. 2:24-CV-00518-CDS-MDC, 2024 WL 3409860, at *3 (D. Nev. July 12, 2024); *Ariz. All. for Retired Ams. v. Hobbs*, No. CV-22-01374, 2022 WL 4448320, at *2 (D. Ariz. Sep. 23, 2022); *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 802 (E.D. Mich. 2020).

15

"confidentiality and/or privacy interest[s]" at stake, which alone "warrants an opportunity to permissively intervene to protect that interest." *In re Exch. Union Co.*, No. 24-MC-91645-ADB, 2025 WL 894652, at *3 (D. Mass. Mar. 24, 2025). And because the Alliance would be the *only* party that represents voters "whose personal information would be distributed to the Department of Justice were the United States to prevail in this action," the Alliance's "presence would assist the court in deciding the issues before it." **Ex. F** at 5. This perspective, unencumbered by Defendant's duties as an election official, will indisputably contribute to the "just and equitable adjudication" of this lawsuit. *Ariz. All. for Retired Ams.*, 2022 WL 4448320, at *2 (citation omitted); **Ex. F** at 6 ("Even assuming that the proposed intervenors' interest is adequately represented by defendants, their presence in this suit will assist the court in the just and equitable adjudication of this matter.").

Courts—including here in Arizona—also routinely grant permissive intervention to civic organizations to ensure their voices and the voices of their members are heard when litigation implicates the rights and privacy of all voters, notwithstanding the presence of governmental defendants ostensibly charged with upholding broader conceptions of the public interest. *See, e.g.*, *1789 Found. Inc. v. Fontes*, No. CV-24-02987-PHX-SPL, 2025 WL 834919, at *4 (D. Ariz. Mar. 17, 2025) (permitting the Alliance and other advocacy organizations to intervene as defendants); *Winfrey*, 463 F. Supp. 3d at 802 (permitting voting rights organizations to intervene as defendants). Thus, because Rule 24 is liberally construed to ensure that all interested parties have the opportunity to protect their rights and interests, the Court should grant permissive intervention, as several other courts have done in parallel cases. *See* **Exs. D, E, F, G, H.**

## CONCLUSION

The Alliance respectfully requests that the Court grant its motion to intervene.

16

RESPECTFULLY SUBMITTED this 8th day of January, 2026.

/s/ Sambo (Bo) Dul

**COPPERSMITH BROCKELMAN PLC**

D. Andrew Gaona
Sambo (Bo) Dul
Austin C. Yost

**ELIAS LAW GROUP LLP**

Lalitha D. Madduri*
Max C. Accardi*
Kevin R. Kowalewski*

*Attorneys for Proposed Intervenor-Defendant the Arizona Alliance for Retired Americans*

*\*Pro Hac Vice Application Forthcoming*

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2026, I electronically filed the attached document to the Clerk's Office using the CM/ECF system for filing and the attached document was served by e-mail to counsel for Arizona Secretary of State Adrian Fontes, who has not yet appeared and would not have received a copy through the CM/ECF system:

Karen Hartman-Tellez
Karen.Hartman@azag.gov
Kyle Cumming
Kyle.Cummings@azag.gov
Kara Karlson
Kara.Karlson@azag.gov


/s/ Sambo (Bo) Dul