Victoria Lopez (Bar No. 330042)
Lili Nimlo (Bar No. 038535)
ACLU Foundation of Arizona
2712 N. 7th Street
Phoenix, AZ 85014
(602) 650-1854
vlopez@acluaz.org
lnimlo@acluaz.org

Jonathan Topaz*
Theresa J. Lee*
Sophia Lin Lakin*
American Civil Liberties Union Foundation
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500
jtopaz@aclu.org
tlee@aclu.org
slakin@aclu.org

Sarah Brannon*
Patricia Yan*
American Civil Liberties Union Foundation
915 15th St. NW
Washington, DC 20001
(202) 457-0800
sbrannon@aclu.org
pyan@aclu.org

*Application for pro hac vice admission Forthcoming

Attorneys for Proposed Intervenors Common Cause,
Shannon Roivas, Caleb D. Trevino, and Kara Janssen

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| United States of America, | No. 2:26-cv-00066-SMB |
|---|---|
| *Plaintiff,* | Hon. Susan M. Brnovich |
| v. | **MOTION OF COMMON CAUSE, SHANNON ROIVAS, CALEB D. TREVINO, AND KARA JANSSEN TO INTERVENE AS DEFENDANTS** |
| Adrian Fontes, in his official capacity as Secretary of State for the State of Arizona, | |
| *Defendant.* | |

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 2

I.   DOJ's Efforts to Obtain Private Voter Information from Arizona .............................. 2

II.  Proposed Intervenors ....................................................................................... 7

ARGUMENT ........................................................................................................ 10

I.   MOVANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT ....... 10

    A.   The Motion to Intervene Is Timely .............................................................. 10

    B.   Proposed Intervenors Have Concrete Interests in the Underlying Litigation ..... 11

    C.   Disposition of this Case May Threaten the Interests of Proposed
         Intervenors. ............................................................................................. 13

    D.   Secretary Fontes's Interests Are Different from Those of Proposed
         Intervenors. ............................................................................................. 14

II.  IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE
     INTERVENTION ............................................................................................ 16

CONCLUSION ...................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Berger v. North Carolina State Conference of the NAACP*, 597 U.S. 179 (2022) ..... 10, 15

*Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014) ............................................. 13

*California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006) .............. 14

*Callahan v. Brookdale Senior Living Communities, Inc.*, 42 F.4th 1013 (9th Cir. 2022) ........................................................................................... 16

*Ceja-Corona v. CVS Pharmacy, Inc.*, No. 12-cv-1868, 2014 WL 792132 (E.D. Cal. Feb. 26, 2014) ............................................................................ 17

*Citizens for Balanced Use v. Montana Wilderness Association*, 647 F.3d 893 (9th Cir. 2011) ...................................................................................... 14, 16

*Donaldson v. United States*, 400 U.S. 517 (1971) ............................................. 11

*Grutter v. Bollinger*, 188 F.3d 394 (6th Cir. 1999) ........................................... 13

*Issa v. Newsom*, No. 20-cv-1044, 2020 WL 3074351 (E.D. Cal. June 10, 2020) ............. 11

*Judicial Watch, Inc. v. Illinois State Board of Elections*, No. 24-C-1867, 2024 WL 3454706 (N.D. Ill. July 18, 2024) .............................................................. 15

*Kalbers v. U.S. Department of Justice*, 22 F.4th 816 (9th Cir. 2021) ........................ 10, 11

*Kobach v U.S. Election Assistance Commission*, No. 13-cv-04095, 2013 WL 6511874 (D. Kan. Dec. 12, 2013) ............................................................ 13, 16

*Pennsylvania Fair Elections v. Pennsylvania Department of State*, 337 A.3d 598 (Pa. Commw. Ct. 2025) ........................................................................... 6

*Texas v. United States*, 798 F. 3d 1108 (D.C. Cir. 2015) ..................................... 13

*T-Mobile Northeast LLC v. Town of Barnstable*, 969 F.3d 33 (1st Cir. 2020) ................ 15

*Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972) ........................... 14

*United States v. Aerojet General Corp.*, 606 F.3d 1142 (9th Cir. 2010) ...................... 11

*United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) .......................... 10

*Western Watersheds Project v. Haaland*, 22 F.4th 828 (9th Cir. 2022) ....................... 10

*Wilderness Society v. U.S. Forest Service*, 630 F.3d 1173 (9th Cir. 2011) .................... 10

*Yniguez v. Arizona*, 939 F.2d 727 (9th Cir. 1991) ............................................ 11

**Statutes**

5 U.S.C. § 552a .................................................................................... 12, 15

52 U.S.C. § 20703 ..................................................................................... 14

52 U.S.C. § 21085 ....................................................................................... 7

Arizona Revised Statutes § 16-168(F) ............................................................ 11

