# EXHIBIT 1

Victoria Lopez (Bar no. 330042)
Lili Nimlo (Bar No. 038535)
ACLU Foundation of Arizona
2712 N. 7th Street
Phoenix, AZ 85014
(602) 650-1854
vlopez@acluaz.org
lnimlo@acluaz.org

Jonathan Topaz*
Theresa J. Lee*
Sophia Lin Lakin*
American Civil Liberties Union Foundation
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500
jtopaz@aclu.org
tlee@aclu.org
slakin@aclu.org

Sarah Brannon*
Patricia Yan*
American Civil Liberties Union Foundation
915 15th St. NW
Washington, DC 20001
(202) 457-0800
sbrannon@aclu.org
pyan@aclu.org


*Application for pro hac vice admission Forthcoming

Attorneys for Proposed Intervenors Common Cause,
Shannon Roivas, Caleb D. Trevino, and Kara
Janssen

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    *Plaintiff*,<br><br>            v.<br><br>Adrian Fontes, in his official capacity as Secretary of State for the State of Arizona,<br><br>    *Defendant*. | No. 2:26-cv-00066-SMB<br><br>Hon. Susan M. Brnovich<br><br>**[PROPOSED] MOTION TO DISMISS OF INTERVENOR-DEFENDANTS COMMON CAUSE, SHANNON ROIVAS, CALEB D. TREVINO, AND KARA JANSSEN** |

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 1

LEGAL STANDARD ........................................................................................................ 5

ARGUMENT ..................................................................................................................... 5

I.   THE UNITED STATES' DEMANDS EXCEED THE STATUTORY AUTHORITY
OF THE CRA AND ARE CONTRARY TO LAW. ........................................................... 5

   A.   The United States' Demand for Records Fails to Meet the Requisite Statutory
Requirements of the CRA. ............................................................................................. 6

   B.   Any Records Disclosed Under the CRA Should Be Redacted to Protect the
Constitutional Rights of the Voter. ............................................................................. 10

II.   THE UNITED STATES IS NOT ENTITLED TO SUMMARY DISPOSITION OF
ITS CRA CLAIM. ........................................................................................................... 14

CONCLUSION ............................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960) ............................ 1

*Becker v. United States*, 451 U.S. 1306 (1981) .................................................. 15

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) .............................................. 7

*Corner Post, Inc. v. Board of Governors of the Federal Reserve System*,
603 U.S. 799 (2024) ....................................................................... 10

*Coto Settlement v. Eisenberg*, 593 F.3d 1031 (9th Cir. 2010) ................................. 5

*Crystal v. United States*, 172 F.3d 1141 (9th Cir. 1999) ....................................... 9

*E.E.O.C v. Evening Entertainment Group LLC*, No. CV 11–01870–PHX–FJM,
2012 WL 2357261, (D. Ariz. June 20, 2012) ................................................. 9

*Federal Housing Finance Agency v. SFR Investments Pool 1, LLC*, No. 2:17-cv-
00914-GMN-PAL, 2018 WL 1524440 (D. Nev. Mar. 27, 2018) ................................. 9

*In re Coleman*, 208 F. Supp. 199 (S.D. Miss. 1962) .................................... 7, 13, 15

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) .......................................... passim

*Niz-Chavez v. Garland*, 593 U.S. 155 (2021) .................................................. 10

*Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) ................... 12

*Public Interest Legal Foundation v. Benson*, 136 F.4th 613 (6th Cir. 2025) ...................... 8

*Public Interest Legal Foundation v. Boockvar*, 431 F. Supp. 3d 553 (M.D. Pa.
2019) ................................................................................... 12

*Public Interest Legal Foundation, Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) .......... 11, 13

*Public Interest Legal Foundation, Inc. v. Dahlstrom*,
673 F. Supp. 3d 1004 (D. Alaska 2023) .................................................... 12

*Public Interest Legal Foundation, Inc. v. Matthews*, 589 F. Supp. 3d 932 (C.D. Ill.
2022) ................................................................................... 12

*Public Interest Legal Foundation, Inc. v. North Carolina State Board of Elections*,
996 F.3d 257 (4th Cir. 2021) ................................................................ 11, 12

*Sheetz v. County of El Dorado*, 601 U.S. 267 (2024) ........................................ 13

*United States v. Hernandez*, 322 F.3d 592 (9th Cir. 2003) ................................. 11

*United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Dec. 4, 2025) ................... 17

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ......................................................... 11

