1  KRISTIN K. MAYES
2  Attorney General

3  Karen J. Hartman-Tellez (No. 021121)
   Kara Karlson (No. 029407)
4  Senior Litigation Counsel
5  Kyle Cummings (No. 032228)
   Assistant Attorney General
6  2005 North Central Avenue
   Phoenix, Arizona 85004-1592
7  Telephone (602) 542-8323
8  Karen.Hartman@azag.gov
   Kara.Karlson@azag.gov
9  Kyle.Cummings@azag.gov
   adminlaw@azag.gov
10

11 *Attorneys for Defendant Arizona*
   *Secretary of State Adrian Fontes*
12

13          **IN THE UNITED STATES DISTRICT COURT**

14             **FOR THE DISTRICT OF ARIZONA**

15
   United States of America,                    No. CV-26-00066-PHX-SMB
16
                    Plaintiff,                   **ARIZONA SECRETARY OF**
17                                               **STATE'S MOTION TO DISMISS**
18 v.

19 Adrian Fontes, in his official capacity as
   Secretary of State for the State of Arizona,
20
                    Defendant.
21

22

23

24

25

26

27

28

1    Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Arizona Secretary of State Adrian

2    Fontes (the "Secretary") moves to dismiss the United States' Complaint.  This Motion is

3    supported by the following Memorandum of Points and Authorities.

4    **MEMORANDUM OF POINTS AND AUTHORITIES**

5    **INTRODUCTION**

6    This case is one of more than two dozen that the Plaintiff United States has filed

7    to obtain access to states' entire unredacted voter registration databases with all voters'

8    sensitive, personally identifiable information ("PII").  So far, the three federal district

9    courts that have ruled on the merits in those cases—two of which are within the Ninth

10   Circuit—have concluded that Plaintiff is not entitled to the records it seeks as a matter of

11   law and dismissed the complaints with prejudice.  *See United States v. Benson,* No. CV-

12   25-1148, 2026 WL 362789, at *11 (W.D. Mich. Feb. 10, 2026); *United States v.*

13   *Oregon,* No. CV-25-01666-MTK, 2026 WL 318402, at *13 (D. Or. Feb. 5, 2026);

14   *United States v. Weber*, No. CV-25-09149-DOC-ADS, 2026 WL 118807, at *20 (C.D.

15   Cal. Jan. 15, 2026).  The legal issues in this case are indistinguishable from the issues

16   considered in those cases, and this Court should reach the same result and dismiss the

17   Complaint with prejudice.

18   Plaintiff's single count Complaint seeks an order directing the Secretary to turn

19   over a complete, unredacted, electronic copy of Arizona's computerized statewide voter

20   registration database (the "VRDB").  (Doc. 1, at 7, ¶ B).  It demands that the Secretary

21   provide the VRDB in electronic format "with all fields" of information associated with

22   each individual voter's registration record.  (*Id.*).  In short, Plaintiff seeks sensitive

23   personal information and voting history about each of Arizona's nearly five million

24   registered voters.  Moreover, Plaintiff's demand encompasses voters whose registration

25   records are confidential because those voters hold sensitive government positions or

26   have been victims of domestic or sexual violence or stalking.  A.R.S. §§ 16-165, 41-163.

27   Arizona law provides for public access to portions of the VRDB, but expressly

28   bars release of certain identifying information, including a voter's social security

1

number or portion thereof, driver's license number, Indian census number, father's name or mother's maiden name, the state or country of birth, e-mail address, and signature. A.R.S. § 16-168(F).  Moreover, the right of public access does not extend to the voter registration information of persons who participate in the state's address confidentiality program due to domestic violence or those "eligible persons"—such as those employed in the criminal justice system and the courts—who have obtained a court order shielding their records from public view.  A.R.S. §§ 16-153(A), 41-166(D).  But Plaintiff's demand seeks even that information made confidential by Arizona law.

The Complaint's sole count relies on Title III of the Civil Rights Act of 1960 (the "CRA"), 52 U.S.C. § 20701, *et seq.*—a Civil Rights-era law that allows the Attorney General to inspect elections records at the office of the election official in possession of those records to enforce laws designed to prevent race discrimination in voting. But that law does not support Plaintiff's sweeping demand for Arizona voters' private information for four independently sufficient reasons.  *First*, Plaintiff has not provided a statement of the basis and purpose for its demand for records that complies with the CRA.  *See* 52 U.S.C. § 20703.  *Second*, the CRA provision on which Plaintiff relies is not part of the enforcement scheme of the National Voter Registration Act of 1993 (the "NVRA"), 52 U.S.C. § 20501 *et seq*. and the Help America Vote Act of 2002 ("HAVA"), 52 U.S.C. § 20901 *et seq,* which were enacted more than thirty and fifty years after the CRA, respectively.  *Third*, Plaintiff has not complied with federal laws, including the Privacy Act of 1974, the E-Government Act, and the Driver's Privacy Protection Act (the "DPPA") regarding records like Arizona's VRDB.  *Finally*, the CRA does not preempt the Arizona laws that protect voter information. Consequently, the Complaint fails as a matter of law, and the Court should dismiss the Complaint without leave to amend.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 28, 2025, Plaintiff, acting through the Civil Rights Division of the Department of Justice (the "DOJ"), sent the Secretary a letter purporting to seek

