KRISTIN K. MAYES
Attorney General

Karen J. Hartman-Tellez (No. 021121)
Kara Karlson (No. 029407)
Senior Litigation Counsel
Kyle Cummings (No. 032228)
Assistant Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004-1592
Telephone (602) 542-8323
Karen.Hartman@azag.gov
Kara.Karlson@azag.gov
Kyle.Cummings@azag.gov
adminlaw@azag.gov

*Attorneys for Defendant Arizona Secretary of State Adrian Fontes*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV-26-00066-PHX-SMB |
| Plaintiff, | |
| v. | **ARIZONA SECRETARY OF STATE'S RESPONSE IN OPPOSITION TO MOTION TO COMPEL PRODUCTION** |
| Adrian Fontes, in his official capacity as Secretary of State for the State of Arizona, | |
| Defendant. | |

Defendant Arizona Secretary of State Adrian Fontes (the "Secretary") opposes Plaintiff United States' Motion to Compel and Memorandum in Support (collectively, the "Motion"). (Doc. 7; Doc. 8). This Response in Opposition is supported by the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

As the Secretary's contemporaneously filed Motion to Dismiss demonstrates, Plaintiff's demand for a complete, unredacted copy of Arizona's statewide voter registration database (the "VRDB") is not authorized by the statutes on which Plaintiff relies and violates Arizonans' privacy rights and the laws that protect them. However, even if this Court declines to dismiss Plaintiff's Complaint, it should nevertheless reject the extraordinary process by which Plaintiff seeks adjudication of its claims and instead hew to the Federal Rules of Civil Procedure (the "Federal Rules") in this civil action.

In this case, Plaintiff seeks disclosure of Arizona voters' personal data—including their names, social security and driver's license numbers, residence addresses, signatures, party preference, and voting history—through two different procedural vehicles: (1) a complaint pursuant to the Federal Rules, and (2) a motion to compel pursuant to the Civil Rights Act of 1960 (the "CRA"), 52 U.S.C. § 20701, *et seq*. (*See* Doc. 1 (January 6, 2026 Complaint), Doc. 7 (January 7, 2026 Motion to Compel)). However, neither of these vehicles allow the relief that Plaintiff seeks or the procedure that Plaintiff demands.

As explained in the Motion to Dismiss, several state and federal statutes prohibit Plaintiff's demand for the VRDB. Similarly, this Court should deny Plaintiff's Motion to Compel because: (1) neither the CRA nor the National Voter Registration Act of 1993 (the "NVRA"), 52 U.S.C. § 20501 *et seq.*, authorize the procedure or relief that Plaintiff seeks, (2) following the procedure that Plaintiff demands would violate the Secretary's due process rights, (3) Plaintiff's demand for records is facially deficient, and (4) the

Secretary is entitled to discovery as to the basis and purpose of Plaintiff's demand. Consequently, this Court should deny Plaintiff's Motion in its entirety and, if it denies the Secretary's motion to dismiss, order the parties to litigate this matter pursuant to the Federal Rules.

Plaintiff asks this Court to issue an order to compel that would deprive the Secretary (and the Arizonans he was elected to represent) of virtually all of his procedural rights under the Federal Rules. Indeed, Plaintiff urges the Court to summarily "order Defendant to produce [the VRDB] immediately" with no further process or inquiry into the basis and purpose for Plaintiff's demand—effectively ending the case. (Doc. 8, at 12). Plaintiff rests its argument on a provision of the CRA that confers jurisdiction on federal courts "by appropriate process to compel the production" of records sought by the Attorney General. 52 U.S.C. § 20703.

