**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV-26-00066-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Adrian Fontes, | |
| Defendant. | |

The Court now considers Arizona Alliance for Retired Americans' ("Alliance") Motion to Intervene (Doc. 9) and the Motion to Intervene collectively filed by Common Cause, Shannon Roivas, Caleb Trevino, and Kara Janssen (collectively, the "Common Cause Intervenors") (Doc. 14). The Court collectively refers to Alliance and the Common Cause Intervenors as the "Proposed Intervenors." The Court **denies** the Proposed Intervenors' Motions for the following reasons.

## I.    BACKGROUND

On July 28, 2025, the Attorney General of the United States—pursuant to her "investigation into Arizona compliance with federal election law"—requested that the Secretary of the State of Arizona, Adrian Fontes ("Secretary Fontes"), produce "Arizona's statewide voter registration list" (the "SVRL"). (Doc. 1 at 3 ¶ 9, 5 at ¶¶21–22.) The Attorney General "demanded the electronic copy of Arizona's SVRL with all fields, which means the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number." (*Id.* at 6

¶ 27.)  Secretary Fontes refused this request, citing "state and federal privacy laws which he asserts prohibits Arizona from producing the information sought." (*Id.* at 7 ¶ 29.)  In so doing, the Attorney General avers that Secretary Fontes violated the Civil Rights Act of 1960 (the "CRA"), 52 U.S.C. § 20703.  (*Id.* ¶ 31–33.)  The Attorney General thus brought the present suit to compel Secretary Fontes to produce the SVRL.

Thereafter, Alliance, Common Cause, Roivas, Trevino, and Janssen filed their respective motions to intervene.  The Court briefly introduces each Proposed Intervenor.

**Alliance**: Alliance describes itself as "a nonpartisan § 501(c)(4) membership organization and the chartered state affiliate of the Alliance for Retired Americans, a grassroots organization" with approximately 51,000 members in Arizona.  (Doc. 9 at 8.)  "The Alliance is dedicated to ensuring social and economic justice and protecting the civil rights of retirees after a lifetime of work, including by ensuring that its members have access to the franchise and can meaningfully participate in Arizona's elections." (*Id.*)

**Common Cause**: Common Cause describes itself as "a nonpartisan organization committed to, *inter alia*, ensuring that all eligible Arizona voters register to vote and exercise their right of suffrage at each election." (Doc. 14 at 12.)  Common Cause has approximately 30,000 members in Arizona. (*Id.*)

**Roivas**: Rovias describes herself as "a registered Arizona voter who moved to the state from North Carolina in 2019." (*Id.* at 13.)  Due to her "studies and work," Rovias "has had to move around and has been meticulous in keeping her documentation and voter registration up to date, including when she moved to Arizona." (*Id.*)

**Trevino**: Trevino describes himself as "a registered Arizona voter." (*Id.* at 14.)  Trevino was "[b]orn in Mexico, he moved to the United States and became a naturalized citizen as a young child." (*Id.*)  "Trevino was unable to vote in the 2024 election because he was moving within Arizona and his updated voter registration was not processed in time." (*Id.*)

**Jansen**: Jansen describes herself as a "registered Arizona voter who has lived in the state her whole life." (*Id.*)  "Over a decade ago, Ms. Janssen was convicted for drug-related felony offenses" but has been "out of prison for seven years and had her voting rights restored approximately one year ago." (*Id.*)

At bottom, the Proposed Intervenors contend that disclosure of the SVRL implicates a

variety of privacy concerns and would deter voting generally.  The Court now considers the Motions to Intervene.

## II.    DISCUSSION

A non-party who wishes to join a suit may move to intervene under Federal Rule of Civil Procedure ("Rule") 24.  Rule 24 speaks of two types of intervenors: (1) intervenors of right—those whom the court *must* let intervene; and (2) permissive intervenors—those whom the court *may* let intervene.  The Proposed Intervenors argue that they qualify as either an intervenor of right or a permissive intervenor.  (Doc. 9 at 9, 15; Doc. 14 at 15, 21.)  The Court considers each argument in turn.

### A.  Intervention of Right

The Court first assesses whether any of the Proposed Intervenors qualify as an intervenor of right.   Rule 24(a)(2) requires courts, upon timely motion, to permit intervention of right by anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

Under Rule 24(a)(2), a party is entitled to intervene as a matter of right where: "(1) the intervention is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant' s interest." *Gonzalez v. Arizona*, 485 F.3d 1041, 1051 (9th Cir. 2007) (citation modified).  In assessing these elements, "courts are guided primarily by practical and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).  Here, even assuming the first three elements are met, the Proposed Intervenors fail to demonstrate that their interests are not already adequately represented.

