KRISTIN K. MAYES
Attorney General

Karen J. Hartman-Tellez (No. 021121)
Kara Karlson (No. 029407)
Senior Litigation Counsel
Kyle Cummings (No. 032228)
Assistant Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004-1592
Telephone (602) 542-8323
Karen.Hartman@azag.gov
Kara.Karlson@azag.gov
Kyle.Cummings@azag.gov
adminlaw@azag.gov

*Attorneys for Defendant Arizona*
*Secretary of State Adrian Fontes*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CV-26-00066-PHX-SMB |
|---|---|
| Plaintiff, | |
| v. | **ARIZONA SECRETARY OF STATE'S REPLY IN SUPPORT OF MOTION TO DISMISS** |
| Adrian Fontes, in his official capacity as Secretary of State for the State of Arizona, | |
| Defendant. | |

The National Voter Registration Act of 1993 (the "NVRA") requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of—(A) the death of the registrant; or (B) a change in the residence of the registrant." 52 U.S.C. § 20507(a)(4). The Help America Vote Act of 2002 ("HAVA") imposes similar obligations on states with respect to the single statewide computerized list of voters. 52 U.S.C. § 21083(a)(2). These requirements, commonly called "list maintenance" are tasks committed to the states by the NVRA, HAVA, and the United States Constitution's Elections Clause, U.S. Const. Art. 1, § 4, cl. 1.

Yet Plaintiff the United States, acting through its Department of Justice (the "DOJ"), has embarked on a massive data collection effort, demanding that Arizona and dozens of other states turn over their complete, unredacted voter registration databases. In Arizona, that database includes a vast cache of information about voters, including driver's license numbers, the last four digits of social security numbers, birth dates, mother's maiden names, signatures, political party choice, and voting history. And it also includes names, addresses, and other information that could be used to locate protected voters, including victims of stalking and sexual violence and government officials like prosecutors and judges.

Correspondence between the DOJ and Arizona's Secretary of State (the "Secretary") asserted that the ostensible purpose for DOJ's demand for "an electronic copy of Arizona's complete and current [voter registration database (the "VRDB")] was "to ascertain Arizona's compliance with the list maintenance requirements of the NVRA and HAVA. (Doc. 8-3, at 2). But instead of using the NVRA's enforcement provisions, Plaintiff has invoked in inapt law, the Civil Rights Act of 1960 (the "CRA"), and attempted to have the Court treat this case as a summary proceeding which would bar this Court from reviewing whether Plaintiff has stated a proper basis and purpose for its demand.

But the Federal Rules of Civil Procedure plainly apply to this action, which

1

Plaintiff initiated by filing a civil complaint. *See* Fed. R. Civ. P. 3. That complaint fails to state a claim, however, because (1) Plaintiff failed to meet the CRA requirement that it state both a proper basis and a purpose for the records demand, (2) even if Plaintiff were entitled to the records it requests, it has failed to comply with several federal privacy laws that protect records about individuals—here approximately five million Arizona voters, and (3) redaction of sensitive information from the VRDB is permitted by the relevant federal laws and required by Arizona law. Accordingly, under Fed. R. Civ. P. 12(b)(6), this case should be dismissed without leave to amend.

**ARGUMENT**

**I.    The Civil Rights Act of 1960 Does Not Require Arizona to Disclose its Complete, Unredacted Voter Registration Database.**