**Other Authorities**

Alexandra Berzon & Nick Corasaniti, *Trump Empowers Election Deniers, Still Fixated on 2020 Grievances*, N.Y. TIMES, Oct. 22, 2025, https://www.nytimes.com/2025/10/22/us/politics/trump-election-deniers-voting-security.html ....................................................................................... 6

Carter Walker, *Efforts to Challenge Pennsylvania Voters' Mail Ballot Applications Fizzle*, SPOTLIGHT PA, Nov. 8, 2024, https://www.spotlightpa.org/news/2024/11/mail-ballot-application-challenges-pennsylvania-fair-elections/ .......................................................................... 6

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAG. (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html ...................................................................... 6

Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, NPR, June 29, 2025, https://www.npr.org/2025/06/29/nx-s1-5409608/citizenship-trump-privacy-voting-database ...................................................................................... 6

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, Tracker of Justice Department Requests for Voter Information, Brennan Center for Justice (updated Dec. 19, 2025), https://perma.cc/A4A4-737Z ....................................................................... 2

Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for Voting*, DEMOCRACY DOCKET, June 12, 2025, https://www.democracydocket.com/news-alerts/dhs-said-to-brief-cleta-mitchells-anti-voting-group-on-checking-citizenship-for-voters/ ................................ 6

Press Release, U.S. Department of Justice, Justice Department Sues Arizona and Connecticut for Failure to Produce Voter Rolls (Jan. 6, 2026), https://perma.cc/6QP2-8ZXC ..................................................................... 4

Press Release, U.S. Department of Justice, Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal

Elections Laws (Dec. 12, 2025),
https://perma.cc/TQ5T-FB2A ...................................................................4

Press Release, U.S. Department of Justice, Justice Department Sues Four States
for Failure to Produce Voter Rolls (Dec. 18, 2025),
https://perma.cc/HHJ7-JWQQ .............................................................4

Press Release, U.S. Department of Justice, Justice Department Sues Oregon and
Maine for Failure to Provide Voter Registration Rolls (Sept. 16, 2025),
https://perma.cc/M69P-YCVC.................................................................5

Press Release, U.S. Department of Justice, Justice Department Sues Six Additional
States for Failure to Provide Voter Registration Rolls (Dec. 2, 2025),
https://perma.cc/F5MD-NWHD ............................................................4

Press Release, U.S. Department of Justice, Justice Department Sues Six States for
Failure to Provide Voter Registration Rolls (Sept. 25, 2025),
https://perma.cc/7J99-WGBA.................................................................4

Sarah Lynch, US Justice Dept Considers Handing over Voter Roll Data for
Criminal Probes, Documents Show,
REUTERS, Sept. 9, 2025.................................................................................5

**Rules**

Federal Rule of Civil Procedure 24 .................................................1, 2, 10, 17

Local Civil Rule 7.2(b)....................................................................................1

Common Cause, Shannon Roivas, Caleb D. Trevino, and Kara Janssen (collectively, "Proposed Intervenors") respectfully move to intervene as Defendants pursuant to Rule 24(a) of the Federal Rules of Civil Procedure or, in the alternative, pursuant to Rule 24(b), and set forth the legal argument necessary to support their motion below. *See* Local R. Civ. 7.2(b). Proposed Intervenors append to this motion a proposed motion to dismiss by way of a response to the United States' complaint, *see* Ex. 1, while reserving the right to supplement their response to the complaint within the time allowed for response by Rule 12 if intervention is granted. *See* Fed. R. Civ. P. 24(c).[1]

## INTRODUCTION

The United States seeks to force Arizona to turn over voters' sensitive personal information and data. It has been widely reported that the United States will use this data to build an unauthorized national voter database and to target voters for potential challenges and disenfranchisement. Proposed Intervenors are the Common Cause, a nonpartisan, good-government organization dedicated to grassroots voter engagement in Arizona, whose members and whose own work are at risk by the relief sought by the United States in this case, as well as Shannon Roivas, Caleb D. Trevino, and Kara Janssen, Arizona voters whose personal, private data is at risk in this litigation. Proposed Intervenors have a strong interest in preventing disclosure of the most sensitive aspects of Arizona's non-public voter data. Common Cause has an interest in protecting the voting and privacy rights of its members and all Arizona voters. The relief the federal government seeks risks discouraging Arizona residents from registering to vote, undermining its work. And the privacy and

---

[1] Proposed Intervenors contacted counsel for the existing parties in this litigation for their position on this motion. Secretary of State Adrian Fontes takes no position on the motion, while the United States objects to the motion.

voting-rights interests of Common Cause's members and of the individual voter intervenors—especially those who are uniquely vulnerable to wrongful removal from the rolls, such as naturalized citizens and voters with felony convictions—are also imperiled.