**Statutes**

18 U.S.C. § 2721 ............................................................................................ 16

26 U.S.C. § 7604 ............................................................................................ 16

44 U.S.C. § 3351 ............................................................................................ 16

5 U.S.C. § 552a ................................................................................................ 9

52 U.S.C. § 20507 .................................................................................. 8, 10, 11

52 U.S.C. § 20703 ............................................................................. 1, 6, 11, 15

52 U.S.C. § 20705 ............................................................................................ 16

52 U.S.C. § 21083 ....................................................................................... 8, 10

52 U.S.C. § 21085 ....................................................................................... 8, 10

Privacy Act of 1974,
Pub. L. No. 93-579, 88 Stat. 1896 (1974) .................................................... 16

**Other Authorities**

"Federal Judicial Circuits: Fifth Circuit," FEDERAL JUDICIAL CENTER,
https://perma.cc/9MSD-EFRB (last visited Dec. 9, 2025) .......................... 14

Br. for the United States as Amicus Curiae, *Project Vote/Voting for Am., Inc. v.
Long*, No. 11-1809 (4th Cir. Oct. 18, 2011) ............................................... 12

Br. for the United States as Amicus Curiae, *Pub. Int. Legal Found. v. Schmidt*, No.
23-1590 (3d Cir. Nov. 6, 2023) ................................................................... 12

Br. for the United States as Amicus Curiae, *Pub. Int. Legal Found., Inc. v. Bellows*, No. 23-1361 (1st Cir. July 25, 2024) .......................................................................... 12

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAG. (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html ........................................................................................ 4

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, Tracker of Justice Department Requests for Voter Information, Brennan Center for Justice (updated Dec. 19, 2025), https://perma.cc/A4A4-737Z ............................................................................................. 2

Steven F. Lawson, *Black Ballots: Voting Rights in the South, 1944-1969* (1976) ..................................... 14

U.S. Department of Justice, Civil Rights Division, *Federal Law Constraints on Post-Election "Audits"* (Jul. 28, 2021), https://perma.cc/74CP-58EH .................. 1, 15

**Rules**

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 5

## INTRODUCTION

In this action, the United States seeks to compel the disclosure of sensitive personal voter data to which it is not entitled, using the civil rights laws as a pretext. Because the United States failed to disclose the basis and purpose of its request for the data, dismissal should be granted, and its attempt to summarily dispose of this case via an improper motion to compel should be rejected.

Congress has repeatedly legislated to ensure that all eligible Americans can participate in free, fair, and secure elections. As the U.S. Department of Justice has explained, Title III of the Civil Rights Act of 1960 ("CRA"), the provision invoked here, was designed to "secure a more effective protection of the right to vote." U.S. Dep't of Just., C.R. Div., Federal Law Constraints on Post-Election "Audits" (Jul. 28, 2021), https://perma.cc/74CP-58EH (citing *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960); H.R. Rep. No. 86-956, at 7 (1959)).

The federal government's demand for Arizona's unredacted voter file—which contains sensitive personal information from every voter in the state—undermines the CRA's core purposes and is contrary to law. Releasing voter records without redaction and for purposes far afield from protecting voter access would deter voter participation and undermine the right to vote, especially given that the United States has fallen far short of fully and accurately setting forth "the basis and the purpose" for its data request, as required by the very statute that it invokes. 52 U.S.C. § 20703. The Court should dismiss.

## BACKGROUND

Beginning in May 2025, Plaintiff United States, through its Department of Justice ("DOJ"), began sending letters to election officials in at least forty states, making escalating

demands for production of statewide voter registration databases, with plans to gather data from all fifty states. *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, Tracker of Justice Department Requests for Voter Information, Brennan Ctr. for Just. (updated Dec. 19, 2025), https://perma.cc/A4A4-737Z.

On July 28, 2025, DOJ sent such a letter to Arizona Secretary of State Adrian Fontes ("the Secretary"), demanding, in part, "[t]he current electronic copy of Arizona's computerized statewide voter registration list" within 14 days of the date of the letter. Letter from Michael E. Gates to Adrian Fontes, Ex. 1, 2 (July 28, 2025), Dkt. No. 8-1 ("July 28 Letter"); *see* Compl. ¶¶ 21–23, at 4; ¶ B, at 5. The Secretary's office responded on August 8, 2025, stating it was "currently reviewing records responsive to [DOJ's] request pursuant to Arizona's public records law … and determining whether any redactions may be required by state law." Compl. ¶ 24; Letter from Luke Douglas to Michael E. Gates and Maureen Riordan, Ex. 2, 2 (Aug. 8, 2025), Dkt. No. 8-2 ("August 8 Letter").