information concerning Arizona's procedures for compliance with the voter registration list maintenance provisions of the NVRA.  (Doc. 8-1 at 1).[1]  The July 28 letter (1) asked several questions about Arizona's responses to the Election Assistance Commission's biennial Election Administration and Voting Survey, (2) sought the contact information for Arizona election officials responsible for voter registration list maintenance, and (3) demanded a copy of the VRDB "includ[ing] all fields contained with the list." (*Id.* at 1-3).  The DOJ asserted that it was seeking the VRDB pursuant to 52 U.S.C. § 20507(i)(1), the NVRA's records provision.  (*Id.* at 1).  On August 8, 2025, the Secretary provided a partial response to the July 28 letter and indicated that his office was continuing to work on the items requested.  (Doc. 8-2, at 1).  In an August 14, 2025 letter, the DOJ reiterated its demand for the complete VRDB and asserted for the first time that the CRA supported its demand.  (Doc. 8-3, at 4).

The Secretary responded to both DOJ letters on August 29, 2025.  (Doc. 8-4). The Secretary answered the questions in the July 21 letter, including extensive information about the state's list maintenance practices.  (*Id. at* 1-3).  With respect to the renewed demand for the VRDB, the Secretary explained that "Arizona privacy law prohibits this or any other state office from releasing certain sensitive personal data." (*Id.* at 3).  The Secretary also stated that the DOJ did not "explain how [its] authority under the CRA applies to" its demand for an unredacted copy of the VRDB to ascertain compliance with the NVRA and that the VRDB "alone does not provide evidence regarding Arizona compliance with its NVRA obligation."  (*Id*. at 3-4).  Finally, the Secretary explained that the Privacy Act of 1974 "imposes specific limitations upon Federal agencies . . . when they collect . . . information concerning individual citizens," and requested that the DOJ provide information concerning its compliance with the Privacy Act.  (*Id*. at 3-4).  The DOJ never responded to the Secretary's August 29 letter,

---

[1] The correspondence between the DOJ and the Secretary is referenced in the Complaint, and was attached to Plaintiff's Motion to Compel.  (*See* Doc. 8).  This Court may properly consider it in connection with this Motion to Dismiss.  *See Steinle v. City and Cnty. of San Francisco*, 919 F.3d 1154 1132-63 (9th Cir. 2019).

and instead filed this lawsuit on January 6, 2026.

At present, Plaintiff has filed lawsuits against at least twenty-nine states and the District of Columbia seeking those states' complete voter registration lists.[2]  To date, the only three courts to rule on the merits in those cases have granted motions to dismiss without leave to amend.  *See Weber*, 2026 WL 118807, at *20; *Oregon*,  2026 WL 318402, at *13; *Benson*, 2026 WL 362789, at *11.

## ARGUMENT

### I.    Legal Standard.

"A complaint may be dismissed for failure to state a claim only when it fails to state a cognizable legal theory or fails to allege factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp*., 824 F.3d 1156, 1159 (9th Cir. 2016);

---

[2] *United States v. Bellows*, No. CV-25-00468 (D. Me.) (filed Sep. 16, 2025); *United States v. State of Oregon*, No. CV-25-01666 (D. Or.) (filed Sep. 16, 2025); *United States v. Benson*, No. CV-25-01148 (W.D. Mich.) (filed Sep. 25, 2025); *United States v. Board of Elections of the State of New York*, No. CV-25-01338 (N.D.N.Y.) (filed Sep. 25, 2025); *United States v. Commonwealth of Pennsylvania*, No. CV-25-01481 (W.D. Pa.) (filed Sep. 25, 2025); *United States v. NH Secretary of State*, No. CV-25-00371 (D.N.H) (filed Sep. 25, 2025); *United States v. Simon*, No. CV-25-03761 (D. Minn.) (filed Sep. 25, 2025); *United States v. Weber*, No. CV-25-09149 (C.D. Cal.) (filed Sep. 25, 2025); *United States v. DeMarinis*, No. CV-25-03934 (D. Md.) (filed Dec. 1, 2025); *United States v. Hanzas*, No. CV-25-00903 (D. Vt.) (filed Dec. 1, 2025); *United States v. Albence*, No. CV-25-01453 (D. Del.) (filed Dec. 2, 2025); *United States v. Amore*, No. CV-25-00639 (D.R.I.) (filed Dec. 2, 2025); *United States v. Hobbs*, No. CV-25-06078 (W.D. Wash.) (filed Dec. 2, 2025); *United States v. Oliver*, No. CV-25-01193 (D.N.M.) (filed Dec. 2, 2025); *United States v. Galvin*, No. CV-25-13816 (D. Mass.) (filed Dec. 11, 2025); *United States v. Griswold*, No. CV-25-03967 (D. Colo.) (filed Dec. 11, 2025); *United States v. Nago*, No. CV-25-00522 (D. Haw.) (filed Dec. 11, 2025); *United States v. Evans*, No. CV-25-04403 (D.D.C.) (filed Dec. 18, 2025); *United States v. Matthews*, No. CV-25-03398 (C.D. Ill.) (filed Dec. 18, 2025); *United States v. Wisconsin Elections Commission*, No. CV-25-01036 (W.D. Wis.) (filed Dec. 18, 2025); *United States v. Thomas*, No. CV-26-00021 (D. Conn.) (filed Jan. 6, 2026); *United States v. Beals*, No. Cv-26-00042 (E.D. Va.) (filed Jan. 16, 2026); *United States v. Raffensperger*, No. CV-26-00485 (N.D. Ga.) (filed Jan. 23, 2026); *United States v. Adams*, No. CV-26-00019-GFVT (E.D. Ky.) (filed Feb. 26, 2026); *United States v. Caldwell*, No. CV-26-02025 (D.N.J.) (filed Feb. 26, 2026);  *United States v. Ziriax*, No. CV-26-00361 (W.D. Okla.) (filed Feb. 26, 2026); *United States v. Henderson,* No. CV-26-166 (D. Utah) (filed Feb. 26, 2026); *United States v. Warner*, No. CV-26-00156 (D.W.V.) (filed Feb. 26, 2026).