As the Supreme Court has confirmed, however, the language used in the CRA does not abrogate the Federal Rules. *See United States v. Powell*, 379 U.S. 48, 58 n.18 (1964). To authorize "special statutory proceedings" that deviate from the Federal Rules, Congress must use language far more specific than that in the CRA—the statute must actually describe the alternate procedure. The decisions that Plaintiff cites from courts within the Fifth Circuit do not control the question before this Court and are inconsistent with the Supreme Court's decision in *Powell*. Moreover, courts that have ruled on similar demands made to other states in recent weeks have concluded that the CRA does not authorize the relief Plaintiff seeks here. *See United States v. Weber*, No. CV-25-09149-DOC-ADS, 2026 WL 118807, at *8 (C.D. Cal. Jan. 15, 2026) ("Contrary to the position the DOJ takes, Title III cannot transform an election records request by the federal government from an ordinary civil action into an action comparable to an order to show cause."); *United States v. Oregon,* No. CV-25-01666-MTK, 2026 WL 318402, at *7-8 (D. Or. Feb. 5, 2026) (applying the Federal Rules "as in any other case").

1 	Indeed, even if the CRA provision on which Plaintiff relies were to supplant the Federal Rules, it does not demand the process Plaintiff proposes here, which is both deeply unfair and invites abuse of this Court's processes. The sole goal of this action is to require the Secretary to turn over a copy of Arizona's VRDB. (See Doc. 1, at 7 ¶ B). Plaintiff argues that all it needs to do to obtain that sensitive data is to make a demand and state a "basis and purpose" for the demand. (Doc. 8, at 7-8). It further argues that this Court is not empowered to test the validity of Plaintiff's stated basis and purpose, nor should the Secretary be afforded the opportunity to use the ordinary processes of civil litigation to support his opposition to its demand. (*Id.*). But Plaintiff, who initiated this action by filing a complaint pursuant to Fed. R. Civ. P. 8, cannot so easily avoid the protections that the Constitution, through the Federal Rules, provides opposing litigants.

	Indeed, if the Court declines to dismiss this case now, the Secretary must have an opportunity to obtain discovery regarding Plaintiff's asserted basis and purpose to demand the VRDB and its compliance with federal privacy laws that govern Plaintiff's collection of detailed information about every one of Arizona's nearly five million voters. In short, this Court should deny Plaintiff's Motion and should treat this case as what it actually is: ordinary civil litigation subject to the Federal Rules.

## FACTUAL AND PROCEDURAL BACKGROUND

	The Secretary's Motion to Dismiss describes the facts leading up to this lawsuit, including Plaintiff's July 28, 2025 and August 14, 2025 demands for an electronic copy of the VRDB "includ[ing] all fields contained with the list." (Doc. 8-1, at 1-3; Doc. 8-3, at 4). While the Complaint purports to seek the VRDB under the CRA, Plaintiff's Motion to Compel states that "[t]he Attorney General is demanding [f]ederal election records under the CRA to assess Arizona's NVRA and HAVA compliance." (Doc. 8, at 8).

	Two federal laws—the NVRA and the Help America Vote Act of 2002 ("HAVA")—require states to conduct programs to maintain the accuracy and currency

of their voter lists. The NVRA contains several provisions that protect voters from being wrongfully purged from voting lists. *See, e.g.*, 52 U.S.C. §§ 20507(b), (c)(2)(A), (d). The NVRA also requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" by reason of death or change in residence. 52 U.S.C. § 20507(a)(4). Subject to the removal restrictions and this modest affirmative requirement, the NVRA leaves it to the states to design and operate their list maintenance programs as they see fit. *See* 52 U.S.C. § 20507(a)(4) (establishing the obligation of list maintenance but leaving means of maintenance open).

HAVA introduced various election reforms in the wake of the 2000 presidential election, including a requirement that States maintain centralized voter registration databases. Specifically, States must adopt "a system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters." *Id*. § 21083(a)(4)(A). Importantly, while HAVA clarified that NVRA's list maintenance requirements apply to the new voter registration databases, "[n]othing in HAVA broaden[ed] the scope of the NVRA's list-maintenance obligations." *Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019). HAVA expressly provides that "specific choices on the methods of complying with the requirements of this subchapter shall be left to the discretion of the State." 52 U.S.C. § 21085.

Arizona law provides detailed procedures for maintenance of the VRDB, which the Secretary explained in his August 29, 2025 letter to the DOJ. In particular, Arizona law requires the Secretary to issue an Elections Procedures Manual (the "EPM") by December 31 of each odd-numbered year.[1] A.R.S. § 16-452(A). The EPM includes "rules to achieve and maintain the maximum degree of correctness, impartiality, uniformity and efficiency" in election procedures, and has the force of law. *Id*.