1. *Adequate Representation Presumptions*

The Ninth Circuit has long recognized that "[w]here the government is acting on behalf of a constituency it represents" there is a presumption "that the government will adequately represent that constituency." *Gonzalez*, 485 F.3d at 1052 (citation modified). "In order to overcome this presumption, the would-be intervenor must make a *very compelling* showing that the government will not adequately represent its interest. *Id.* (citation modified) (emphasis added). A similar presumption exists where "an intended intervenor and a party in the action seek the same ultimate objective." *Prete v. Bradbury*, 438 F.3d 949, 957 (9th Cir. 2006).

Neither Motion discusses these presumptions. Accordingly, neither Motion contends that these presumptions are inapplicable, nor do they attempt to argue under the associated heightened standard. These omissions undermine the Proposed Intervenors' positions given that both presumptions apply here.

The adequate government representation presumption plainly applies here. As noted, Secretary Fontes is sued in his official capacity, and as such is representing his constituency—Arizona voters—which encompasses the Proposed Intervenors. Other courts have recognized as much. *See e.g.*, *Mussi v. Fontes*, No. CV-24-01310-PHX-DWL, 2024 WL 3396109, at *2 (D. Ariz. July 12, 2024). Notably, *Mussi* was a suit against Secretary Fontes in which Alliance filed a very similar motion to intervene which was denied under the adequate government representation presumption. *Id.* at *2–4.

Additionally, the ultimate objective presumption applies here. Secretary Fontes and the Proposed Intervenors seek the same outcome—preventing the Attorney General from accessing the SVRL. As noted, the Attorney General argues that Secretary Fontes must turn over the SVRL pursuant to the CRA. (Doc. 1 at 7 ¶¶ 31–33.) Secretary Fontes disagrees. As made clear in his recent Motion to Dismiss (Doc. 25), Secretary Fontes contends that the Attorney General is not entitled to the SVRL under either the CRA or other related federal and state law. As relevant here, Secretary Fontes invokes a body of law designed to protect against the invasion of voters' personal privacy including the

Privacy Act, the E-Government Act, the CRA, the National Voter Registration Act ("NVRA"), the Help America Vote Act ("HAVA"), and a variety of Arizona statutes. Simply put, Secretary Fontes' ultimate objective in this litigation is to keep the Attorney General from accessing the SVRL.  As the Court will discuss below, the Proposed Intervenors pursue the same objective, albeit dressed in a slightly different rationale.

Given the existence of both presumptions,[1] the Motions erroneously presume that "the burden of showing inadequacy of representation is minimal and is satisfied if the applicant shows that representation of its interests may be inadequate."  *See Prete*, 438 F.3d at 956 (citation modified).  While this is the generally applicable standard, it is inapplicable here.  The Court thus searches the Motions for a "very compelling" reason as to why Secretary Fontes will not adequately represent the Proposed Intervenors' interests. The Court already outlined Secretary Fontes' interest in this case; thus, the Court addresses the Proposed Intervenors' interests, beginning with Alliance.

### 2. *Alliance*

Alliance contends that Secretary Fontes "does not adequately represent the Alliance's specific interests" because "a government-official defendant's interests are necessarily colored by their view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it."  (Doc. 9 at 14 (citation modified).)  This argument plainly contradicts the Ninth Circuit's adequate government representation presumption, which this Court is "duty-bound to follow."  *See Mussi*, 2024 WL 3396109, at *2.  Nevertheless, Alliance does not point to a materially diverging interest.

Alliance suggests Secretary Fontes "is obliged to enforce the requirements of the NVRA and HAVA, in addition to state laws governing maintenance of the voter registration list [and thus] has an obligation to weigh and carry out public duties that the Alliance does not share."  (Doc. 9 at 15.)  Alliance goes on to argue that "the NVRA

---

[1]    *Prete* involved a situation in which both the "ultimate objective" and "adequate government representation" presumptions were present.  438 F.3d at 957.  The court did not opine as to the effect of the presence of both presumptions.  *See id.*  The court ultimately applied the "very compelling" standard.  *See id.*

specifically requires state election officials to 'balance competing objectives'—maintaining accurate and current voter rolls while promoting access to the ballot box—that do not pertain to the Alliance or its interests." (*Id.*)  Alliance points out that it is not burdened with these duties and "is focused entirely on maintaining the privacy of its members' sensitive personal information and promoting its own organizational objectives." (*Id.* at 16.)