**A.    This is case is not a "summary proceeding."**

As a threshold matter, this Court has authority to review Plaintiff's compliance with the CRA. Contrary to Plaintiff's argument for a summary proceeding, this is a traditional civil action, subject to the Federal Rules. (*See* Doc. 35, at 4-5 (citing *Kennedy v. Lynd*, 306 F.2d 222, 225-26 (5th Cir. 1962)). "Nothing in the text of Title III [of the CRA] requires a special statutory proceeding or any abbreviated procedures." *United States v. Weber*, No. CV-25-09149-DOC-ADS, 2026 WL 118807, at *8 (C.D. Cal. Jan. 15, 2026). Indeed, the Supreme Court has confirmed that the Federal Rules govern the federal government's document demands even if a summary proceeding is authorized by statute. *See Becker v. United States*, 451 U.S. 1306, 1307-08 (1981); *see also* Fed. R. Civ. P. 81(a)(5). As another court addressing Plaintiff's demand for a complete state voter registration list noted, the Supreme Court has "squarely reject[ed] Plaintiff's contention and reliance on *Lynd*." *United States v. Oregon*, No. CV-25-01666-MTK, 2026 WL 318402, at *8 (D. Or. Feb. 5, 2026) (citing *United States v. Powell*, 379 U.S. 48 (1964)). Plaintiff tries to distinguish *Powell* while also arguing that the case actually supports its demand for records. (*See* Doc. 35, at 12-13). But the fact remains that "[t]here is no current or binding authority for the proposition that Title III

2

[of the CRA] precludes the Court from evaluating the sufficiency of Plaintiff's allegations regarding [the Secretary's] alleged failure to comply with Title III." *Oregon*, 2026 WL 318402, at *8.

**B.      Plaintiff's asserted purpose for demanding the VRDB is outside the CRA, which is limited to investigations voting discrimination.**

Plaintiff asserts that its purpose in demanding the VRDB is to "ascertain Arizona's compliance with the list maintenance requirements of the NVRA and HAVA." (Doc. 35, at 3). But the CRA "was not passed as a tool for NVRA compliance." *Weber,* 2026 WL 118807, at *9. And that alleged purpose demonstrates that Plaintiff is not investigating voting discrimination. As explained in the Secretary's Motion to Dismiss, nothing in the CRA addresses list maintenance or removing registered voters from the voter rolls due to death or relocation. (Doc. 25, at 6-9) (discussing the text and legislative history of the CRA). The CRA's records provisions were enacted as a tool to enforce the voting rights laws that protect against race discrimination in exercising the right to vote. *See Weber*, 2026 WL 118807 at *8-9. CRA records demands must, therefore, "relate to a purpose of investigating violations of individuals' voting rights" *Oregon*, 2026 WL 318402 at *10.

Here, however, because Plaintiff's stated purpose "lack[s] any reference or relation to the purposes for which [the CRA] was enacted . . . [the] demand for records is deficient and cannot trigger any duty to produce such records." *Oregon*, 2026 WL 318402 at *10; *see also Weber*, 2026 WL 118807 at *9. Indeed, nothing in Plaintiff's original demand or its Complaint suggests that Plaintiff is concerned about voting discrimination in Arizona, nor that it is investigating any discriminatory conduct.

**C.      Plaintiff's asserted basis for demanding the VRDB is woefully insufficient to comply with the CRA.**

The CRA requires a statement of both the basis and the purpose for a records demand. 52 U.S.C. § 20703 ("This demand *shall* contain a statement of the basis *and* the purpose therefor.") (emphasis added). As such, even if Plaintiff had stated a purpose

for its demand that comes within the CRA, it has failed to provide the necessary basis. Indeed, in its Response, Plaintiff for the first time tries to describe a basis for its demand for the VRDB that is separate from the stated purpose. In particular, Plaintiff stated that "[t]he basis for the demand was twofold: Title III of the CRA and several counties' failure to provide accurate data for the Election Assistance Commission's Election Administration and Voting Survey (EAVS)." (Doc 35, at 3).[1]

"Basis" in 52 U.S.C. § 20703 refers to a "factual basis for investigating a violation of a federal statute." *Oregon*, 2026 WL 318402 at *8; *see also Weber*, 2026 WL 118807 at *9. Accordingly, the mere reference to the CRA does not constitute a proper basis under that law. As for Arizona's EAVS responses, that basis appears to be entirely pretextual. *See Oregon*, 2026 WL 318402 at *9 (stating that a "patchwork and post hoc effort to stitch together a legally sufficient 'statement of the basis' fails"). Plaintiff demanded a complete copy of the VRDB in its July 28, 2025 letter, *before* the Secretary had even had an opportunity to answer Plaintiff's questions about its EAVS responses. (Doc. 8-1). Once the Secretary responded to those questions, Plaintiff asked for no further information about the state's list maintenance practices. If Plaintiff truly had questions about the state's EAVS responses, which it alleges lack accurate data from some counties, it could have sought further information about the specific EAVS responses it deems deficient. Instead, the Secretary heard nothing from the DOJ regarding list maintenance after Plaintiff's August 14, 2025 letter until it filed this action on January 6, 2026.