Proposed Intervenors are entitled to intervene as of right under Rule 24 as this motion is timely, their rights and interests are at stake, and those rights and interests are not adequately represented by the existing Defendant, who unlike Proposed Intervenors, is a state actor subject to broader public policy and political considerations external to the legal issues presented in this case. Their unique interests, perspective, and motivation to interrogate the purpose of the United States' sweeping request for non-public voter data in this case will ensure the full development of the record and aid the Court in its resolution of this case. Indeed, in many similar cases brought over states' refusal to turn over sensitive voter information, such organizations and individuals have been granted intervention. In the alternative, permissive intervention pursuant to Rule 24(b) should be granted.

## BACKGROUND

**I.    DOJ's Efforts to Obtain Private Voter Information from Arizona**

Beginning in May 2025, Plaintiff United States, through its Department of Justice ("DOJ"), began sending letters to election officials in at least forty states, making escalating demands for the production of statewide voter registration databases, with plans to gather data from all fifty states. *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, Tracker of Justice Department Requests for Voter Information, Brennan Ctr. for Just. (updated Dec. 19, 2025), https://perma.cc/A4A4-737Z.

On July 28, 2025, DOJ sent such a letter to Arizona Secretary of State Adrian Fontes ("the Secretary"), demanding, in part, "[t]he current electronic copy of Arizona's

2

computerized statewide voter registration list" within 14 days of the date of the letter. Letter from Michael E. Gates to Adrian Fontes, Ex. 1, 2 (July 28, 2025), Dkt. No. 8-1 ("July 28 Letter"); *see* Compl. ¶¶ 21–23, at 4; ¶ B, at 5. The Secretary's office responded on August 8, 2025, stating it was "currently reviewing records responsive to [DOJ's] request pursuant to Arizona's public records law … and determining whether any redactions may be required by state law." Compl. ¶ 24; Letter from Luke Douglas to Michael E. Gates and Maureen Riordan, Ex. 2, 2 (Aug. 8, 2025), Dkt. No. 8-2 ("August 8 Letter").

DOJ responded on August 14, 2025, specifying that it was seeking, within seven days, a full and unredacted electronic copy of the statewide voter registration list that "contains *all fields*," including "full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number." *See* Compl. ¶¶ 25–28; Letter from Harmeet K. Dhillon to Adrian Fontes, Ex. 3, 3–4 (Aug. 14, 2025), Dkt. No. 8-3 ("August 14 Letter"). DOJ stated that "[t]he purpose of the request is to ascertain Arizona's compliance with the list maintenance requirements of the NVRA and HAVA," but did not elaborate further or refer to any deficiencies with respect to Arizona's compliance with those statutes. August 14 Letter at 3.

Secretary Fontes responded on August 29. *See* Compl. ¶ 29; Letter from Adrian Fontes to Harmeet Dhillon, Michael E. Gates, and Maureen Riordan, Ex. 4 (Aug. 29, 2025), Dkt. No. 8-4 ("August 29 Letter"). Secretary Fontes noted that Arizona law prohibits the disclosure of much of the information DOJ was demanding in the unredacted voter file, including "month and day of birth date, the social security number or any portion thereof, the driver license number," and other personal information. *Id.* at 3 (quoting A.R.S. § 16-

168(F)). Secretary Fontes also noted that neither of DOJ's letters "explain how your authority under the [Civil Rights Act of 1960 ("CRA")] applies to your stated purpose for demanding a copy of the voter registration database to ascertain Arizona's compliance with the list maintenance requirements of the NVRA and HAVA or preempts state privacy laws." *Id.* (internal quotation marks omitted). Secretary Fontes also noted that "the Privacy Act of 1974 imposes specific limitations upon Federal agencies, including [DOJ], when they collect … information concerning individual citizens," and warned that voters must be able to exercise their constitutional right to vote "without fear that the information they provide to do so could be disseminated in a way that fails to protect their privacy or is contrary to law." *Id.* Finally, Secretary Fontes noted that even if Arizona complied with DOJ's request, "that data alone does not provide evidence regarding Arizona's compliance with" the NVRA's list maintenance requirements, and instead "merely captures a snapshot in time and provides little information about list maintenance activities." *Id.* at 4.