DOJ responded on August 14, 2025, specifying that it was seeking, within seven days, a full and unredacted electronic copy of the statewide voter registration list that "contains *all fields*," including "full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number." *See* Compl. ¶¶ 25–28; Letter from Harmeet K. Dhillon to Adrian Fontes, Ex. 3, 3–4 (Aug. 14, 2025), Dkt. No. 8-3 ("August 14 Letter"). DOJ stated that "[t]he purpose of the request is to ascertain Arizona's compliance with the list maintenance requirements of the NVRA and HAVA," but did not elaborate further or refer to any compliance deficiencies with respect to Arizona's compliance with those statutes. August 14 Letter at 3.

Secretary Fontes responded on August 29. *See* Compl. ¶ 29; Letter from Adrian Fontes to Harmeet Dhillon, Michael E. Gates, and Maureen Riordan, Ex. 4 (Aug. 29, 2025), Dkt. No. 8-4 ("August 29 Letter"). Secretary Fontes noted that Arizona law prohibits the disclosure of much of the information DOJ was demanding in the unredacted voter file, including "month and day of birth date, the social security number or any portion thereof, the driver license number," and other personal information. *Id.* at 3 (quoting A.R.S. § 16-168(F)). Secretary Fontes also noted that neither of DOJ's letters "explain how your authority under the [Civil Rights Act of 1960 ("CRA")] applies to your stated purpose for demanding a copy of the voter registration database to ascertain Arizona's compliance with the list maintenance requirements of the NVRA and HAVA or preempts state privacy laws." *Id.* (internal quotation marks omitted). Secretary Fontes also noted that "the Privacy Act of 1974 imposes specific limitations upon Federal agencies, including [DOJ], when they collect … information concerning individual citizens," and warned that voters must be able to exercise their constitutional right to vote "without fear that the information they provide to do so could be disseminated in a way that fails to protect their privacy or is contrary to law." *Id.* Finally, Secretary Fontes noted that even if Arizona complied with DOJ's request, "that data alone does not provide evidence regarding Arizona's compliance with" the NVRA's list maintenance requirements, and instead "merely captures a snapshot in time and provides little information about list maintenance activities." *Id.* at 4.

The United States responded by filing this lawsuit, which is one of at least twenty-four that DOJ has recently initiated to compel states and election officials to disclose sensitive voter data. *See* Mot. to Intervene at 4 & n.2. A day later, the United States filed a

3

motion to compel the production of records: the unredacted Arizona voter file. Mot. for

Order to Compel Records, Dkt. No. 7, 3.

DOJ's request for private, sensitive voter data appears to be in connection with

never-before-seen efforts by the United States to construct a national voter database, and

to otherwise use untested forms of database matching to scrutinize voter rolls. According

to reporting, DOJ employees "have been clear that they are interested in a central, federal

database of voter information." Devlin Barrett & Nick Corasaniti, *Trump Administration

Quietly Seeks to Build National Voter Roll*, N.Y. Times, Sept. 9, 2025,

https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.    A

recent article extensively quoted a lawyer who recently left DOJ's Civil Rights Division,

describing the government's aims in these lawsuits:

> We were tasked with obtaining states' voter rolls, by suing them if necessary.
> Leadership said they had a DOGE person who could go through all the data
> and compare it to the Department of Homeland Security data and Social
> Security data. . . . I had never before told an opposing party, Hey, I want this
> information and I'm saying I want it for this reason, but I actually know it's
> going to be used for these other reasons. That was dishonest. It felt like a
> perversion of the role of the Civil Rights Division.

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES

MAG., Nov. 16, 2025, https://www.nytimes.com/interactive/2025/11/16/

magazine/trump-justice-department-staff-attorneys.html. Additional reporting reveals that

individuals who have previously sought to disenfranchise voters and overturn elections are

involved in these efforts. *See* Mot. to Intervene at 6 & nn.4–5. In its letters to Arizona, DOJ

also requested voter information related to felony convictions and citizenship status, *see*

July 28 Letter at 2–3—alarming because voters with felony convictions and naturalized

citizens are uniquely vulnerable to being wrongly removed from the voter rolls based on

imperfect data matching systems. Because the federal government has not provided a statutorily sufficient basis and purpose to support its request for Arizona's unredacted voter file, the relief should be denied and the Complaint dismissed.