Fed. R. Civ. P.12(b)(6).  This Court may consider affirmative defenses at the motion to dismiss phase.  *Sams v. Yahoo! Inc*., 713 F.3d 1175, 1179 (9th Cir. 2013).  Specifically, if the Court sees "some obvious bar to securing relief on the face of the complaint," it can dismiss based on an affirmative defense.  *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co*., 931 F.3d 966, 973 (9th Cir. 2019) (cleaned up).  As demonstrated below, the Complaint on its face includes three "obvious bar[s]" to relief:  Plaintiff's failure to comply with the Privacy Act, the E-Government Act, and the DPPA.

**II.    The CRA Does Not Authorize Plaintiff's Demand for the VRDB.**

**A.    Plaintiff Has Not Met the CRA Requirement to Provide a Basis and Purpose for Its Demand.**

The CRA was "designed to secure a more effective protection of the right to vote."  *Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960).  To advance this purpose, the CRA imposes document retention requirements on elections officials: "[e]very officer of election," or designated custodian, "shall retain or preserve, for a period of twenty-two months from the date of any general, special, or primary election" for federal office, "all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election . . . ."  52 U.S.C. § 20701; *see also* 52 U.S.C. § 20706.  The CRA further provides that the Attorney General may inspect these records if she presents "a statement of the basis and the purpose therefor" with the request.  52 U.S.C. § 20703.

This case should be dismissed because Plaintiff failed to provide "a statement of the basis *and* the purpose," of its demand for the VRDB.  *Id*.  (emphasis added). Plaintiff asserted in its Complaint that it provided the basis and purpose in its August 14, 2025 letter to the Secretary.  (Doc. 1 at ¶¶ 31-32).  But the August 14 letter stated only that "[t]he *purpose* of the request is to ascertain Arizona's compliance with the list maintenance requirements of the NVRA and HAVA."  (Doc. 8-3, at 2) (emphasis added).  The DOJ's statement amounts, at best, only to a statement of its purpose.  In addition, the DOJ's letters fail to provide any statement of the basis for its demand—*i.e.*,

1    its grounds for suspecting that Arizona has violated the NVRA or HAVA, or to explain

2    how the requested records are relevant to such an investigation.  Both the DOJ and

3    courts have long treated "purpose" and "basis" separately.  *See Kennedy v. Lynd*, 306

4    F.2d 222, 231 n.6 (5th Cir. 1962).  Allowing Plaintiff to obtain records without showing

5    both a basis and a purpose would nullify Congress's deliberate decision to impose this

6    requirement.  *See In re Saldana*, 122 F.4th 333, 342-43 (9th Cir. 2024); *see also*

7    *Confederated Tribes & Bands of Yakama Nation v. Yakima Cnty.*, 963 F.3d 982, 990

8    (9th Cir. 2020) ("[W]hen 'and' is used to join two concepts, it is usually interpreted to

9    require 'not one or the other, but both.'").

10    ### 1.    The CRA Does Not Cover Plaintiff's Stated Purpose.

11    Plaintiff's demand for records further fails to satisfy the CRA's requirements

12    because the stated purpose falls outside the scope of the CRA.  The CRA's text and

13    history limit it to investigations of civil rights violations, namely, efforts to prevent

14    eligible voters from registering to vote for illegal reasons like race discrimination.  For a

15    "statement of the basis and the purpose" in a CRA demand to be valid, it must relate to a

16    civil rights investigation, not investigation of compliance with laws that were enacted

17    decades after the CRA and are unrelated to discriminatory practices.