---

[1] The EPM is available as a searchable PDF on the Secretary's website: https://apps.azsos.gov/election/files/epm/2025/Election-Procedures-Manual-2025--FINAL-12-22-25.pdf.

1  Accordingly, election officials are required to follow the EPM to keep the state's voter
2  registration records accurate and up to date. The voter registration list maintenance
3  provisions in the EPM constitute the "general program that makes a reasonable effort to
4  remove the names of ineligible voters from the official lists of eligible voters," as
5  required by HAVA and NVRA. 52 U.S.C. § 20507(a)(4); 2025 EPM, at 41-53.

## ARGUMENT

**I.     This Action Should Proceed under the Federal Rules of Civil Procedure.**

The Federal Rules "govern the procedure in all civil actions and proceedings in the United States district courts." Fed. R. Civ. P. 1. The Supreme Court has repeatedly explained that absent "express statutory authorization, courts have been extremely reluctant to allow proceedings more summary than the full court trial at common law." *N.H. Fire Ins. Co. v. Scanlon*, 362 U.S. 404, 407-08 (1960); *accord S.E.C. v. Wencke*, 783 F.2d 829, 837 n.9 (9th Cir. 1986) ("We agree that courts should be 'reluctant' to authorize the use of summary proceedings unless there is a strong reason for doing so."). That "express statutory authorization" consists of "procedures and remedies specifically tailored to a limited subset of cases." *N.Y. Times v. Gonzalez*, 499 F.3d 160, 166 (2nd Cir. 2006). Here, Plaintiff commenced this action by filing a traditional civil complaint, which included one count demanding production of records. *See* Fed. R. Civ. P. 3, 8(a). The principal statutes governing that production do not expressly or impliedly create a special statutory proceeding, nor do they direct or authorize departure from the usual course of civil litigation.

**A.     Actions Seeking Records under the NVRA Are Ordinary Civil Actions.**

Plaintiff does not expressly cite the NVRA as the basis for its Motion to Compel Production, but it suggests that the NVRA also warrants an order compelling immediate production of the VRDB. (*See* Doc. 8, at 13-14 n.4). While Plaintiff was able to unearth a single decades-old Fifth Circuit case to support its argument for a special statutory proceeding under the CRA, it does not cite a single authority suggesting that the NVRA

5

authorizes such a proceeding. Instead, Plaintiff simply asserts that the NVRA includes a similar production requirement as the CRA and therefore must also create a special statutory proceeding. (*See id*.). This conclusion is unwarranted for several reasons.

*First,* the CRA does not create a special statutory proceeding. Accordingly, the NVRA's requirement that a state provide access to voter registration records offers no reason to conclude that the NVRA authorizes such a special proceeding.

*Second*, the NVRA does not include the language that Plaintiff relies on in the context of the CRA. The NVRA requires states to make documents available for *public* inspection. 52 U.S.C. § 20507(i)(1). The CRA, in contrast, refers specifically to requests from the Attorney General. 52 U.S.C. § 20703. And it grants the district court discretion "by appropriate process to compel the production." 52 U.S.C. § 20705. In view of these textual differences, there is no reason to conclude that the NVRA authorizes a special statutory proceeding, even if this Court concludes the CRA does.

*Third*, in this district, NVRA lawsuits follow the ordinary course of civil litigation. *See, e.g., Pub. Interest Legal Found., Inc. v. Fontes,* No. CV-25-02722-PHX-MTL, 2026 WL 45037 (D. Ariz. Jan. 5, 2026) (denying motion to dismiss NVRA records case under Fed. R. Civ. P. 12(b)(1) and (6)); *Mussi v. Fontes,* No. CV-25-01310-PHX-DWL, 2024 WL 4988589 (D. Ariz. Dec. 5, 2024) (granting motion to dismiss under Fed. R. Civ. P. 12(b)(1) because Plaintiffs lacked standing). Indeed, when plaintiffs in an NVRA case seek expedited relief, they do so via Fed. R. Civ. P. 65, not in a special statutory proceeding. *See Strong Communities Found. of Ariz., Inc. v. Richer*, No. CV-24-02030-PHX-KML, 2024 WL 4475248, at *6-*7 (D. Ariz. Oct. 11, 2024) (denying motion for preliminary injunction in case seeking relief under the NVRA and HAVA). In other words, the way in which NVRA claims have been litigated for years establishes that the NVRA does not create a special statutory proceeding.