These arguments do not constitute a "very compelling" showing that Alliance's interests are inadequately represented.  Indeed, the Ninth Circuit rejected a similar line of argument in *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020).  There, the court recognized that a government defendant having "broader concerns" does not necessarily "lead it to stake out an undesirable legal position." *Id.*  Also, *Mussi* persuasively rejected a nearly identical argument made by Alliance.  2024 WL 3396109, at *2–3.  There, the court similar considered Alliance's argument "that Secretary Fontes does not share and/or is unable to adequately represent their interests because he may hold a different perspective than they do on how the NVRA should, in general, be effectuated."  *Id.* at *3.  *Mussi*'s holding on this point applies with equal force here: "Even assuming that Proposed Intervenors have identified some philosophical difference between their view of the NVRA and that of Secretary Fontes, there is no reason to believe this difference will cause Secretary Fontes to stake out a legal position in this case that is undesirable from their perspective." *Id.*  Additionally, Alliance fails to explain how the NVRA's "competing interests" would motivate Secretary Fontes to disclose the SVRL.  Alliance contends that NVRA requires Secretary Fontes to balance "maintaining accurate and current voter rolls [with] promoting access to the ballot box." (Doc. 9 at 16.)  However, Alliance fails to explain how "maintaining accurate and current voter rolls" or "promoting access to the ballot box" necessarily requires disclosure of the SVRL.  Indeed, Secretary Fontes plainly argues that disclosure is not required under the NVRA.  (Doc. 25 at 16.)

Additionally, the Court is not convinced that Alliance has a different "interest" in

this litigation. Alliance and Secretary Fontes clearly share a common purpose—safeguarding the SVRL. Thus, Alliance's arguments more accurately suggest that it has a "different perspective" or "philosophical difference" in the application of certain laws. *See Mussi*, 2024 WL 3396109, at *3. However, any differences "rooted in style and degree" or a "[d]ivergence of tactics and litigation strategy [are] not tantamount to divergence over the ultimate objective of the suit." *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 949 (9th Cir. 2009). These differences do not affect "the ultimate bottom line" and do not defeat the presumption of adequate representation. *See id.*

### 3. *The Common Cause Intervenors*

The foregoing analysis applies with equal force to Common Cause Intervenors. In short, the Common Cause Intervenors argue there are "diverging perspectives . . . between the government's need to balance many interests and Proposed Intervenors' particular interest in their own privacy [which] present[s] a classic scenario supporting intervention." (Doc. 14 at 21.) Again, the Ninth Circuit recently made clear that a government litigant representing "broader concerns" is, by itself, insufficient to rebut the presumption of adequacy. *See Oakland*, 960 F.3d at 620.

Moreover, the Common Cause Intervenors do little to show that they have materially different interests than Secretary Fontes in this litigation. The Common Cause Intervenors' stated interests are as follows: (1) protecting their privacy; (2) preventing the Attorney General from accessing the SVRL information which will "likely to be used to challenge the registration of certain Arizona voters"; and (3) promoting voter registration which will be chilled if voters "sensitive personal data will be provided to the federal government and potentially misused as part of a national database." (Doc. 14 at 17.) These interests are not materially different from Secretary Fontes', whose Motion to Dismiss makes clear that he is seeking to protect voter privacy. (Doc. 25.) The Common Cause Intervenors' stated interests are not distinct and fall under the ambit of voter privacy. Additionally, Secretary Fontes stakes his position under a variety of state laws clearly

animated by privacy concerns—the aptly named Privacy Act being just one example. (*Id.*) Although Secretary Fontes might not be acting exclusively to protect the Proposed Intervenors' privacy interests, his arguments necessarily encompass those interests. Again, the onus is on the Common Cause Intervenors to demonstrate that the "government will take [an] undesirable legal position." *See Oakland*, 960 F.3d at 620. They have failed to do so.[2]

Each Motion also argues that Secretary Fontes' broader obligations may oblige him to negotiate a settlement that would sully the Prospective Intervenors' interests. (Doc. 9 at 15; Doc. 14 at 20.) The Court is not convinced that a remote[3] possibility of a future settlement establishes that the Proposed Intervenor's interests are not being adequately represented. *See Benson*, 2025 WL 3520406, at *6 ("[I]nadequacy cannot be shown based on mere 'speculation' about an existing party's future actions."). Of course, this argument is also hampered by the fact that it is available to *any* proposed intervenor in *any* case. Nevertheless, the possibility of settlement here seems particularly remote given the nature of this case and Secretary Fontes' recent Motion to Dismiss.

At bottom, the Proposed Intervenors' arguments do little more than establish that it might pursue different litigation strategies or argue this case from a different perspective. Indeed, the Common Cause Intervenors make clear that their "intervention would not add any new issues to this litigation; instead, Proposed Intervenors offer their unique perspective." (Doc. 14 at 22.) There is no reason provided suggesting that Alliance's

---

[2]  Although this issue is moot, the Common Cause Intervenors filed their Motion after Alliance filed theirs. Given the similarity between the Motions, even if the Court granted Alliance's Motion, dismissal of the Common Cause Intervenors' Motion would still be appropriate. If Alliance's Motion was granted, Alliance would be considered an existing party and the Common Cause Intervenors would have to demonstrate that Alliance also inadequately represents their interests. *See, e.g., United States v. Benson*, No. 1:25-CV-1148, 2025 WL 3520406, at *6 (W.D. Mich. Dec. 9, 2025) (noting that adequate representation analysis changes with each successive intervenor). The Common Cause Intervenors' Motion does not address Alliance's Motion.