Moreover, Plaintiff does not need access to the unredacted VRDB to assess compliance with list maintenance duties, which federal law assigns to the states. *See Weber*, 2026 WL 118807 at *9 ("DOJ states no reason why an unredacted version of California's voter list is necessary under the NVRA."); 52 U.S.C. §20507(a)(4). Voter-specific personal information, such as full birth date, social security number, driver's

---

[1] The Secretary disputes that its EAVS responses contained inaccurate information, but this Court need not resolve that issue to decide the pending Motion to Dismiss.

license number, or signature is not needed to assess whether Defendants are complying with the NVRA's requirement to remove voters upon death or change in residence. *See* 52 U.S.C. § 20507(d). In fact, compliance with list maintenance requirements is principally assessed by evaluating a state's procedures, not each individual voter's data. *See Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 624-25 (6th Cir. 2025); *Bellitto v. Snipes*, 935 F.3d 1192, 1205 (11th Cir. 2019). Arizona's list maintenance procedures are extensive and detailed. And the Secretary pointed DOJ to those procedures in his August 29. 2025 letter. (Doc. 8-4, at 1-3 (citing Arizona's 2023 Election Procedures Manual)).[2]

Moreover, it is implausible that alleged concerns about Arizona's list maintenance practices establish a ground for demanding the unredacted voter list. The sensitive data of Arizona voters is not necessary or relevant to assessing list maintenance compliance. Questions about list maintenance processes do not establish a basis to demand the unredacted voter registration list because the unredacted voter list would not answer those process and systems-based questions. Nor would it provide any information relevant to those alleged list maintenance issues that the publicly available list would not also provide. Because private and sensitive voter data is irrelevant to assessing list maintenance compliance, it does not provide a basis for the demand for the unredacted VRDB.

In lieu of providing a legitimate basis and purpose for its request, Plaintiff contends that this Court cannot scrutinize them. (Doc. 35, at 7 (stating that "Defendants cannot challenge the Attorney General's basis and purpose to investigate Arizona's HAVA and NVRA compliance"). That is not an accurate statement of the law. Instead, "the requirement that [DOJ] state their purpose and basis is not merely perfunctory—it is

---

[2] Pursuant to A.R.S. § 16-452, the Secretary issues an Elections Procedures Manual (the "EPM") at the end of every odd-numbered year. The 2025 EPM is available on the Secretary's website at the following link: https://apps.azsos.gov/election/files/epm/2025/Election-Procedures-Manual-2025--FINAL-12-22-25.pdf. The current list maintenance procedures appear at pages 41-53.

a critical safeguard that ensures the request is legitimately related to the purpose of the statute" and helps to prevents "a fishing expedition of voter records." *Weber*, 2026 WL 118807 at *9. This Court can and should interrogate whether Plaintiff has sufficiently stated a basis for its sweeping records demand. Because it has not, the Complaint should be dismissed.

### D. Plaintiff Misunderstands Arizona's DPOC Law.

In his Motion, the Secretary explained how Arizona's unique requirement that prospective voters provide "satisfactory evidence of Untied States citizenship" when registering to vote makes the VRDB an inappropriate tool for revealing violations of federal law or aiding enforcement of immigration laws. A.R.S. § 16-166(F) (listing the documents that provide such evidence ("DPOC")); (Doc. 25, at 10). Plaintiff attempts to counter that explanation with four assertions, each of which inaccurately describes the relevant law. (*See* Resp. at 8).