The United States responded by filing this lawsuit, which is one of at least twenty-four that DOJ has recently initiated to compel states and election officials to disclose sensitive voter data.[2] A day later, the United States filed a motion to compel the

---

[2] *See* Press Release, U.S. Dep't of Just., *Justice Department Sues Arizona and Connecticut for Failure to Produce Voter Rolls* (Jan. 6, 2026), https://perma.cc/6QP2-8ZXC; Press Release, U.S. Dep't of Just., *Justice Department Sues Four States for Failure to Produce Voter Rolls* (Dec. 18, 2025), https://perma.cc/HHJ7-JWQQ; Press Release, U.S. Dep't of Just., *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025), https://perma.cc/TQ5T-FB2A; Press Release, U.S. Dep't of Just., *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025), https://perma.cc/F5MD-NWHD; Press Release, U.S. Dep't of Just., *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://perma.cc/7J99-WGBA; Press Release,

production of records: the unredacted Arizona voter file. Mot. for Order to Compel

Records, Dkt. No. 7, 3.

DOJ's request for private, sensitive voter data appears to be in connection with

never-before-seen efforts by the United States to construct a national voter database, and

to otherwise use untested forms of database matching to scrutinize voter rolls. According

to reporting, DOJ employees "have been clear that they are interested in a central, federal

database of voter information." Devlin Barrett & Nick Corasaniti, *Trump Administration

Quietly Seeks to Build National Voter Roll*, N.Y. Times, Sept. 9, 2025,

https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html. DOJ

is coordinating these efforts with the federal Department of Homeland Security ("DHS"),

according to reported statements from DOJ and DHS. *Id.*[3] A recent article extensively

quoted a lawyer who recently left DOJ's Civil Rights Division, describing the

government's aims in these lawsuits:

> We were tasked with obtaining states' voter rolls, by suing them if necessary.
> Leadership said they had a DOGE person who could go through all the data
> and compare it to the Department of Homeland Security data and Social
> Security data. . . . I had never before told an opposing party, Hey, I want this
> information and I'm saying I want it for this reason, but I actually know it's
> going to be used for these other reasons. That was dishonest. It felt like a
> perversion of the role of the Civil Rights Division.

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES

---

U.S. Dep't of Just., *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://perma.cc/M69P-YCVC.

[3] *See also, e.g.*, Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, STATELINE, Sept. 12, 2025, https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security; Sarah Lynch, *US Justice Dept Considers Handing over Voter Roll Data for Criminal Probes, Documents Show*, REUTERS, Sept. 9, 2025, https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09.

MAG., Nov. 16, 2025, https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

According to additional reporting, these efforts are being conducted with the involvement of individuals who have previously sought to disenfranchise voters, overturn elections,[4] compel states to engage in aggressive purges of registered voters, and who have abused voter data to mass challenge voters in other states. *See, e.g.*, *PA Fair Elections v. Pa. Dep't of State*, 337 A.3d 598, 600 n.1 (Pa. Commw. Ct. 2025) (determining that complaint brought by group affiliated with current DHS official Heather Honey, challenging Pennsylvania's list maintenance practices, was meritless).[5]

The Administration has also confirmed that DOJ is sharing the collected information with DHS.[6] And DOJ's letters requesting private voter data from Arizona and other states have also requested information about how elections officials identify and remove duplicate registrations and verify that registered voters are not ineligible to vote, such as

---

[4] *See* Alexandra Berzon & Nick Corasaniti, *Trump Empowers Election Deniers, Still Fixated on 2020 Grievances*, N.Y. TIMES, Oct. 22, 2025, https://www.nytimes.com/2025/10/22/us/politics/trump-election-deniers-voting-security.html (documenting "ascent" of election denier Honey); Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for Voting*, DEMOCRACY DOCKET (June 12, 2025), https://www.democracydocket.com/news-alerts/dhs-said-to-brief-cleta-mitchells-anti-voting-group-on-checking-citizenship-for-voters/; Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, NPR, June 29, 2025, https://www.npr.org/2025/06/29/nx-s1-5409608/citizenship-trump-privacy-voting-database (reporting that Mitchell had received a "full briefing" from federal officials).

[5] *See* Carter Walker, *Efforts to Challenge Pennsylvania Voters' Mail Ballot Applications Fizzle*, SPOTLIGHT PA, Nov. 8, 2024, https://www.spotlightpa.org/news/2024/11/mail-ballot-application-challenges-pennsylvania-fair-elections/ (describing mass-challenges and noting connection to Honey and her organization "PA Fair Elections").

[6] Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, Stateline (Sept. 12, 2025), https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security.

due to a felony conviction, citizenship status, or having moved out of state. *See* July 28 Letter at 2–3.[7] Many of these same voters are uniquely vulnerable to being wrongly removed from the voter rolls based on imperfect data matching systems, including naturalized citizens and voters with felony convictions.