## LEGAL STANDARD

A court must dismiss a complaint if, accepting all well-pleaded factual allegations as true, it does not "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court need not accept the complaint's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must state a "plausible claim for relief" and contain more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678–79. To perform this review, courts can "consider materials incorporated into the complaint or matters of public record." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

## ARGUMENT

### I.    THE UNITED STATES' DEMANDS EXCEED THE STATUTORY AUTHORITY OF THE CRA AND ARE CONTRARY TO LAW.

The United States' demand for Arizona's full and unredacted electronic voter file exceeds its statutory authority under the CRA. Against the backdrop of the turmoil of the Jim Crow era, Congress enacted the CRA, including the public records provisions in Title III, to facilitate investigations of civil rights violations preventing eligible citizens from voting due to discrimination. H.R. Rep. No. 86-956, at 7 (1959) (indicating the purpose of Title III "is to provide a more effective protection of the right of all qualified citizens to vote without discrimination on account of race"). But the Attorney General's access to

these records is not unbounded. If the Attorney General makes a demand for records, she must provide "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703.

The United States' records request is contrary to the CRA for at least two distinct reasons. *First*, in making this sweeping demand for Arizona's full and unredacted state voter registration list, the United States fails to offer a statutorily sufficient statement of "the basis and the purpose" of its records requests. *Second*, any records to which the United States may be entitled should be redacted to vindicate the privacy and constitutional rights of Arizona voters. Nothing in the CRA prevents the appropriate redaction of voters' sensitive personal information. Thus, the United States is not entitled to its requested relief.

### A.    The United States' Demand for Records Fails to Meet the Requisite Statutory Requirements of the CRA.

Title III of the CRA sets out requirements regarding federal election records, including a requirement in Section 301 for officers of elections to "retain and preserve, for a period of twenty-two months from the date of any" federal election, "all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," with certain exceptions regarding delivery and designation of custodians. 52 U.S.C. § 20701. Section 303 provides that, upon submitting a written demand that "*shall* contain a statement of *the basis <u>and</u> the purpose* therefor," the Attorney General or her representative must be permitted to inspect, reproduce, and copy such records or papers. *Id.* § 20703 (emphases added).

The federal government's requests to Arizona fail to provide "a statement of the basis and the purpose" sufficient to support disclosure of the unredacted voter file. *Id.* Contemporaneous case law immediately following the enactment of Title III of the CRA

shows that the "basis" is the statement for why the Attorney General believes there is a violation of federal civil rights law and the "purpose" explains how the requested records would help determine if there is a legal violation. *Kennedy v. Lynd*, 306 F.2d 222, 229 n.6 (5th Cir. 1962). Indeed, "basis" and "purpose" under Title III of the CRA have consistently been treated as distinct concepts. *See id.*; *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom.*, *Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963).

DOJ's correspondence states that the "purpose" of its request for Arizona's complete and current voter registration list was to "ascertain Arizona's compliance with the list maintenance requirements of the NVRA and HAVA." August 14 Letter at 3. But neither DOJ's complaint nor its letter invoking the CRA supplies a "basis" for why the United States believes Arizona's list maintenance procedures might violate the NVRA, HAVA, or the CRA in the first place. Nor does the Complaint (or DOJ's two letters) allege anomalies or anything inconsistent with reasonable list maintenance efforts in the data Arizona has reported to the U.S. Election Assistance Commission. *See* Compl. ¶¶ 19–30; July 28 Letter; August 14 Letter; *see also* August 29 Letter (Secretary Fontes noting that DOJ did "not explain how [its] authority under the CRA applies to [its] stated purpose for demanding a copy of the voter registration database 'to ascertain Arizona's compliance with the list maintenance requirements of the NVRA and HAVA….'" (quoting August 14 Letter at 3)).

Even if the United States had provided a proper "basis" for its demand—it does not—it fails to explain any connection between its purported "purpose" and the vast scope of its records request here. For example, it does not attempt to explain why the full and unredacted Arizona statewide voter file is necessary to determine whether Arizona has "conduct[ed] a general program that makes a reasonable effort to remove the names of

ineligible voters" by virtue of "death" or "a change in the residence of the registrant." 52 U.S.C. § 20507(a)(4); Compl. ¶ 12. Such records are not necessary: A single snapshot of a state's voter list does not and could not provide the information needed to determine if the state has made a "reasonable effort" to remove ineligible voters under Section 8 of the NVRA. Compl. ¶ 12; 52 U.S.C. § 20507(a)(4)(A)–(B); *see also* August 29 Letter at 4 (Secretary Fontes explaining that "[t]he voter registration list merely captures a snapshot in time and provides little information about list maintenance activities."). The NVRA and HAVA both leave the mechanisms for conducting list maintenance within the discretion of the State. *See* 52 U.S.C. §§ 20507(a)(4) & (c)(1), 21083(a)(2)(A), 21085. The *procedures* carried out by a state or locality establish its compliance; the unredacted voter file does not. Even were the United States to use voter file data to identify voters who had moved or died on Arizona's voter list at a single point in time, that would not amount to Arizona failing to comply with the "reasonable effort" required by the NVRA or HAVA. *See, e.g.*, *Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 624–27 (6th Cir. 2025) (describing a "reasonable effort" as "a serious attempt that is rational and sensible" and rejecting any "quantifiable, objective standard" in this context), *petition for cert. filed* (U.S. Oct. 7, 2025) (No. 25-437).