18    Justification or purposes unrelated to the CRA are insufficient to invoke the law's

19    records production requirements.  Plaintiff's reason for invoking the CRA's production

20    provision must be consistent with the text and purpose of the statute. *Cf. United*

21    *Steelworkers of Am.*, *AFL-CIO-CLC v. Weber*, 443 U.S. 193, 201-02 (1979) (concluding

22    that "[t]he prohibition against racial discrimination in . . . Title VII must therefore be

23    read against the background of [its] legislative history . . . and the historical context from

24    which the Act arose") (internal citation omitted); *Doe v. Kamehameha Sch./Bernice*

25    *Pauahi Bishop Est.*, 470 F.3d 827, 846 (9th Cir. 2006) (quoting *United Steelworkers* in

26    race discrimination case under 42 U.S.C. § 1981).  This Court therefore must read the

27    statute's text alongside its context and history.  *Avila v. Spokane Sch. Dist. 81*, 852 F.3d

28    936, 941 (9th Cir. 2017). The overwhelming evidence shows that the CRA was enacted

to facilitate investigation into discrimination in voting, not a nationwide fishing expedition for sensitive PII. A valid "statement of the basis and purpose," then, must relate to such an investigation.

Both congressional reports and President Eisenhower's signing statement indicate that the CRA itself focused on the "key constitutional right of every American, the right to vote *without discrimination on account of race or color*." Dwight D. Eisenhower, Statement by the President Upon Signing the Civil Rights Act of 1960 (May 6, 1960), https://www.presidency.ucsb.edu/documents/statement-the-president-upon-signing-thecivil-rights-act-1960 ("CRA Statement") (emphasis added). The CRA was enacted to further that overarching goal. The year before the enactment, the President's recommendations to Congress emphasized the "serious obstacle" that insufficient access to voter registration records posed to safeguarding the right to vote under the Civil Rights Act of 1957. Dwight D. Eisenhower, Special Message to the Congress on Civil Rights (Feb. 5, 1959), https://www.presidency.ucsb.edu/documents/special-message-the-congress-civil-rights-0. Once enacted, the President's signing statement recognized that the CRA "requires the retention of voting records, [which] will be of invaluable aid in the successful enforcement of existing voting rights statutes." CRA Statement.

In fact, all contemporaneous records related to the enactment strongly indicate that the CRA was enacted to build upon the Civil Rights Act of 1957. As a House committee report explained, "Title III is a necessary supplement to part IV of the Civil Rights Act of 1957," and "would implement Federal enforcement" of this provision. H.R. Rep. No. 86-956, at 26 (1959). And the congressional record repeatedly shows that the CRA was meant to facilitate the enforcement of the voting rights protections codified in the Civil Rights Act of 1957. *See Rogers*, 187 F. Supp. at 853 (finding that the legislative history of the Civil Rights Act of 1960 "leaves no doubt but that [Title III] is designed to secure a more effective protection of the right to vote").

Courts construing the CRA shortly after it was enacted confirm that its aim was to facilitate protection of the right to vote through the Civil Rights Acts of 1957 and 1960.

7

1   *Lynd*, 306 F.2d at 228 (explaining that the Attorney General "is entitled to inspect and

2   copy all of the voter papers and records as defined" "in fulfillment of the duties imposed

3   upon him by the Civil Rights Act of 1957 and 1960").   Valid statements of basis and

4   purpose from the time of enactment were "based upon information in the possession of

5   the Attorney General tending to show that discriminations on the basis of race and color

6   have been made with respect to registration and voting within your jurisdiction."   *Id*. at

7   231 n.6; *In re Coleman*, 208 F. Supp. 199, 199-200 (S.D. Miss. 1962).   Repeatedly

8   addressing the issue, the Fifth Circuit "laid down the rule that the government is entitled

9   to have an order of the trial court authorizing it to inspect the voting records" based on

10  Plaintiff's "reasonable grounds for belief that certain voters are being discriminatorily

11  denied their voting rights in a given county."   *United States v. Lynd*, 301 F.2d 818, 822

12  (5th Cir. 1962).

13      The Complaint in this case does not allege a purpose related to investigation of

14  race discrimination in voting.   Instead, Plaintiff's alleged purpose concerns assessing

15  compliance with the voter registration list maintenance provisions of the NVRA and

16  HAVA. (Doc. 8-3, at 2).   The NVRA requires each state to "conduct a general program

17  that makes a reasonable effort to remove the names of" voters who are ineligible due to

18  death or a change in residence, 52 U.S.C. § 20507(a)(4), while HAVA creates minimum

19  standards for maintaining voter registration records and prohibits processing of voter

20  registration applications absent specific information, 52 U.S.C. § 21083(a)(4), (5)(A).

21  But list maintenance practices do not fall within the CRA's scope without some basis to

22  assert that list maintenance is being conducted in a discriminatory manner.   *See Kennedy*

23  *v. Bruce*, 298 F.2d 860, 863 & n.2 (5th Cir. 1962) (noting that statistical evidence in a

24  Title III proceeding indicating a failure to remove voters who moved away or died was

25  "a matter which does not bear any particular importance" to demonstrating illegal

26  discrimination).   Plaintiff must articulate a purpose and basis that relates to an

27  investigation into civil rights violations, specifically, discrimination in voting, but it has

28  failed to do so here.