**B. The CRA Does Not Authorize a Special Statutory Proceeding.**

The CRA provides that "[a]ny record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General . . . be made available for inspection, reproduction and copying." 52 U.S.C. § 20703. Such "demand shall contain a statement of the basis and the purpose therefor." *Id*. The federal district court "shall have jurisdiction by appropriate process to compel the production of such record or paper." 52 U.S.C. § 20705.

The CRA does not expressly authorize a special statutory proceeding, nor does it specify "procedures . . . specifically tailored" to an enforcement action under the statute. *Cf. Katzenbach v. McClung*, 379 U.S. 294, 296 (1964) (recognizing that 42 U.S.C. § 2000a-5, creates a "special statutory proceeding"); *Booth v. Hume Pub., Inc*., 902 F.2d 925, 931-32 (11th Cir. 1990) (recognizing that the Federal Arbitration Act, which sets forth a series of rules and procedures, creates a special statutory proceeding in which the Federal Rules are applicable only where the Act is silent). In fact, because 52 U.S.C. §§ 20703 and 20705 do not describe any specific "appropriate process," the Federal Rules govern.

Indeed, the Supreme Court and multiple federal courts of appeal have found that the CRA's precise language—"appropriate process"—does not give rise to a special statutory proceeding. *See, e.g., Powell*, 379 U.S. at 58 n.18 (concluding that because 26 U.S.C. § 7604(a), a provision of the tax code which permits the enforcement of summonses by "appropriate process," "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply"); *accord United States v. McKay*, 372 F.2d 174, 175 (5th Cir. 1967); *Application of Howard*, 325 F.2d 917, 919 (3rd Cir. 1963); *Oregon,* 2026 WL 318402, at *7-8; *Weber*, 2026 WL 118807, at *8. There is accordingly no basis in the statute to treat actions brought under the CRA as anything other than traditional civil proceedings.

Plaintiff's argument rests primarily on *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962). (*See* Doc. 8, at 6). In *Lynd*, the Court noted that the "application" by the Attorney General for an order compelling production initiated a "special statutory proceeding" in which some of the Federal Rules did not apply. *Lynd*, at 225-27. But *Lynd* does not control and should not guide the Court here. It is a single decision from outside this Circuit, and it has not been cited on a single occasion by any federal court for the proposition that the CRA creates a special statutory proceeding in over sixty years. Further, the Attorney General in *Lynd* filed an application with the court, but here Plaintiff initiated an ordinary civil proceeding. It filed a traditional civil complaint and moved for the Court to issue an order to show cause consistent with the Federal Rules. (Doc. 1; Doc. 8); *see also Oregon*, 2026 WL 318402, at 8 n.1 (stating that "the Court doubts [*Lynd's*] applicability here where Plaintiff made an affirmative choice to file a complaint and proceed through ordinary litigation"). In contrast, *Lynd* contemplates an application directly to the court for the records, not a civil proceeding. 306 F.2d at 225 ("*the filing of the application* by the Attorney General is not the commencement of an ordinary, traditional civil action with all of its trappings") (emphasis added)).

Critically, *Lynd* reflects a reading of the CRA that predates the Supreme Court's clear instructions in *Powell* preventing federal enforcement authority from expanding by implication beyond the limits prescribed by Congress. To the extent that *Lynd* relies on such an implied expansion, it cannot be reconciled with *Powell*. In short, there is no basis in the statute or governing case law for reading the CRA as creating a special statutory procedure. Applying *Lynd* in this case would also short-circuit the due process protections guaranteed under the United States Constitution, and the Federal Rules, which Plaintiff voluntarily invoked. It should not be allowed to circumvent those protections.