[3]  Perhaps the Proposed Intervenors can rest assured regarding Fontes' appetite for settlement given his recent claim that "[t]hey're going to have to put me in jail if they want this information and have somebody else give it to them because I'm not going to do it." Jim Small, *Fontes Vows to Fight DOJ Lawsuit Over Voter Data, Says He'd Rather Be Jailed Than Comply*, Arizona Mirror (Jan 6. 2026) https://azmirror.com/2026/01/06/fontes-vows-to-fight-doj-lawsuit-over-voter-data-says-hed-rather-be-jailed-than-comply/.

intervention would be any different.  However, these arguments do little to rebut the presumptions in favor of adequate representation in this case.  A mere "difference in perspective fail[s] to establish inadequacy for Rule 24(a)(2) purposes" where a governmental litigant is pursuing the same ultimate objective as a proposed intervenor. *See Mussi*, 2024 WL 3396109, at *4.

The Court thus denies the Proposed Intervenors' request to intervene as a matter of right.

### B. Permissive Intervention

Because intervention of right is not appropriate in this case, the Court considers the Proposed Intervenors' request for permissive intervention.  Under Rule 24(b)(1)(B), "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  "[A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002) (citation modified).  The Court has "broad discretion to make this determination," *Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011), and can even deny a request for permissive intervention even where "an applicant satisfies [the] threshold requirements," *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998).  When determining whether to grant permissive intervention, courts look to:

> [T]he nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977) (citation modified).  The Court, having weighed these considerations, declines to grant permissive

intervention.

As made clear, the Proposed Intervenors' interests are adequately represented in this case, which cuts against permissive intervention. *See Proposition 8 Off. Proponents*, 587 F.3d at 955. Also, the nature of this case does not allow for the Proposed Intervenors to "significantly contribute to full development of the underlying factual issues in the suit" given that this case turns almost exclusively on legal questions. *See Spangler*, 552 F.2d at 1329. The only salient fact in this case that the Secretary Fontes denied the Attorney General's request for the SVRL.

The Court is similarly dubious as to whether the Proposed Intervenors stake out a distinct legal position that would meaningfully enhance the "equitable adjudication of the legal questions presented." *See id.* By way of example, the Alliance's Proposed Motion to Dismiss (Doc. 23) raises the exact legal arguments Secretary Fontes raises in his Motion to Dismiss. Alliance's Proposed Motion argues:

> *First*, DOJ has not complied with the basic procedural requirements contained within Title III [of the CRA], namely that it provide Arizona with a proper "basis" and "purpose" for its demand. *Second*, Title III does not preempt Arizona's privacy protections for sensitive personal data. *Third*, DOJ's attempted collection and maintenance of this data violates the federal Privacy Act.

(Doc. 23 at 5.) Secretary Fontes' Motion argues:

> *First*, Plaintiff has not provided a statement of the basis and purpose for its demand for records that complies with the CRA. *Second*, the CRA provision on which Plaintiff relies is not part of the enforcement scheme of the [NVRA] and the [HAVA], which were enacted more than thirty and fifty years after the CRA, respectively. *Third*, Plaintiff has not complied with federal laws, including the Privacy Act of 1974, the E-Government Act, and the Driver's Privacy Protection Act (the "DPPA") regarding records like Arizona's [SVRL]. *Finally*, the CRA does not preempt the Arizona laws that protect voter information.

(Doc. 25 at 2.) Alliance's Proposed Motion makes arguments *identical* to those in Secretary Fontes' Motion. Of course, Alliance's Proposed Motion is not a carbon copy of Secretary Fontes' Motion, however, the striking similarities between the two demonstrate that Alliance is doing little in the way of either raising new legal issues or materially

developing those issues raised by Secretary Fontes.  The Common Cause Intervenors have not filed a proposed motion to dismiss.  However, based on its current Motion to Intervene, the Court is not convinced that it should be treated any differently from Alliance.

Accordingly, the Court denies the Proposed intervenors request for permissive intervention.

## III.    CONCLUSION

**IT IS HEREBY ORDERED denying** Alliance's Motion to Intervene (Doc. 9) and the Common Cause Intervenors' Motion to Intervene (Doc. 14).

**IT IS FURTHER ORDERED** denying Alliance's Motion for Leave to File Motion to Dismiss and Opposition to Motion to Compel (Doc. 22) as moot.

**IT IS FURTHER ORDERED striking** Alliance's Proposed Motion to Dismiss (Doc. 23) and Proposed Response in Opposition to Motion for Order to Compel (Doc. 24).

Dated this 9th day of March, 2026.

Honorable Susan M. Brnovich
United States District Judge