*First*, Plaintiff relies on a quote from one of the Senate proponents of the CRA, which is the entire substance of the Fifth Circuit's opinion in *Coleman v. Kennedy,* 313 F.2d 867 (5th Cir. 1963), and provides no support for Plaintiff's demand for the VRDB in this case. (Doc. 35, at 8). Specifically, it does not provide support for using the CRA's records provision as a means to investigate potential violations of the NVRA, which was enacted decades later and has its own enforcement and records provisions. *See* 52 U.S.C. §§ 20507(i), 20510(a); *see also Weber*, 2026 WL 118807, at *9.

*Second*, Plaintiff asserts that Arizona's DPOC requirement "applies only to state registration forms." (Resp. at 8). This misstates Arizona law. The DPOC requirement is found in A.R.S. § 16-166(F), and applies to all voter registrations, regardless of whether the registrant used the state form or the federal form. In *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 20 (2013) ("*ÍTCA*"), the Supreme Court held that the NVRA's requirement that states "accept and use" the federal voter registration form meant that Arizona could not refuse to register a voter who used the federal form, but did not provide DPOC. After *ITCA*, the state instituted a bifurcated voter registration

6

system.  *See* 2025 Arizona Elections Procedures Manual (the "EPM"), at 3-4; *see also* Ariz. Op. Atty. Gen'l, I13-011, 2013 WL 5676943 (Oct. 7, 2013).  That bifurcated system divides Arizona voters into "full-ballot" voters and "federal-only" voters.  EPM, at 3-4.  Full-ballot voters can vote for federal, state, and local races.  *Id.* at 4.  Federal-only voters can vote only for federal candidates (*i.e.,* President, United States Senator, or United States Representative).  *Id.*  The difference between the state form and the federal form only comes into play if a county recorder is unable to access DPOC for the registrant.  If that happens, a registrant using a state form is not registered, while a registrant using a federal form is registered as a federal-only voter.  *Id.*; *see also generally* EPM, at 3-16 (providing detailed procedures for processing voter registration forms and implementing the DPOC requirement).

*Third*, Plaintiff makes an even more egregious misstatement of Arizona law, asserting that "DPOC does not apply to elections for federal office."  (Resp. at 8 (citing *ITCA*, 570 at 17-20).  As noted above, the DPOC requirement applies to every person registering to vote in Arizona.  If a registrant uses a federal form, but fails to satisfy the DPOC requirement, and the county recorder's statutorily required checks of various government records do not supply DPOC, the registrant becomes a federal-only voter.  *See* EPM at 10.  As of January 2, 2026, approximately 35,747 Arizona voters are classified as federal-only because they have not provided DPOC.[3]  That represents 0.73 percent of Arizona's nearly five million registered voters.[4]  Both full-ballot voters (those

---

[3] Federal Only Registrants as of January 2, 2026 (Active and Inactive Voters), available at: https://apps.azsos.gov/election/VoterReg/2026/Statistics-Federal-Only-Registrants-January-2nd-2026.pdf.  This Court may take judicial notice of this government document, which is published on the Secretary's website.  *See Tampa Elec. Co. v. Nashville Coal Co*., 365 U.S. 320, 332 n.10 (1961) (taking judicial notice of government published documents that were not hosted on a government website); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (taking judicial notice of government published documents hosted on a government website).

[4] As of January 2, 2026, Arizona had 4,928,982 registered voters, counting both active and inactive voters.  *See* State of Arizona Registration Report, at 1, 6 (Jan. 2, 2026), available at: https://apps.azsos.gov/election/VoterReg/2026/State-Voter-Registration-January-2026.pdf.

who have provided DPOC) and federal-only voters are eligible to vote for federal candidates. And as the voter registration numbers above show, only a tiny fraction of Arizona voters who vote on federal candidates have not provided DPOC.[5]

*Fourth*, Plaintiff erroneously asserts that "the 9th Circuit has enjoined Arizona law's requirements for DPOC." (Resp. at 8 (citing *Mi Familia Vota v. Fontes*, 129 F.4th 691 (9th Cir. 2025). The DPOC requirement itself was not challenged in *Mi Familia Vota*. Instead, the plaintiffs challenged recently-enacted laws, including ones that attempted to prevent federal-only voters from voting by mail or voting in "presidential elections." A.R.S. §§ 16-121.01(E), -127. The district court enjoined those laws, and the Ninth Circuit affirmed. *Mi Familia Vota*, 129 F.4th at 706, 732. Simply put, neither the district court's judgment nor the Ninth Circuit's decision enjoined the DPOC requirement and it remains in full force and effect.