The United States' own representations tend to confirm suspicions of federal overreach that could disenfranchise voters. Far from indicating a purpose of ensuring compliance with the NVRA and HAVA, the proposed Memorandum of Understanding that the United States has proposed to States seeks to authorize the federal government to identify supposedly ineligible voters and requires removal of those voters within 45 days— both directly contrary to those statutes' text. *Compare* U.S. Dep't of Just., Civ. Div., Confidential Mem. Of Understanding ("MOU"), Ex. 6, at 2, 5, *with* 52 U.S.C. § 21085 (methods of complying with HAVA "left to the discretion of the State"), and, *e.g.*, 52 U.S.C. § 20507 (protecting voters from removal under certain circumstances).

## II.    Proposed Intervenors

Proposed Intervenor Common Cause is a nonpartisan organization committed to, *inter alia*, ensuring that all eligible Arizona voters register to vote and exercise their right of suffrage at each election. *See* Decl. of Arizona Program Director for Common Cause Jennifer Guzman Galvan ("Galvan Decl."), Ex. 2, ¶¶ 3, 5–7, 9. Common Cause expends

---

[7] *See also* Letter from Maureen Riordan to Sec'y of State Al Schmidt (June 23, 2025), *United States v. Pennsylvania*, No. 25-cv-01481 (W.D. Pa. Oct. 9, 2025), Dkt. No. 37-1; Letter from Michael E. Gates to Sec'y of State Jocelyn Benson (July 21, 2025), *United States v. Benson*, No. 25-cv-01148 (W.D. Mich. Nov. 25, 2025), Dkt. No. 34-3; Letter from Michael E. Gates to Sec'y of State Tobias Read (July 16, 2025), *United States v. Oregon*, No. 25-cv-01666 (D. Or. Nov. 17, 2025), Dkt. No. 33-1; Letter from Michael E. Gates to Sec'y of State Shirley Weber (July 10, 2025), *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Nov. 7, 2025), Dkt. No. 37-2.

significant resources conducting on-the-ground voter engagement and assistance efforts, including registering qualified individuals to vote, helping voters navigate the vote-by-mail process, encouraging voter participation, and assisting voters experiencing problems trying to vote. *See id.* ¶¶ 7, 9–12, 14. The success of these efforts, especially with respect to voter registration, depends on voters' trust that, when they provide personal information to the State as part of the registration process, that information will not be abused, their privacy will be respected, and their right to participate will be honored. *See id.* ¶¶ 6, 9–10, 14–15.

Common Cause has more than 30,737 members in Arizona, including Arizona voters whose personal data will be provided to the federal government if DOJ prevails in this lawsuit. *See id.* ¶¶ 4, 6. Common Cause's members in Arizona include voters who are at particular risk of being caught up in the DOJ's efforts to remove voters from voter rolls, including naturalized citizens, persons with felony convictions, persons who have moved within Arizona or left the state and then returned, voters who vote by mail, and persons who have a heightened need for privacy in their personal data. *See id.* ¶ 13.

Proposed Intervenor Shannon Roivas is a registered Arizona voter who moved to the state from North Carolina in 2019. Decl. of Shannon Roivas ("Roivas Decl."), Ex. 3, ¶ 3. Ms. Roivas is a PhD candidate studying Anthropology and is on the staff at Arizona State University's School of Human Evolution and Social Change. *Id.* ¶ 4. Because of her studies and work in science, Ms. Roivas has had to move around and has been meticulous in keeping her documentation and voter registration up to date, including when she moved to Arizona. *Id.* ¶¶ 6, 8. The right to vote is important to Ms. Roivas, and she has significant concerns about DOJ's demand for her sensitive personal information. *Id.* ¶¶ 5, 9.

Proposed Intervenor Caleb D. Trevino is a registered Arizona voter. Decl. of Caleb D. Trevino ("Trevino Decl."), Ex. 4, ¶ 4. Born in Mexico, he moved to the United States and became a naturalized citizen as a young child. *Id.* ¶ 2. Mr. Trevino received a bachelor's degree from Arizona State University and works as a marketing consultant. *Id.* ¶¶ 3, 7. Mr. Trevino was unable to vote in the 2024 election because he was moving within Arizona and his updated voter registration was not processed in time. *Id.* ¶ 5. Mr. Trevino cares deeply about his fundamental rights to vote and privacy. *Id.* ¶¶ 4, 7. Mr. Trevino is very concerned about DOJ receiving access to his personal data, both because he takes significant precautions to protect it and because there has been a lack of clarity about how DOJ will use this information. *Id.* ¶ 8. Mr. Trevino believes DOJ's demand in this litigation threatens both his own privacy and the privacy of other Arizona voters. *Id.* ¶¶ 9–10.