The CRA's basis and purpose requirements are critical safeguards that prevent the statute from being used to obtain records for reasons that are speculative, unrelated to the CRA's aims, or otherwise contrary to law. The statutory basis and purpose requirements require a specific statement as to the reason for requesting the information and how that information will aid in the investigatory analysis. For example, in addressing an analogous power by which the IRS obtains records for investigations via administrative subpoenas, courts have found that the test of judicial enforcement of such subpoenas includes an

evaluation of whether the investigation is "conducted for a legitimate purpose," *Crystal v. United States*, 172 F.3d 1141, 1143 (9th Cir. 1999) (quoting *United States v. Powell*, 379 U.S. 48, 57–58 (1964)), and that the administrative subpoena should not be "overbroad" such that it "amount[s] to a fishing expedition," *E.E.O.C v. Evening Ent. Grp. LLC*, No. CV 11–01870–PHX–FJM, 2012 WL 2357261, at *1 (D. Ariz. June 20, 2012).

As such, even if some portion of the voter file were necessary to investigate "Arizona's compliance with federal election law," Compl. ¶ 21, the United States has not provided any justification for why the full unredacted voter file is necessary to carry out this purported purpose. For decades, DOJ has neither sought nor required a full and unredacted voter file in its investigations regarding NVRA compliance. The United States' failure to articulate the basis and the purpose for demanding the full and unredacted voter file is ground to hold its demand insufficient as a matter of law.

Title III's basis and purpose requirement is especially important here, where public reporting and public, judicially noticeable documents show that DOJ did not disclose the main basis and purpose for its demand: building a national voter file for its own use, to be shared with other agencies. *See* Mot. to Intervene at 5–6 & nn.3–5. As Congress has never authorized the creation of such a database, its creation would violate the federal Privacy Act. *See* 5 U.S.C. § 552a(e)(7) (provision of federal Privacy Act prohibiting creation or maintenance of any database "describing how any individual exercises rights guaranteed by the First Amendment," which necessarily includes exercising the right to vote).

DOJ's failure to fully and accurately provide this information is fatal. Section 303 of the CRA requires a statement of "*the* basis and *the* purpose" of a records request, and by twice using the definite article here, the statute requires not just *a* basis or purpose among

9

many, but *the* complete basis and purpose underlying the request. *See Niz-Chavez v. Garland*, 593 U.S. 155, 165–66 (2021); *see also, e.g.*, *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 817 (2024) (emphasizing distinction between the definite and the indefinite article). This is yet another ground for dismissal.

Even setting aside this fatal deficiency, compliance with the NVRA and HAVA also cannot be the true basis and purpose for the data requests at issue here based on the United States' own statements. The memorandum of understanding that DOJ has proposed to states, *see* MOU, actually *runs afoul* of the NVRA and HAVA. As noted, the NVRA and HAVA require a state to conduct a "reasonable effort" to remove ineligible voters from the rolls, 52 U.S.C. §§ 20507(a)(4), 21083(a)(4)(A), and the NVRA includes safeguards to protect voters from erroneous removal, 52 U.S.C. § 20507. But the MOU indicates multiple contemplated violations of those statutory requirements. First, it seeks to give the federal government authority to identify supposedly ineligible voters, directly contrary to statutory text, *id*. § 21085 (methods of complying with HAVA "left to the discretion of the State"). MOU at 2, 5. Second, its substantive terms seek to compel states to remove supposedly ineligible voters "within forty-five (45) days," MOU at 5, in a manner that would violate multiple protections of the NVRA, 52 U.S.C. § 20507. This MOU demonstrates that the United States' supposed purpose is not in compliance with federal law but aggrandizes authority to a federal agency in ways contrary to federal law.