Considering essentially the same demand for a statewide voter registration list, another district court recently concluded that Plaintiff's statement of basis and purpose was "both lacking in depth" and "contrived." *Weber*, 2026 WL 118807 at *13. As is the case here, "[i]f the DOJ wants to instead use [the cited] statutes for more than their stated purpose, circumventing the authority granted to them by Congress, it cannot do so under the guise of a pretextual investigative purpose." *Id.*, at *19. In *Oregon,* the court concluded that "the 'purpose' required in a demand for records under Title III must relate to a purpose of investigating violations of individuals' voting rights," rather than Plaintiff's alleged purpose of investigating list maintenance procedures. 2026 WL 318402 at *9-10. As in *Weber* and *Oregon*, Plaintiff has failed to allege any basis for its demand, let alone a reason to believe that race discrimination related to voting is occurring in Arizona. And Plaintiff's alleged purpose is not valid because it has not articulated how its assessment of Arizona's compliance with NVRA's list maintenance requirements relates to an investigation into discrimination in voting. Nothing in Plaintiff's Complaint or letters to the Secretary even suggests that it has a proper basis or purpose to demand Arizona's VRDB.

## 2. Plaintiff has no basis to demand Arizona's VRDB to find noncitizens on Arizona's voter rolls.

As the *Weber* and *Oregon* courts explained, Plaintiff's actions and public statements conflict with its stated purpose for demanding Arizona's VRDB. In *Weber,* the court determined that Plaintiff was not forthcoming about its true basis or purpose for demanding state voter registration lists and that it was apparent that "the federal government [is] laying the groundwork to amass the personal information of millions of Americans in a centralized database." *Weber,* 2026 WL 118807 at *18-19. And in *Oregon*, the court observed that "Plaintiff has continued to engage in conduct raising suspicion about the purposes for which it seeks statewide unredacted voter registration lists." *Oregon*, 2026 WL 318402 at *11. It also noted that in Minnesota, Plaintiff had tied its demand for state voter lists to its immigration enforcement efforts. *See id.*

(citing Attorney General's letter to the Minnesota Governor regarding immigration enforcement and asking the state to "allow the Civil Rights Division of the Department of Justice to access voter rolls to confirm that Minnesota's voter registration practices comply with federal law as authorized by the Civil Rights Act of 1960."). As the court concluded, "[t]he context of this demand within a letter about immigration enforcement casts serious doubt as to the true purposes for which Plaintiff is seeking voter registration lists in this and other cases, and what it intends to do with that data." *Id.*

Finally, if Plaintiff's true purpose is to gather information to aid enforcement of immigration law in Arizona, and that could somehow come within the CRA (it cannot), the VRDB is not a useful tool to achieve that goal. As this Court is surely aware, for more than twenty years, Arizona has required that a voter registration application for one registering to vote for the first time or re-registering when moving from one Arizona county to another be accompanied by "satisfactory evidence of United States citizenship." A.R.S. § 16-166(F) (listing the documents that provide such evidence ("DPOC")). Under more recent Arizona law, if a registrant does not provide DPOC, the county recorder must check federal databases, including the Social Security Administration and the Systematic Alien Verification for Entitlements ("SAVE") system for evidence of citizenship. A.R.S. § 16-121.01(D)(2)-(3). Simply put, any person who makes it onto Arizona's voter rolls has already demonstrated United States citizenship. Accordingly, if the purpose for Plaintiff's demand is to find noncitizens on Arizona's voter rolls, the state has already done that work and access to Arizona's VRDB will not further Plaintiff's purpose. Furthermore, such a demand is improper under the CRA.

**B.    The CRA Does Not Prevent Adjudication of this Matter,**

As explained in greater detail in the Secretary's Response in Opposition to the Motion to Compel, the CRA does not bar this court from determining whether Plaintiff has met its burden under that law. Plaintiff attempts to characterize these proceedings as akin to an order to show cause or a "summary" proceeding, in which this Court does "not adjudicate 'the factual foundation for, or the sufficiency of, the Attorney General's

'statement of the basis and the purpose' contained in the written demand' or 'the scope of the order to produce.'" (Doc, 1, ¶ 4 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962)).  But this is an ordinary civil action, subject to the Federal Rules of Civil Procedure (the "Federal Rules"), and this Court has authority to determine that Plaintiff has failed as a matter of law to provide the requisite statement of basis and purpose.

Plaintiff's reliance on *Lynd* is misplaced for two reasons.  First, the Supreme Court's decision in *United States v. Powell*, 379 U.S. 48 (1964) calls *Lynd* into question. Second, Plaintiff chose to initiate this action by filing a Complaint, and Plaintiff is therefore bound to follow the Federal Rules, which govern such proceedings.