Finally, *Lynd* does not reflect the current state of law, even in the Fifth Circuit. In *Weems v. McCloud*, 619 F. 2nd 1081, 1097 (5th Cir. 1980), the court reasoned that

Georgia law created a special statutory proceeding precisely because the statute specified "the issues to be litigated and the procedure to be followed," both of which are absent from the CRA. And while *Weems* cited *Lynd*, it analogized the action at issue in *Lynd* to one brought under Fed. R. Civ. P. 81. *Weems*, 619 F.2d at 1096 n.35; *see also* Fed. R. Civ. P. 81(a)(5). The court further reiterated the Supreme Court's observation in *New Hampshire Fire Insurance Co.*, that "courts have been extremely reluctant to allow proceedings more summary than the full court trial at common law" absent "express statutory authorization." *Weems*, 619 F.2d at 1095 n.34.

### C. Even if the CRA and NVRA Create Special Statutory Proceedings, They Do Not Authorize or Require Summary Relief.

In special statutory proceedings, consistent with the plain language of Fed. R. Civ. P. 1, the Federal Rules are not entirely jettisoned. *See, e.g., Daly v. United States*, 393 F.2d 873, 876 (8th Cir. 1968) ("[I]n the absence of specific procedures set forth [in statute], the Federal Rules of Civil Procedure are generally applicable."). Instead, courts have recognized that the "Federal Rules of Civil Procedure may be applied less rigidly" in proceedings "where a strict application of the rules would frustrate the statutory purpose." *Booth v. Hume Pub., Inc.*, 902 F.2d 925, 931 (11th Cir. 1990) (emphasis added); *accord Weems*, 619 F.2d at 1094-97. In other words, the authorizing statute itself, and the purpose it serves, direct the cadence of litigation against the backdrop of the full Federal Rules.

Congress did not—in either the CRA or NVRA—set forth a summary mechanism for adjudicating a records demand. Indeed, the statutes do not identify any procedures for a district court to follow beyond the CRA's reference to "appropriate process." 52 U.S.C. § 20705. Without an indication that the Federal Rules should not be followed, or express identification of an alternate course of proceeding, the Federal Rules should remain "generally applicable." *Daly*, 393 F.2d at 876.

9

1    Plaintiff likewise has not shown that adhering to the Federal Rules would frustrate the purposes of the CRA. Permitting adversarial testing of the Government's expansive demand for sensitive records, including discovery on the purpose and basis of that demand, does not undermine enforcement of the Civil Rights protections set forth in the CRA. *Cf. Usery v. District No. 22, United Mine Workers of Am.*, 567 F.2d 972, 974 (10th Cir. 1978) (permitting intervention would expand remedies beyond those permitted by statute); *Weems*, 619 F.2d at 1095 (counterclaims would frustrate summary proceeding created by Georgia statute by delaying and changing the character of judicial determination of the fairness of foreclosure). Nor, for that matter, has Plaintiff sought emergency relief in this case or identified any reason why time is of the essence.

Absent such a showing, the adjudication of Plaintiff's claims, even in the context of a special statutory proceeding, should at least include discovery, briefing, and the presentation of evidence to the Court. *See Wencke*, 783 F.2d at 836-37 (approving use of summary proceedings where "the parties . . . had notice concerning the nature of the proceedings, were permitted extensive discovery, . . . were permitted to file briefs and exhibits with the district court, and . . . except for dispensing with the filing of a complaint and answer, the District Court applied the Federal Rules"); *cf. McGarry's, Inc. v. Rose*, 344 F.2d 416, 418 (1st Cir. 1965) (requiring at least "an adversary-type hearing" before requiring the plaintiff to comply with an administrative summons under the tax code). A simple summary proceeding is inappropriate and not contemplated by the statutes at issue.

**II.    Plaintiff's Demand for Records under the CRA Is Deficient on Its Face.**

Plaintiff's Motion is also meritless because it rests on a faulty premise. For Plaintiff to shift the burden to Arizona to demonstrate why the Court should not order the production of records, Plaintiff had to establish that it made a valid demand for those records in the first place. It did not.