## II.    Plaintiff Has Not Complied with Federal Privacy Laws.

### A.    The Privacy Act bars Plaintiff's massive data collection effort.

Plaintiff asserts that its effort to obtain a complete unredacted copy of the VRDB (and those of dozens of other states) complies with the Privacy Act of 1974, but its argument does not hold up. Subject to narrow exceptions, the Privacy Act "serves as a protection for Americans against the disclosure of information collected by the government." *Weber*, 2026 WL 118807 at *17. Moreover, the Privacy Act prevents Plaintiff from collecting the sensitive personal data it seeks here, including information concerning Arizonans' exercise of their First Amendment rights. *See* 5 U.S.C. § 552a(e)(7). Indeed, as the court held in *Weber*, the "Privacy Act bars DOJ's request for [a state's] unredacted voter roll because fulfillment of that request would include information regarding previous election participation and party affiliation," which are types of political expression protected by the First Amendment. *Weber*, 2026 WL

---

[5] Indeed, the existence of federal-only voters in Arizona is a function of the NVRA, the very statute Plaintiff claims to be seeking information to enforce. But Arizona's *compliance* with the NVRA is certainly not a basis to investigate it for *violating* the NVRA.

118807 at *17.

Plaintiff argues that "[t]here is no basis for the Defendant to fail or refuse to disclose information to a federal agency for law enforcement purposes"—by which it presumably means its efforts to investigate Arizona's compliance with the NVRA's and HAVA's list maintenance provisions. (Doc. 35, at 16; *see also* Doc. 8-3, at 3). But Plaintiff cannot obtain this data by relying on this characterization of "law enforcement."

The Ninth Circuit takes "a narrow reading of 'law enforcement activities' [to] better serve[] the goal of privacy and avoid[] infringing on the overall First Amendment concerns of section (e)(7)." *MacPherson v. I.R.S.*, 803 F.2d 479, 482 (9th Cir. 1986). Accordingly, courts review whether the law enforcement exception applies "on an individual, case-by-case basis." *Id*. at 484. And they require the government to show "good reason to believe" the records are "relevant" to the claimed law enforcement basis. *Garris v. F.B.I.*, 937 F.3d 1284, 1299 (9th Cir. 2019) (internal citation omitted). Here, by contrast, DOJ seeks to collect individualized data from millions of voters to supposedly enforce the NVRA's requirement to conduct a general voter list maintenance program. The full, unredacted VRDB list is neither "pertinent to" nor "within the scope" of either law enforcement purpose, and Plaintiff has not provided "good reason to believe" otherwise. *Garris*, 937 F.3d at 1299 (government's burden not met by a "remote possibility" that records would provide a "minuscule" "potential advantage" in an investigation); 5 U.S.C. § 552a(e)(1). If a federal agency has not satisfied the Privacy Act's requirements, it cannot lawfully receive the records, barring DOJ here from receiving the records requested.

In addition, Plaintiff has not complied with the Privacy Act requirement that it publish a System of Records Notice ("SORN") that would apply to Arizona's VRDB before it could collect that information. In its Response, Plaintiff simply cites to a table of every SORN ever issued by the DOJ. (Doc. 35, at 15) (citing 82 Fed. Reg. 24147-01 (May 25, 2017)). But Plaintiff made no effort to explain how any SORN could be read to encompass Arizona's VRDB or how Plaintiff has fulfilled the procedural safeguards

of the Privacy Act. Indeed, because list maintenance is a state function, it is likely that no previously issued SORN covers state voter registration databases. Because of this failure, the Privacy Act prohibits Plaintiff from obtaining—and then collecting, maintaining, and using—Arizona's VRDB.