Proposed Intervenor Kara Janssen is registered Arizona voter who has lived in the state her whole life. Decl. of Kara Janssen ("Janssen Decl."), Ex. 5, ¶¶ 1, 2. Over a decade ago, Ms. Janssen was convicted for drug-related felony offenses. *Id.* ¶ 4. She has now been out of prison for seven years and had her voting rights restored approximately one year ago. *Id.* ¶¶ 4, 6. Ms. Janssen's experience with incarceration inspired her to become an advocate for criminal system reform. *Id.* ¶ 5. She helped lead the ACLU of Arizona's Smart Justice Initiative and founded the non-profit organization We Stand, AZ. *Id.* Ms. Janssen cares deeply about her right to vote and was excited to vote for the first time last year. *Id.* ¶ 6. However, Ms. Janssen also notes that having a criminal record comes with stigma and discrimination that makes her particularly concerned about the privacy of her personal information. *Id.* ¶ 7. She worries that disclosing sensitive voter data to DOJ will deter eligible Arizona voters with criminal records like her from registering to vote. *Id.*

## ARGUMENT

## I.    MOVANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

Proposed Intervenors are entitled to intervene as of right. Rule 24(a)(2) provides that courts "must permit anyone to intervene" who:

(1) on timely motion,

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest,

(3) unless existing parties adequately represent that interest.

*Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 190 (2022) (internal quotation marks and alterations omitted. Courts generally construe Rule 24(a) "broadly in favor of proposed intervenors." *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002). Because the Proposed Intervenors easily meet Rule 24(a)'s requirements, this court should grant their intervention as a matter of right.

### A.    The Motion to Intervene Is Timely.

Courts consider three "primary factors" in evaluating timeliness: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 822 (9th Cir. 2021) (quotation marks and citation omitted). The Ninth Circuit interprets these factors "broadly in favor of intervention." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022). This motion is timely. The United States filed this suit on January 6, 2026, Dkt. 1, and upon receiving notice of the suit, Proposed Intervenors promptly prepared this motion, filing it just eight days after the complaint was filed. *See Kalbers*, 22 F.4th at 825 (interval of "just a few weeks" "weigh[ed] in favor of timeliness");

*United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1149 (9th Cir. 2010) (motion to intervene timely where filed within four months of when applicants learned of proposed consent decree); *Issa v. Newsom*, No. 20-cv-1044, 2020 WL 3074351, at *2 (E.D. Cal. June 10, 2020) (finding motion timely where "no substantive proceedings ha[d] occurred"). Secretary Fontes has not yet filed an answer or a motion to dismiss, meaning that the case is at its earliest stage and intervention will not unduly delay or prejudice existing parties.

### B.    Proposed Intervenors Have Concrete Interests in the Underlying Litigation.

Proposed Intervenors have a "sufficient"—*i.e.*, a "significantly protectable"— interest in the litigation. *Donaldson v. United States*, 400 U.S. 517, 531 (1971). To demonstrate a "significantly protectable interest," the intervenor must (1) assert "an interest that is protected under some law," and (2) show that "there is a relationship between its legally protected interest and the plaintiff's claims." *Kalbers*, 22 F.4th at 827 (quotation marks and citation omitted). This interest requirement is less stringent than the injury-in-fact requirement for purposes of establishing Article III standing. *See Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991). Here, Proposed Intervenors have multiple, independently sufficient interests that support intervention as of right.

*First*, Proposed Intervenors have a right to privacy in the sensitive data the United States seeks, *i.e.*, voters' full name, date of birth, residential address, and driver's license number or last four digits of their social security number. August 14 Letter at 3. Arizona law expressly protects from public disclosure much of the information that would be included in the unredacted voter file that DOJ demands. *See* A.R.S. § 16-168(F) (protecting from disclosure, among other things, the "month and day of birth date, the social security

number or any portion thereof, the driver license number," and other personal information of Arizona voters). The data sought is also protected by federal law, which prohibits the creation of a national voter database of the type that the United States is reportedly assembling. *See* 5 U.S.C. § 552a(e)(7) (provision of the federal Privacy Act prohibiting the creation or maintenance of any database "describing how any individual exercises rights guaranteed by the First Amendment," which includes exercising the right to vote). These privacy interests are significant to Ms. Roivas, Mr. Trevino, Ms. Janssen, and to Common Cause's members that are registered Arizona voters. *See* Roivas Decl. ¶¶ 5, 9; Trevino Decl. ¶¶ 2, 4, 8–10; Janssen Decl. ¶¶ 3, 6–7; Galvan Decl. ¶¶ 6, 13.