### B.    Any Records Disclosed Under the CRA Should Be Redacted to Protect the Constitutional Rights of the Voter.

Even if disclosure were appropriate, sensitive personal voter information would still be subject to redaction, which is not barred under Title III. Courts have found that redaction

may be required to prevent the disclosure of sensitive personal information that would create an intolerable burden on the constitutional right to vote. The cases interpreting Section 8(i) of the NVRA are instructive, as courts have consistently permitted—and sometimes required—redaction of voters' sensitive personal data before disclosure to protect voter privacy and ensure compliance with federal and state law.

Like the CRA, the NVRA is silent as to how sensitive personal information should be treated during disclosure. *See* 52 U.S.C. §§ 20703, 20507(i)(1). Courts must interpret the disclosure provisions in these statutes in a manner that does not unconstitutionally burden the right to vote. *See United States v. Hernandez*, 322 F.3d 592, 594–95 (9th Cir. 2003) (noting "the fundamental principle of judicial restraint that ordinarily requires courts to construe statutes, if it is fairly possible to do so, in a way that avoids unnecessarily addressing constitutional questions") (citing *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001)).

Federal courts throughout the country have consistently struck this balance, interpreting the "all records concerning" language in Section 8(i) to permit—and sometimes require—redaction and the protection of confidential materials. As the First Circuit has noted, "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File," and such redaction "can further assuage the potential privacy risks implicated by the public release of the Voter File." *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024); *see also Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 266–68 (4th Cir. 2021) (holding that potential connection to ongoing criminal investigations and possibility of erroneously labeling a voter as a noncitizen and subjecting them to public harassment warrants maintaining confidentiality of records). Other courts have consistently recognized

that the NVRA does not compel the release of sensitive information that is otherwise protected by federal or state laws.[1] And Arizona law in fact expressly protects from public disclosure much of the information that would be included in the unredacted voter file that DOJ demands. *See* A.R.S. § 16-168(F) (protecting from disclosure, among other things, the "month and day of birth date, the social security number or any portion thereof, the driver license number," and other personal information of Arizona voters).

Redaction may also be affirmatively required if the disclosure would "create[] an intolerable burden on [the constitutional right to vote] as protected by the First and Fourteenth Amendments." *Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (internal quotation marks and citation omitted). The Fourth Circuit, even while granting access to voter registration applications, affirmed the importance of redacting Social Security numbers, which are "uniquely sensitive and vulnerable to abuse."[2] *Id.* The court emphasized that the NVRA reflected Congress's view that the right to vote was "fundamental," and that the unredacted release of records risked deterring citizens from registering to vote and thus created an "intolerable burden" on this

---

[1] *See, e.g.*, *N.C. State Bd. of Elections*, 996 F.3d at 264; *Pub. Int. Legal Found., Inc. v. Dahlstrom*, 673 F. Supp. 3d 1004, 1015–16 (D. Alaska 2023); *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022), *clarified on denial of reconsideration*, 2022 WL 1174099 (C.D. Ill. Apr. 20, 2022); *Pub. Int. Legal Found. v. Boockvar*, 431 F. Supp. 3d 553, 561–63 (M.D. Pa. 2019).

[2] The United States itself has explained—on multiple occasions—that the NVRA does not prohibit the States from redacting "uniquely sensitive information" when disclosing voting records. *See, e.g.*, Br. for the United States as Amicus Curiae, *Pub. Int. Legal Found., Inc. v. Bellows*, No. 23-1361 (1st Cir. July 25, 2024), 2023 WL 4882397 at *27–28; Br. for the United States as Amicus Curiae, *Pub. Int. Legal Found. v. Schmidt*, No. 23-1590 (3d Cir. Nov. 6, 2023), https://perma.cc/3BQ9-36UJ ("States may redact certain information before disclosing Section 8(i) records."); Br. for the United States as Amicus Curiae, *Project Vote/Voting for Am., Inc. v. Long*, No. 11-1809 (4th Cir. Oct. 18, 2011), 2011 WL 4947283, at *11, 25–26.

fundamental right. *Id.* at 334, 339; *cf. In re Coleman*, 208 F. Supp. 199, 200 (S.D. Miss. 1962) (noting, in the context of a Title III records request, multiple considerations which could be "[s]ignificant," including that "[i]t is not claimed that these official records are privileged, or exempt from discovery for any sound reason of public policy," or "that an inspection of these records would be oppressive, or any unlawful invasion of any personal constitutional right"). As such, public disclosure provisions such as those in the NVRA and Title III of the CRA must be interpreted to avoid this unconstitutional burden. *See Long*, 682 F.3d at 339; *Bellows*, 92 F.4th at 56. The danger of imposing those burdens on Arizona voters and civic organizations is present here. *See* Decl. of Shannon Roivas ("Roivas Decl."), Ex. 3 to Mot. to Intervene, ¶¶ 5, 9; Decl. of Caleb D. Trevino ("Trevino Decl."), Ex. 4 to Mot. to Intervene, ¶¶ 2, 4, 8–10; Decl. of Kara Janssen ("Janssen Decl."), Ex. 5 to Mot. to Intervene, ¶¶ 3–4, 6–7; Decl. of Arizona Program Director for Common Cause Jennifer Guzman Galvan ("Galvan Decl."), Ex. 2 to Mot. to Intervene, ¶¶ 5–6, 11–15.