The statutory language at issue states that when "a demand is made pursuant to [53 U.S.C. §] 20703" a district court "shall have jurisdiction by appropriate process to compel the production of such record or paper."  52 U.S.C. § 20705.  The *Lynd* court interpreted "appropriate process" to give courts a limited role, but that does not end the inquiry.  Two years after *Lynd*, the Supreme Court interpreted a statute with similar language and determined that the language did not require a departure from the Federal Rules.  *Powell*, 379 U.S. at 58 n.18.  There, the Court concluded that because the statute at issue contained "no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply," allowing this Court to "inquire into the underlying reasons for the examination" of records.  *Id*.  "The Supreme Court's holding in *Powell* squarely rejects [Plaintiff's] contention and reliance on *Lynd*." *Oregon,* 2026 WL 318402, at *8.

Furthermore, "[e]ven if *Lynd* applied here, the Court doubts its applicability . . . where [Plaintiff] made an affirmative choice to file a complaint and proceed through ordinary litigation."  *Id*. at *8 n.1.  As in *Oregon*, here Plaintiff filed a complaint pursuant to Fed. R. Civ. P. 8 seeking production of the VRDB and affirmatively treated this matter as ordinary civil litigation from the start.  While *Lynd* addressed an application directly to the court for records, here Plaintiff has invoked "an ordinary, traditional civil action with all of its trappings."  *Oregon*, 2026 WL 318402, at *8 n.1.

Because Plaintiff chose to proceed under the Federal Rules, it cannot artificially limit this Court's role.

**C.      In the Alternative, the VRDB Is Not a Document Subject to the CRA's Records Provision.**

The language of 52 U.S.C. § 20701 provides an additional basis to dismiss this action.  "[A] voter registration list is not a 'record' that 'c[a]me into [the state's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election.'"  *Benson*, 2026 WL 362789, at *9 (quoting 52 U.S.C. § 20701).  The statutory language "refers only to documents that people submit to the State as part of the voter registration process, not a document like the voter registration list that is created by state officials."  *Id.*  The *Benson* court found the VRDB is not subject to the CRA for several reasons:  (1) records that "come into [the state's] possession" must "naturally refer[] to a process by which someone *acquires* an item from an external source," (2) giving the phrase effect necessitates this interpretation, and (3) the next part of the statutory language—"relating to any application, registration, payment of poll tax, or other act requisite to voting in such election"—shows that the statute is meant to cover "something that the voter submits or does as part of the registration process."  *Id*. (emphasis in original).  The VRDB is created and maintained by state officials using information derived from voters' registration and voting-related activities, but is separate from the records that voters themselves submit.  Accordingly, the VRDB does not come within the terms of 52 U.S.C. § 20701

**III.      Plaintiff Has Not Complied with Federal Privacy Laws.**

**A.      Plaintiff's Demand for the VRDB Violates the Privacy Act.**

Even if Plaintiff had demonstrated its entitlement to obtain the VRDB, the Privacy Act bars its demand.  "The Privacy Act exists to protect individuals from disclosure of government collected information."  *Ritter v. United States*, 177 Fed. Cl. 84, 87 (2025).  The law implements "certain safeguards for an individual against an invasion of personal privacy."  Pub. L. No. 93–579, § 2(b), 88 Stat. 1896 (1974).

Compliance with the Privacy Act is particularly important with respect to Plaintiff's unprecedented demand for the PII and voting history of every Arizona voter in light of recent evidence that the federal government has not followed privacy laws with respect to information about voters. *See Am. Fed'n of State, Cnty., and Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, No. CV-25-00596-ELH, Doc. 197, Not. of Corr. to the Record, at 5 (D. Md. Jan. 16, 2026) (stating that SSA determined that a member of its DOGE Team had signed a "Voter Data Agreement" with an advocacy group to analyze voter rolls "to find evidence of voter fraud and to overturn election results in certain States").

First, the Privacy Act bars Plaintiff's demand for the VRDB because the VRDB is a "record" and Plaintiff has not followed the Privacy Act's procedures. Under the Privacy Act, a covered "record" includes "any item, collections, or grouping of information about an individual that is maintained by an agency." 5 U.S.C. § 552a(a)(4). The VRDB is within this definition, because it includes core personal information like full names, dates of birth, residence addresses, political party preference, and voting history. *See* A.R.S. § 16-168(C), (F). The VRDB also includes sensitive PII protected as confidential under Arizona law such as month and day of birth date, any portion of a social security number, driver's license number, Indian census number, father's name or mother's maiden name, state or country of birth. e-mail address, and voter signatures. A.R.S. § 16-168(F). Moreover, the VRDB contains records related to voters' First Amendment activities—*i.e.*, their political party affiliation and voting history. *See* 5 U.S.C. § 552a(e)(7). In short, Arizona's VRDB in Plaintiff's hands will constitute a "system of records" under the Privacy Act. 5 U.S.C. § 552a(a)(5). Because Plaintiff has not followed the procedures the Privacy Act requires before it "maintain[s], collect[s], use[s], or disseminate[s]" any system of records searchable by individual, the Privacy Act bars Plaintiff's demand for the VRDB, including its presumptively public portions. 5 U.S.C. §§ 552a(a)(3), (a)(5), (e)(4), (f).