Title III of the Civil Rights Act of 1960 was "designed to secure a more effective protection of the right to vote." *State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960). In furtherance of this purpose, the CRA imposes document retention requirements on elections officials: "[e]very officer of election," or designated custodian, "shall retain or preserve, for a period of twenty-two months from the date of any general, special, or primary election" for federal office, "all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election . . . ." 52 U.S.C. §§ 20701, 20706.

If certain conditions are met, Plaintiff may inspect these records at the "principal office of [the records'] custodian." *Id*. § 20703. As relevant here, the Attorney General must present with the request "a statement of the basis and purpose therefor." *Id*. The CRA also includes an enforcement mechanism to compel production of these records. The district court located where the written demand is made, or where the records are located, has "jurisdiction by appropriate process to compel the production of such record or paper." *Id*. § 20705.

Plaintiff's demand for Arizona's unredacted VRDB is fatally flawed in multiple ways. As for its demand under the CRA, Plaintiff did not state—or even imply—a basis for its demand as required by statute and failed to identify a purpose within the scope of the CRA. Indeed, there are serious questions about whether its stated purpose is its actual purpose for its demand for the VRDB. Further, Plaintiff has not complied with the Privacy Act of 1974, the E-Government Act of 2002, and the Driver's Privacy Protection Act (the "DPPA"), and it is therefore not entitled to receive the records it demands.

**III.   If Plaintiff's Demand Is Not Facially Deficient, Then the Secretary Is Entitled to Discovery to Test Its Validity.**

Even if the Court were to determine that a special statutory proceeding is authorized, and that Plaintiff's claims do not fail as a matter of law, the abbreviated

process sought by Plaintiff would still be fundamentally unfair and raise due process concerns because it would not allow for the discovery necessary for Arizona to adequately and fairly defend itself against the claim in Plaintiff's Complaint. The Secretary would seek discovery about: (a) Plaintiff's true purpose for seeking highly sensitive voter data from Arizona, (b) its plans for storing, using, and disseminating that data both inside and outside the federal government, and (c) its justification for seeking that data. That discovery is relevant both to the validity of Plaintiff's demand and whether, and to what degree, that demand and any resulting disclosure violates the Privacy Act and E-Government Act.

The Court should assess whether Plaintiff is entitled to the sensitive voter data it has requested after the Secretary has completed discovery on these issues if this Court denies the Secretary's Motion to Dismiss. Any procedure that dispenses with necessary discovery would inflict irreparable harm on Arizona and its voters whose privacy rights are at stake. *See Weber*, 2026 WL 118807 at 4 ("There is an inherent level of trust that comes along with Americans voting locally. . . . There cannot be unbridled consolidation of all elections power in the Executive without action from Congress and public debate.")

**A.  The Secretary Should Be Permitted to Probe Plaintiff's Stated Basis and Purpose for its Demand under the CRA.**

When seeking voting records under the CRA, Plaintiff must state both "the basis" and "the purpose" for that demand. 52 U.S.C. § 20703. Plaintiff has asserted that its "purpose" in seeking Arizona's VRDB is to "assess [Arizona's] compliance with HAVA and the NVRA." (Memo. at 11. *See also* Memo Ex. 3 at 2 ("The purpose of the request is to ascertain Arizona's compliance with the list maintenance requirements of the NVRA and HAVA."). Assuming *arguendo* that this is a facially valid purpose, Plaintiff's statement is incomplete, if not outright inaccurate. Plaintiff's effort to obtain full voter lists from nearly every state in the nation suggests that Plaintiff intends to

create its own massive federal database and track its citizens, rather than evaluate whether States' programs comply with federal law.[2]  News reports and statements indicate that Plaintiff will be sharing voter lists with DHS to "enable DHS to prevent illegal aliens from corrupting our republic's democratic process," is in talks with DHS to use voter data "in criminal and immigration-related investigations," and is seeking to "establish a national voting database," further casting doubt on the veracity and completeness of Plaintiff's stated purpose.[3]  *Weber,* 2026 WL 118807, at *11; *Oregon*, 2026 WL 318402, at *13.