### B.    E-Government Act.

Plaintiff asserts that the E-Government Act, Pub. L. No. 107-347 ("E-Gov't Act") is inapplicable because it is "not initiating a new process" of "contacting individuals for information," because Arizona already maintains the VRDB. (Doc. 35, at 16). This misreads the statute, which requires federal agencies to conduct a privacy impact assessment ("PIA") before "initiating a new collection of information that" permit "contacting of a specific individual." E-Gov't Act, § 208(b)(1)(A)(ii); *see Weber,* 2026 WL 118807 at *19 ("[T]he request made by the DOJ to California is a new one, thus initiating a new collection of data."). Plaintiff's request for voter data is governed by the Act. As such, the PIA it cited—from 2012—is unrelated to the current effort to collect voter data from Arizona and other states, is insufficient to satisfy Plaintiff's obligations under the E-Gov't Act. (Doc. 35, at 16 n.17).

### C.    Plaintiff's Demand Violates the Driver's Privacy Protection Act.

Finally, Plaintiff incorrectly asserts that its collection of private and sensitive voter data is permissible under the governmental function exception to the Driver's Privacy Protection Act ("DPPA"). (Doc. 35, at 17). Plaintiff asserts that a "government agency performing a statutorily mandated function" constitutes a governmental function for purposes of the exception. (*Id.*) But it has not explained why it needs the driver's or non-operating identification license numbers of every Arizona voter to investigate the state's list maintenance practices or how those numbers will be "used for the identified purpose." *See Senne v. Vill. Of Palatine, Ill.*, 695 F.3d 597, 606 (7th Cir. 2012) (en banc) (describing scope of DPPA's disclosure authorization); *see also Weber*, 2026 WL 118807 at *19 ("DOJ has not identified how the use of millions of Californians' driver's license numbers would help it understand whether California conducts a general

program that makes a reasonable effort to remove persons from its voter rolls due to death or change in residence."). Nor has Plaintiff explained why it needs the driver's license numbers of every Arizona voter to inquire into the state's compliance with its general program of list maintenance. This is particularly true because, in compliance with HAVA, Arizona assigns a unique identifying number to every voter's registration record. *See* 52 U.S.C. § 21083 (a)(1)(A)(iii).

### III. The CRA, the NVRA, and HAVA Do Not Preempt Arizona Law Limiting Access to Information in the VRDB.

Plaintiff argues that the federal voting laws at issue in this case preempt state law privacy protections. (Doc. 35, at 13-14). The Secretary does not dispute that those laws, enacted through Congress's Election Clause power can supplant contrary state laws. But courts that have considered requests for election records under such laws have concluded that NVRA's disclosure provisions do not prohibit the redaction of sensitive voter information. *See Pub. Int. Legal. Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (finding that "the appropriate redaction of uniquely or highly sensitive personal information in the voter file" was permissible where the NVRA did not prohibit such redactions). The courts that have already decided cases concerning Plaintiff's similar demands for California, Oregon, and Michigan's voter registration databases have followed *Bellows*. *See United States v. Benson,* No. CV-25-1148, 2026 WL 362789, at *3 (W.D. Mich. Feb. 10, 2026) (collecting cases); *Oregon*, 2026 WL 318402, at *6 (same); *Weber*, 2026 WL 118807 at *12-13 (noting the Plaintiff has previously taken the position that "the NVRA does not prohibit States from redacting 'uniquely sensitive information' like voters' Social Security Numbers before disclosing records").

### CONCLUSION

For the foregoing reasons, the United States' Complaint fails to state a claim for relief and should be dismissed without leave to amend.

11

RESPECTFULLY SUBMITTED this 20th day of March, 2026.

Kristin K. Mayes
Attorney General


/s/ Karen J. Hartman-Tellez
Karen J. Hartman-Tellez
Kara Karlson
Kyle Cummings
*Attorneys for Defendant Arizona*
*Secretary of State Adrian Fontes*

12

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of March, 2026, I filed the forgoing document electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

 */s/ Monica Quinonez*