*Second*, and based on the United States' similar data requests to other States, the data sought is likely to be used to challenge the registration of certain Arizona voters, including voters like Mr. Trevino who are naturalized citizens, *see* Trevino Decl. ¶¶ 2, 4, voters with felony convictions like Ms. Janssen, *see* Janssen Decl. ¶¶ 3–4, 6–7, and voters who have moved within Arizona or left the state and then returned to Arizona. *See supra* 8–9. Some of Common Cause's members also fall within these categories. *See* Galvan Decl. ¶ 13. Ms. Roivas, Mr. Trevino, Ms. Janssen, and Common Cause's members, especially those most likely to be targeted using the information DOJ seeks in this lawsuit, have a concrete interest in not being disenfranchised. *See* Roivas Decl. ¶¶ 5, 9; Trevino Decl. ¶¶ 4, 8–10; Janssen Decl. ¶¶ 3–4, 6–7; Galvan Decl. ¶¶ 6, 11–13.

*Third*, Common Cause's core organizational mission and civic participation and engagement activities will be harmed if relief is granted, because voters will be chilled from registering and participating if they believe their sensitive personal data will be provided to the federal government and potentially misused as part of a national database.

*See, e.g.*, Galvan Decl. ¶¶ 9–15. Mass challenges by "election integrity" activists now wielding the power of the federal government would force Common Cause to redirect resources to mitigating the attempted disenfranchisement of existing voters, away from core civic engagement. *Id.* ¶¶ 10–12. Courts routinely find that nonpartisan public interest organizations like Common Cause should be granted intervention in election-related cases, due to their significantly protectable interests related to voting. *See, e.g.*, *Texas v. United States*, 798 F.3d 1108, 1111–12 (D.C. Cir. 2015); *Kobach v U.S. Election Assistance Comm'n*, No. 13-cv-04095, 2013 WL 6511874, at *1–2 (D. Kan. Dec. 12, 2013). Indeed, in similar cases challenging states' refusal to turn over sensitive voter information, such organizations have been granted intervention. *See* Minute Order, *United States v. Amore*, No. 1:25-cv-00639 (D.R.I. Jan. 6, 2026); Minute Order, *United States v. Galvin*, 1:25-CV-13816 (D. Mass Jan. 6, 2026), Dkt. No. 30; Order, *United States v. Simon*, No. 25-cv-03761 (D. Minn. Jan. 6, 2026), Dkt. No. 90; Minute Order, *United States v. Oliver*, No. 25-cv-01193 (D.N.M. Dec. 19, 2025), Dkt. No. 25; Minute Order, *United States v. Weber*, No. 25-cv-09149, (C.D. Cal. Nov. 19, 2025), Dkt. No. 70.

### C.    Disposition of this Case May Threaten the Interests of Proposed Intervenors.

Proposed Intervenors' interests would be impaired if Plaintiff obtains its requested relief. Intervenors "do not need to establish that their interests *will* be impaired. Rather, they must demonstrate only that the disposition of the action 'may' impair or impede their ability to protect their interests." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (internal citations omitted). "This burden is minimal." *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999) (internal quotation marks and citation omitted). Once intervenors

establish they have a significant protectable interest, courts typically "have little difficulty concluding that the disposition" of the case "may, as a practical matter, affect [that interest]." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006).

Here, the threat of impairment is significant. The United States seeks an immediate order compelling the disclosure of private voter data, bypassing the normal civil litigation process and any discovery into "the basis and the purpose" of their request. 52 U.S.C. § 20703; *see* Mot. for Order to Compel Records, Dkt. No. 7. This attempt to secure the irrevocable disclosure of private voter data at the outset of the case militates strongly in favor of allowing Proposed Intervenors into the case to represent voters' interests.

### D. Secretary Fontes's Interests Are Different from Those of Proposed Intervenors.

Courts consider three factors in evaluating adequacy of representation: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (quotation marks and citation omitted). Proposed Intervenors' "burden … should be treated as minimal," and Proposed Intervenors need not show that representation of their interests *will* be inadequate, but rather only that "representation [of their interests] *may be* inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added).

Proposed Intervenors meet this minimal burden here. As a government official, Secretary Fontes has a generalized interest in carrying out his office's legal obligations and

in minimizing burdens on governmental employees and resources. He also must consider broader public policy concerns, including the need to maintain working relationships with federal officials. Proposed Intervenors "add [a] missing element" to this litigation, *T-Mobile Northeast LLC v. Town of Barnstable*, 969 F.3d 33, 40 (1st Cir. 2020): the perspectives of (i) a civil rights group whose sole commitment is to ensuring access to the ballot, and (ii) individual voters whose own rights are at risk. .