The same privacy and constitutional concerns warranting redactions under the NVRA apply equally to requests under the CRA. No matter the statutory mechanism, conditioning the right to vote on the release of voters' sensitive private information "creates an intolerable burden on that right." *Long*, 682 F.3d at 339 (citation omitted); *cf. Sheetz v. Cnty. of El Dorado*, 601 U.S. 267, 281–82 (2024) (Gorsuch, J., concurring) ("[O]ur Constitution deals in substance, not form. However the government chooses to act, . . . it must follow the same constitutional rules."). And the limited case law considering CRA records requests acknowledges that courts retain the "power and duty to issue protective orders," *Lynd*, 306 F.2d at 230, such as the redaction of sensitive fields that courts have consistently determined are entitled to protection from disclosure.

## II.   THE UNITED STATES IS NOT ENTITLED TO SUMMARY DISPOSITION OF ITS CRA CLAIM.

The United States makes expansive claims that Title III universally "displaces the Federal Rules of Civil Procedure by creating a 'special statutory proceeding'" where "'[a]ll that is required is a simple statement by the Attorney General'" that "a written demand for Federal election records and papers covered by the statute" was made, "explaining that the person against whom an order is sought has failed or refused to make the requested records" available. Mem. in Supp. of the Request for Order to Compel Prod. ("Mot. to Compel"), Dkt. No. 8, 6 (quoting *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962)); *see also* Compl. ¶¶ 1–4. This argument is contrary to the Federal Rules and rests entirely on a single set of non-binding cases decided more than sixty years ago, in the early 1960s, in a different circuit and a drastically different historical context, including primarily *Lynd*, 306 F.2d.

The United States briefly acknowledges that "[c]aselaw addressing the CRA in any depth is confined to courts within the Fifth Circuit in the early years following the CRA's enactment. Since then, courts have not had occasion to revisit the issue." Mot. to Compel at 5 n.1. But the United States studiously ignores why that is the case. *Lynd* arose in a specific historical context: the Jim Crow-era Fifth Circuit—which then included Alabama, Florida, Georgia, Louisiana, Mississippi, and Texas.[3] In these states, election officials and others, including judges, notoriously used every possible means to block Black Americans from registering to vote.[4] It was against this backdrop that the Fifth Circuit noted that "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis

---

[3]    "Federal Judicial Circuits: Fifth Circuit," FEDERAL JUDICIAL CENTER, https://perma.cc/9MSD-EFRB (last visited Dec. 9, 2025).

[4]    *See generally, e.g.*, Steven F. Lawson, *Black Ballots: Voting Rights in the South, 1944-1969* (1976).

and the purpose' contained in the written demand is not open to judicial review or ascertainment." *Lynd*, 306 F.2d at 226. In that context, "the factual foundation for" the basis and the purpose of the Attorney General's request was self-evident, and plenary consideration thus not required. *See id.* That court's treatment of the CRA more than sixty years ago cannot be divorced from its context.[5]

By contrast, more than sixty years later, the context of *this* records request could not be more different. The United States now invokes the CRA—which was enacted to "secure a more effective protection of the right to vote"[6]—for unprecedented purposes, to make sweeping demands for extensive voter data with no showing or claim of legal deficiencies or violations of rights, while making extraordinary demands for sensitive personal information. Even more alarming, there is extensive reporting that the purported basis and purpose of DOJ's request are likely pretextual. *See* Mot. to Intervene at 5–7 & nn.3–6.

Nothing in Title III insulates the sufficiency of the requirement for a "statement of the basis and the purpose" from standard judicial review. *See* 52 U.S.C. § 20703. Since *Lynd*, the Supreme Court has reaffirmed that "the Federal Rules apply to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings." *Becker v. United States*, 451 U.S. 1306, 1307–08 (1981) (citation

---

[5] *See also In re Coleman*, 208 F. Supp. 199, 201 (S.D. Miss. 1962) (acknowledging in the context of Title III of the CRA that while "[t]he right of free examination of official records is the rule," there could be "exception[s]" where "the purpose is speculative, or from idle curiosity").