Second, the Privacy Act bars federal agencies from collecting or maintaining records "describing how any individual exercises rights guaranteed by the First

13

Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity."  5 U.S.C. § 552a(e)(7).  Plaintiff's demand directly implicates that statutory bar.  Voter registration, party affiliation, and the choice to participate or not in an election are forms of political expression protected by the First Amendment. *Buckley v. Am. Const. L. Found., Inc*., 525 U.S. 182, 195 (1999) (choice of whether to register to vote "implicates political thought and expression"); *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 69, 75-76 (1990) (expression of political beliefs and association through political affiliation is protected by the First Amendment).

None of the exceptions in 5 U.S.C. § 552a(e)(7) applies here.  Plaintiff has not received the express authorization of the five million voters whose records it seeks.  5 U.S.C. § 552a(e)(7).  Nor will the records of Arizona voters' First Amendment activity further a legitimate law enforcement investigation.  *Garris v. Fed. Bureau of Investigation*, 937 F.3d 1284, 1299 (9th Cir. 2019) (stating that if a record "has at best only speculative relevance to an unstated law enforcement purpose," the law enforcement exception in  5 U.S.C. § 552a(e)(7) does  not apply).  Because no exception applies to the VRDB, the statutory bar on maintaining records on First Amendment activities prohibits Plaintiff from collecting the requested records.

Third, heightened protections apply when an agency establishes or alters a "system of records," or "group of records under the control of any agency from which information is retrieved by the name of the individual" or other individual identifier.  5 U.S.C. § 552a(a)(5), (e).  The Privacy Act's structure hinges on public notice and comment regarding the nature, scope, and routine uses of a system of records before the government bulk-collects Americans' data.  5 U.S.C. § 552a(e)(4)(D); *see Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin*., 778 F. Supp. 3d 685, 763 (D. Md. 2025).  As relevant here, the Privacy Act requires Plaintiff to publish a System of Records Notice ("SORN") in the Federal Register before "establish[ing] or revis[ing]" a "system of records."  5 U.S.C. § 552a(e)(4); *Brusseau v. Dep't of Homeland Sec*., No.

CV-20-1364, 2021 WL 3174248, at \*5 (E.D. Va. July 27, 2021).  Plaintiff's demand to obtain Arizona's unredacted VRDB unquestionably seeks a "system of records."  52 U.S.C. § 552a(a)(5).  Yet the Complaint identifies no SORN allowing Plaintiff to collect this sensitive data, nor is the Secretary aware of any applicable SORN.  This dooms Plaintiff's data collection efforts under the Privacy Act.

**B.    Plaintiff's Demand for the VRDB Violates the E-Government Act.**

For similar reasons, the Court should dismiss the Complaint for failure to comply with the E-Government Act, Pub. L. No. 107-347, § 208, 116 Stat. 2899 (2002).  The E-Government Act requires federal agencies to conduct a "privacy impact assessment" ("PIA") prior to "initiating a new collection of information" that "includes any information in an identifiable form permitting the physical or online contacting of a specific individual" if the information relates to "10 or more persons."  *Id*. § 208(b). Crucially, the PIA and its procedural requirements must be completed "before the agency initiates a new collection of information."  *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 311 (D.D.C. 2017).

The face of the Complaint reveals that Plaintiff demanded information protected by the E-Government Act.  (Doc. 1 at 7, ¶ B).  The sensitive voter information contained in the VRDB clearly constitute personal information protected by the Act, triggering the PIA requirement.  *See* Pub. L. No. 107-347, § 208(b)(1)(A)(ii)(II); OMB Guidance, M-03-22 (Sep. 26, 2003), https://perma.cc/E6PWYQTP, Att. A § II(a)(b), *id*. ¶ II(B)(a)(6). However, the Complaint does not allege that Plaintiff completed a PIA for the VRDB, requiring dismissal.

**C.    Plaintiff's Demand Violates the Driver's Privacy Protection Act.**

Finally, Plaintiff's demand for the VRDB also violates the DPPA because Arizona's VRDB pulls sensitive voter information directly from the Arizona Department of Transportation, Motor Vehicle Division ("MVD").  *See* 52 U.S.C. § 20504(c)(2)(E); A.R.S. § 16-112(B)(2) (requiring rules that shall "[a]llow the transfer of driver license applications,  including  renewal  and  change  of  address,  and  voter  registration

1    information from the department of transportation to the voter registration rolls").

2         The DPPA expressly prohibits disclosing "personal information" that is obtained
3    by the MVD in connection with a motor vehicle record."   18 U.S.C. §§ 2721(a)(1),
4    2725(1), (3), & (4); *Reno v. Condon*, 528 U.S. 141, 143 (2000).   This prohibition
5    extends to authorized recipients, like the Secretary, who receives information from
6    MVD to carry out voter registration.   18 U.S.C. §§ 2721(b)(1), (c).   In Arizona, the
7    MVD electronically provides to the Secretary certain information associated with each
8    person who applies for a driver's license, including completed voter registration
9    applications. *See* A.R.S. § 16-112(A), (B); *see also* 52 U.S.C. § 20504.