Plaintiff's demand under the CRA is invalid if it misstated the purpose of the demand.  The statute's use of the definite article—"*the* purpose"—indicates that Plaintiff must state its actual purpose, not simply a plausible one. 52 U.S.C. § 20703 (emphasis added); *see Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 32 (1st Cir. 2022) (observing that the use of the definite article particularizes the referenced subject and suggests reference to a single object); *see also Weber*, 2026 WL 118807 at 13 ("DOJ's Title III claims must be dismissed because Plaintiff's proffered statement and purpose, as required under the statute, is both lacking in depth and is contrived."). Further, even if the CRA permitted investigations beyond the context of racial discrimination, it strains credulity to read the CRA as authorizing Plaintiff to demand election records for purposes beyond its statutory powers (e.g., to perform its own list

---

[2] *See* Luke Belant, "Feds Show New Level of Interest in Voter List Data," National Conference of State Legislatures (Feb. 19, 2026) https://www.ncsl.org/state-legislatures-news/details/feds-show-new-level-of-interest-in-voter-list-data

[3] News reports reveal potential use of state's voter records that depart from Plaintiff's stated purpose here.  *See* Jonathan Shorman, "DOJ is sharing state voter roll lists with Homeland Security," Stateline (Sept. 12, 2025), https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security/.  Sarah N. Lynch, "US Justice Dept considers handing over voter roll data for criminal probes, documents show," *Reuters* (Sept. 9, 2025), https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voterroll-data-criminal-probes-documents-2025-09-09/ (stating that Plaintiff was "in talks" with DHS to transfer states' voter data to DHS "for use in criminal and immigration-related investigations.").

13

maintenance), or for purposes entirely unrelated to elections, such as "criminal and immigration-related investigations."

The Secretary cannot investigate these important factual issues without the opportunity for discovery. The Secretary understands that news reports indicating Plaintiff's purpose may differ from the one stated in its demand for Arizona's VRDB are not conclusive, which is why summary proceedings here are inappropriate. Only discovery will permit the Secretary to collect the admissible evidence that it would need to effectively contest whether Plaintiff has accurately represented the purpose for its demand for Arizona's unredacted VRDB.

The Secretary also needs discovery to ascertain "the basis" for Plaintiff's demand. As explained in the Motion to Dismiss, Plaintiff's demand is deficient as a matter of law because it fails to contain any statement of the basis for the demand. (*See* Mot. to Dismiss, at 6-10). But should the Court disagree, the statute at the very least requires Plaintiff to have a basis for believing an investigation is necessary when it invokes its powers under the CRA. The established facts make the existence of such a basis doubtful here. Among other things, Plaintiff's decision to seek voter lists from nearly every state strongly suggests that it is not acting based on a belief that any particular State's list-maintenance program is unreasonable, but is instead engaged in a fishing expedition to create a new, massive federal database of registered voters.

Accordingly, if the Court does not dismiss Plaintiff's claims, the Secretary should be permitted to take discovery on whether Plaintiff had a legitimate basis for its demand.

**B.     The Secretary Should Have the Opportunity to Discover Information Concerning Plaintiff's Compliance with Federal Privacy Laws.**

The Secretary should also have the opportunity to take discovery on whether Plaintiff has complied with both the Privacy Act, the E-Government Act and the DPPA. The Privacy Act of 1974 prohibits, among other things, "the creation of secret information systems of data banks on Americans by employees of the departments and