There may be arguments and issues that Defendant may not raise that are critical to Proposed Intervenors. For example, individual voters have a more direct injury than states under the Privacy Act for misuse of their personal data, especially given that the Privacy Act grants individuals an express right to bring suit. *See* 5 U.S.C. § 552a(g)(1)(D) ("Whenever an agency fails to comply with any other provision of this section . . . in such a way as to have an adverse effect on an individual, the individual may bring a civil action against the agency"). As another example, courts have found that political considerations external to the legal issues presented by cases like this can motivate elections officials to pursue a settlement that could jeopardize the private information of Proposed Intervenors or their members. *See Judicial Watch, Inc. v. Ill. State Bd. of Elections*, No. 24-C-1867, 2024 WL 3454706, at *5 (N.D. Ill. July 18, 2024) (allowing intervention in NVRA case and observing that "potential intervenors can cite potential conflicts of interests in future settlement negotiations to establish that their interests are not identical with those of a named party"); *cf. Berger*, 597 U.S. at 198 (reversing denial of motion to intervene where board of elections was "represented by an attorney general who, though no doubt a vigorous advocate for his clients' interests, is also an elected official who may feel allegiance to the voting public or share the Board's administrative concerns").

These diverging perspectives—between the government's need to balance many interests and Proposed Intervenors' particular interest in their own privacy—present a classic scenario supporting intervention. *See Am. Farm Bureau Fed'n v. EPA*, 278 F.R.D. 98, 110–11 (M.D. Pa. 2011) (allowing public interest groups to intervene "[b]ecause the EPA represents the broad public interest . . . not only the interests of the public interest groups"); *Kobach*, 2013 WL 6511874, at *4. "[T]he government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" *Citizens for Balanced Use*, 647 F.3d at 899 (internal citation omitted). Such is the case here.

While Proposed Intervenors' motion rises or falls on its own merit, they have different interests and perspectives than the other proposed intervenors. Proposed Intervenors here include specific Arizona voters—Ms. Roivas, Mr. Trevino, and Ms. Janssen—who have unique experiences especially because they fall within several categories of particularly vulnerable voters identified in DOJ's requests, such as voters with felony conviction histories, *see* Janssen Decl. ¶¶ 3–4, 6–7, and naturalized citizens, *see* Trevino Decl. ¶ 2, 4. These perspectives are essential to this litigation and to vindicating Proposed Intervenors' rights.

## II.    IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION

The Court may utilize its broad discretion to grant permissive intervention when the movant files "a timely motion" and raises claims or defenses that share "a common question of law and fact" with the "main action." *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022) (quotation marks and citation omitted).

"In exercising its discretion," a court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Should the Court decline to grant intervention as of right, permissive intervention is appropriate here. As discussed above, this motion is timely, there will be no delay or prejudice to the existing parties, and their interests are not adequately represented by any of the existing parties. And Proposed Intervenors' defense goes directly to the matters at issue, such as whether (1) federal law permits the United States to force Arizona to give it the personal information it seeks; (2) legal protections for individual privacy prohibit the disclosure of that information; and (3) the United States' motivations and uses for the data sought are permissible. The proposed "intervention would not add any new issues to this litigation"; instead, Proposed Intervenors offer their unique perspective, including the perspective of people likely to be improperly flagged as ineligible to vote, to resolve the existing ones. *Ceja-Corona v. CVS Pharmacy, Inc.*, No. 12-cv-1868, 2014 WL 792132, at *3 (E.D. Cal. Feb. 26, 2014).

Because of this unique perspective, district courts routinely grant permissive intervention to advocacy organizations, even when a government party defends a challenged action. *See, e.g.*, *Republican Nat'l Comm. v. Aguilar*, No. 24-cv-518, 2024 WL 3409860 (D. Nev. July 12, 2024) (permitting intervention by voter advocacy group because it had "singular purpose" of "ensur[ing] voters [were] retained on or restored to the rolls," as opposed to the State's more "split mission" and diverse interests). If it does not grant intervention as of right, this Court should do the same here.

## CONCLUSION

For all these reasons, the Motion should be granted.

17

Dated: January 14, 2026

Respectfully submitted,

*/s/Victoria Lopez*
Victoria Lopez
ACLU Foundation of Arizona
2712 N. 7th Street
Phoenix, AZ 85014
(602) 650-1854
vlopez@acluaz.org
lnimlo@acluaz.org

Jonathan Topaz*
Theresa J. Lee*
Sophia Lin Lakin*
American Civil Liberties Union Foundation
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500
jtopaz@aclu.org
tlee@aclu.org
slakin@aclu.org

Sarah Brannon*
Patricia Yan*
American Civil Liberties Union Foundation
915 15th St. NW
Washington, DC 20001
(202) 457-0800
sbrannon@aclu.org
pyan@aclu.org

*Application for pro hac vice admission
forthcoming*

*Attorneys for Proposed Intervenors
Common Cause, Shannon Roivas,
Caleb D. Trevino, and Kara Janssen*

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2026, I electronically filed the attached
document to the Clerk's office using the CM/ECF system for filing.

*/s/Victoria Lopez*
Victoria Lopez

18