[6] *See* U.S. Dep't of Just., C.R. Div., *Federal Law Constraints on Post-Election "Audits"* (Jul. 28, 2021), https://perma.cc/74CP-58EH; H.R. Rep. No. 86-956, at 7 (1959).

and quotation marks omitted); *see also, e.g.*, *Powell*, 379 U.S. at 57–58 (holding IRS Commissioner must establish statutory requirements before enforcing tax subpoena). Just two years after *Lynd*, the Court held that the Federal Rules governed proceedings to enforce a statute providing the United States with the power to request records in terms materially identical to the CRA. *Powell*, 379 U.S. at 57–58 & n.18 (citing 26 U.S.C. § 7604(a)); *compare* 26 U.S.C. § 7604(a) (the "district court . . . *shall have jurisdiction by appropriate process* to compel such attendance, testimony, or production of books, papers, records, or other data[.]" (emphasis added)), *with* 52 U.S.C. § 20705 (the "district court . . . *shall have jurisdiction by appropriate process* to compel the production of such record or paper." (emphasis added)).

Even in *Lynd*, the court emphasized, "[W]e are not discussing confidential, private papers and effects. We are, rather dealing with public records which ought ordinarily to be open to legitimate reasonable inspection." 306 F.2d at 231. The court also noted that Section 305 of the CRA authorizes only jurisdiction by "appropriate process" to compel document production, which the court had "no doubt" would "include the power and duty to issue protective orders"—such as orders protecting and redacting sensitive information. 52 U.S.C. § 20705; *Lynd*, 306 F.2d at 230. Thus, even in the 1960s, before sensitive personal identifying information such as Social Security Numbers or driver's license numbers were widely collected as part of the voter registration record, and before any federal laws had been passed to protect and constrain access to personal information,[7] the

---

[7] *E.g.*, Privacy Act of 1974, Pub. L. No. 93-579, 88 Stat. 1896 (1974); Driver's Privacy Protection Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796 (1994), codified at 18 U.S.C. § 2721 *et seq.*; E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899 (2002); Federal Information Security Modernization Act of 2014, Pub. L. No. 113-283, 128 Stat. 3073 (2014), codified at 44 U.S.C. §§ 3351 *et seq.* (2014).

court recognized the distinction between the disclosure of "confidential, private" information and "public records" that would already "ordinarily [] be open to legitimate reasonable inspection," *Lynd*, 306 F.2d at 231, and anticipated the possibility that the "duty to issue protective orders" would arise for certain CRA records requests, *id.* at 230.

The unredacted voter file contains "confidential, private" personal identifying information of Arizona voters that would *not* ordinarily be open to reasonable inspection. *Id.* at 231. To argue that the United States is entitled to summary relief and the forced provision of an unprecedented trove of "confidential, private" information, without *any* review of its statutorily required statement of the basis and the purpose for its demand, would go even further than *Lynd* did—in a context where, very much unlike in *Lynd*, the basis and purpose are not inarguably clear but appear pretextual. The court presiding over the federal government's similar action in California has already recognized that the United States' motion to compel seeks "to reach the ultimate question in this case regarding the production of records," and "thousands of voters' lives will be impacted by this case." Hr'g Tr. at 5:3–9, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Dec. 4, 2025), Dkt. No. 100. It denied the United States' first motion to compel, *id.*, and vacated briefing on one filed the following day, ordering that the motion deadlines would be reset "at a later date following a scheduling conference held pursuant to Federal Rule of Civil Procedure 16." Order, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Dec. 15, 2025), Dkt. No. 114.

## CONCLUSION

The United States' motion to compel should be denied and the complaint dismissed.

Dated: January 14, 2026

Respectfully submitted,


*/s/ Victoria Lopez*
Victoria Lopez
ACLU Foundation of Arizona
2712 N. 7th Street
Phoenix, AZ 85014
(602) 650-1854
vlopez@acluaz.org
lnimlo@acluaz.org

Jonathan Topaz*
Theresa J. Lee*
Sophia Lin Lakin*
American Civil Liberties Union Foundation
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500
jtopaz@aclu.org
tlee@aclu.org
slakin@aclu.org

Sarah Brannon*
Patricia Yan*
American Civil Liberties Union Foundation
915 15th St. NW
Washington, DC 20001
(202) 457-0800
sbrannon@aclu.org
pyan@aclu.org


*Application for pro hac vice admission
forthcoming*


*Attorneys for Proposed Intervenors
Common Cause, Shannon Roivas,
Caleb D. Trevino, and Kara Janssen*

18