10        Plaintiff alleges that its demand is exempt from the DPPA because the demand
11   "is for use by a government agency in carrying out the government agency's function to
12   accomplish its enforcement authority."   (Doc. 1 ¶ 28) (citing 18 U.S.C. § 2721(b)(1)).
13   This conclusory statement is insufficient to plausibly allege that the DPPA's government
14   use exception applies.   The DPPA's inclusion of the phrase "[f]or use" dictates the
15   critical inquiry—*i.e.*, whether "the actual information disclosed . . . is used for the
16   identified purpose." *Senne v. Vill. Of Palatine, Ill.*, 695 F.3d 597, 606 (7th Cir. 2012).
17   "When a particular piece of disclosed information is not used to effectuate that purpose
18   in any way, the exception provides no protection for the disclosing party." *Id.*

19        Here, even if the Court accepts that assessing Arizona's compliance with the
20   NVRA is a proper purpose under the CRA (which, as explained above, it is not),
21   obtaining the driver's license numbers of five million Arizonans will not establish
22   whether Arizona makes a reasonable effort to remove persons due to death or change in
23   residence. *See* 52 U.S.C. § 20507(a)(4).   Moreover, Plaintiff has not alleged how it
24   intends to use the driver's license numbers.   Consequently, Plaintiff's unbounded request
25   exceeds the scope of the DPPA's government-function exception.

26

27

28

**IV.    The CRA, the NVRA, and HAVA Do Not Preempt Arizona Law Limiting Access to Information in the VRDB.**

Plaintiff is not entitled to inspect an unredacted version of Arizona's VRDB to assess the state's compliance with the NVRA, HAVA, or the CRA. Arizona law bars election officials from disclosing certain information from the VRDB. In particular, they may not disclose "the month and day of birth date, the social security number or any portion thereof, the driver license number or nonoperating identification license number, the Indian census number, the father's name or mother's maiden name, the state or country of birth and the records containing a voter's signature and a voter's e-mail address." A.R.S. § 16-168(F). Disclosure in violation of this prohibition is a felony. *Id.*

Plaintiff attempts to make an end run around these state law privacy provisions by arguing that the CRA preempts them. (Doc. 8, at 12-13). But Plaintiff's purported purpose for invoking the CRA here is to assess compliance with the NVRA. The NVRA's disclosure provisions do not prohibit the redaction of sensitive voter information. *See Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (finding that "the appropriate redaction of uniquely or highly sensitive personal information in the voter file" was permissible where the NVRA did not prohibit such redactions). In *Weber*, *Oregon*, and *Benson*, the courts applied the reasoning in *Bellows* to Plaintiff's similar demands for California, Oregon, and Michigan's voter registration databases. *Benson*, 2026 WL 362789 at *3 (collecting cases); *Oregon*, 2026 WL 318402, at *6 (same); *Weber*, 2026 WL 118807 at *12-13 (noting the Plaintiff has previously taken the position that "the NVRA does not prohibit States from redacting 'uniquely sensitive information' like voters' Social Security Numbers before disclosing records"). Accordingly, even if Plaintiff could cure all the defects in its demand discussed above, no law requires Arizona to produce unredacted versions of its VRDB.

## CONCLUSION

For the foregoing reasons, the United States' Complaint fails to state a claim for relief and should be dismissed without leave to amend.

1

RESPECTFULLY SUBMITTED this 27th day of February, 2026.

2

Kristin K. Mayes
Attorney General

3

4

*/s/ Karen J. Hartman-Tellez*

5

Karen J. Hartman-Tellez
Kara Karlson

6

Kyle Cummings

7

*Attorneys for Defendant Arizona*
*Secretary of State Adrian Fontes*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF GOOD FAITH CONFERRAL

Pursuant to Local Rule 12.1(c), I certify that on February 27, 2026, I attempted to contact Brittany Bennett, counsel for the United States in this matter, by telephone at the number listed on the Complaint to discuss whether any permissible amendment to the Complaint could cure the defects outlined in this Motion to Dismiss. I was unable reach Ms. Bennett by telephone and left a voicemail.  In addition, I sent an email to Ms. Bennett summarizing the bases for dismissal stated above and invited her to contact me if she believed that an amendment to the Complaint would be appropriate.  As of the time of filing the foregoing Motion, I have not received a response from the United States' counsel.

Kristin K. Mayes
Attorney General


*/s/ Karen J. Hartman-Tellez*
Karen J. Hartman-Tellez
Kara Karlson
Kyle Cummings
*Attorneys for Defendant Arizona*
*Secretary of State Adrian Fontes*

1

**CERTIFICATE OF SERVICE**

2

3
     I HEREBY CERTIFY that on this 27th day of February, 2026, I filed the

4
forgoing document electronically through the CM/ECF system, which caused all parties

5
or counsel of record to be served by electronic means, as more fully reflected on the

6
Notice of Electronic Filing.

7

8

9

10
  _/s/ Monica Quinonez_

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28