1  agencies of the executive branch." S. Rep. No. 93-1183 (1974), *reprinted* in 1974
2  U.S.C.C.A.N. 6916, 6917. To this end, it requires federal agencies to publish public
3  notices, called Systems of Records Notices ("SORNs"), describing each "system of
4  records" held by the agency that contains records about individual Americans. 5 U.S.C.
5  § 552a(e)(4). Each SORN must include categories of records maintained, categories of
6  individuals contained in those records, expected "routine uses" of the records, categories
7  of users of the records, and policies and procedures governing access, storage, and
8  disposal. *Id*.
9  The relevant federal agency collecting American's data must provide notice in the
10  Federal Register thirty days before "any new use or intended use of the information in
11  the system" and allow the public to submit comments on the proposed use of this data.
12  *Id*. § 552a(e)(11). Notice must also be provided to the Office of Management and
13  Budget and Congress. *Id*. § 552a(r).
14  The Privacy Act also flatly prohibits federal agencies from maintaining records
15  "describing how any individual exercises rights guaranteed by the First Amendment
16  unless expressly authorized by statute or by the individual about whom the record is
17  maintained or unless pertinent to and within the scope of an authorized law enforcement
18  activity." 5 U.S.C. § 552a(e)(7). The VRDB contains precisely such data, including
19  each voter's party preference and voting history. *See* A.R.S. § 16-168(C). Plaintiff's
20  demand for the VRDB violates this provision as a matter of law, and Plaintiff did not
21  respond to the Secretary's concerns from his August communication regarding
22  Plaintiff's compliance with the Privacy Act. (Memo. Ex. 4 at 4). The Secretary should
23  be permitted to take discovery on whether the Plaintiff will, in fact, use the VRDB for
24  "authorized law enforcement activity." For example, if, as reports suggest, Plaintiff is
25  seeking the list in collaboration with DHS to attempt to identify noncitizens, such a
26  purpose would not be authorized by the NVRA and HAVA grant of enforcement
27  authority to Plaintiff, as neither statute requires States' list maintenance programs to
28

1 monitor voters' citizenship status. *See* 52 U.S.C. §§ 20507(a)(4); 21083 (a)(4)(A); *Snipes*, 935 F.3d at 1202.

Additionally, under the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, federal agencies are required to conduct a "privacy impact assessment" prior to taking various actions that impact personal privacy. *Id*. § 208(b)(1)(A)–(B). A privacy impact assessment is required whenever "any information in an identifiable form permitting the physical or online contacting of a specific individual, if identical questions have been posed to, or identical reporting requirements imposed on, 10 or more persons, other than agencies, instrumentalities, or employees of the Federal Government" is collected, maintained, or disseminated. *Id*. § 208(b)(1)(A)(ii).

Arizona's VRDB, which includes names and mailing addresses and consists largely of voters' answers to standardized questions on the voter registration application, *see* A.R.S. § 16-168(C), (F), falls within the strictures of the privacy impact assessment requirement. Yet Plaintiff does not allege in its Complaint, Motion, or its pre-litigation correspondence that it completed any applicable privacy impact assessment. The Secretary should be permitted to take discovery to establish that Plaintiff's demand for the voter file violates the E-Government Act.

Finally, the DPPA prohibits disclosing "personal information" that is obtained by the MVD "in connection with a motor vehicle record." 18 U.S.C. §§ 2721(a)(1), 2725(1), (3), & (4); *Reno v. Condon*, 528 U.S. 141, 143 (2000). Plaintiff argues that the statutory exception allowing a government agency to obtain this data to "carry[]out its functions," that exception is inapplicable in this case. 18 U.S.C. § 2721(b)(1). Plaintiff's conclusory statement that the VRDB "is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority," is insufficient to invoke the DPPA's exception. (Doc. 1. ¶ 28). The DPPA's inclusion of the phrase "[f]or use" dictates the critical inquiry—i.e., whether "the actual information disclosed . . . is used for the identified purpose." *Senne v. Vill. of Palatine, Ill.*, 695 F.3d

597, 606 (7th Cir. 2012) (en banc).  The Secretary should be permitted to take discovery to determine whether the Plaintiff truly intends to "use" the VRDB to carry out Plaintiff's "government functions."

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion for Order to Compel Production of Records Pursuant to 52 U.S.C. § 20701.

RESPECTFULLY SUBMITTED this 27th day of February, 2026.

>Kristin K. Mayes
>Attorney General
>
>*/s/ Karen J. Hartman-Tellez*
>Karen J. Hartman-Tellez
>Kara Karlson
>Kyle Cummings
>*Attorneys for Defendant Arizona Secretary of State Adrian Fontes*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 27th day of February, 2026, I filed the forgoing document electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

_/s/ Monica Quinonez_