**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV-26-00066-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Adrian Fontes, | |
| Defendant. | |

The Court now considers Secretary of the State of Arizona, Adrian Fontes' ("Secretary Fontes") Motion to Dismiss (Doc. 25). The Motion is fully briefed. The Court **grants** the Motion for the following reasons.

## I.     BACKGROUND

The Complaint alleges as follows. In 2025, the Attorney General of the United States, pursuant to Title III of the Civil Rights Act of 1960, 52 U.S.C. § 20701 *et seq.*, requested that Secretary Fontes produce "Arizona's statewide voter registration list" (the "SVRL"). (Doc. 1 at 3 ¶ 9, 5 at ¶¶21–22.) The SVRL includes a registered voter's "full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number." (*Id.* at 6 ¶ 27.) The Attorney General made this request pursuant to her "investigation into Arizona compliance with federal election law"—particularly the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq.*, and the Help America Vote Act ("HAVA"), 52 U.S.C. § 20901 *et seq.* (*Id.* at 3 ¶ 9.)

Secretary Fontes refused the Attorney General's request, citing "state and federal privacy laws which he asserts prohibits Arizona from producing the information sought." (*Id.* at 7 ¶ 29.)  In so doing, the Attorney General avers that Secretary Fontes violated Title III. (*Id.* ¶ 31–33.)  The Attorney General thus brought the present suit to compel Secretary Fontes to produce the SVRL.

## II.    LEGAL STANDARD

At the outset, in accord with *United States v. Powell*, 379 U.S. 48, 57–58 (1964), the Court finds that the Federal Rules of Civil Procedure applies to this action.[1]  To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2).  Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  This notice exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A complaint that sets forth a

---

[1] The Attorney General sued twenty-nine states and the District of Columbia for production of their VRLs. *Justice Department Sues Five Additional States for Failure to Produce Voter Rolls*, Office of Public Affairs (February 26, 2026), https://www.justice.gov/opa/pr/justice-department-sues-five-additional-states-failure-produce-voter-rolls.  As of the date of this Order, five courts have dismissed the Attorney General's lawsuits.  *United States v. Weber*, No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, No. 6:25-CV-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026); *United States v. Benson*, No. 1:25-CV-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026); *United States v. Galvin*, No. CV 25-13816-LTS, 2026 WL 972129 (D. Mass. Apr. 9, 2026); *United States v. Amore*, No. 25-CV-00639-MSM-PAS, 2026 WL 1040637 (D.R.I. Apr. 17, 2026).  Each court which addressed the issue found that the Federal Rules of Civil Procedure apply to the Attorney General's lawsuit. *See, e.g.*, *Weber*, 2026 WL 118807 at *8 ("The Supreme Court has also affirmed that the federal government's demands for documents are governed by the Federal Rules of Civil Procedure (FRCP)."); *Oregon*, 2026 WL 318402, at *8; *Benson*, 2026 WL 362789, at *7; *Amore*, 2026 WL 1040637, at *4.

cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pleaded factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

## III.    DISCUSSION

This case presents a legal question: *is* the Attorney General entitled to the SVRL under Title III. It does not present a political question: *should* the Attorney General be entitled to the SVRL. The latter is reserved for the legislative and executive branches. Nonetheless, much of the briefing conflates these distinct inquiries, offering policy arguments in place of legal analysis. While such arguments may carry political weight, they are irrelevant to the Court's limited task. The Court therefore begins, as it must, with the relevant text of Title III.

### A.  Title III

Whether the Attorney General is entitled to the SVRL under Title III is a matter of

statutory interpretation.  As such, the Court begins with Title III's "plain statutory text." *Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue*, 926 F.3d 1061, 1075 (9th Cir. 2019).  "[W]hen deciding whether the language is plain, [courts] must read the words in their context and with a view to their place in the overall statutory scheme." *Id.* (citation modified) (quoting *King v. Burwell*, 576 U.S. 473, 486 (2015)).

To start, § 20701 requires states to preserve certain documents related to federal elections:

> Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico are voted for, all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election.

The Court refers to these documents as "§ 20701 documents."  Section 20703 goes on to provide that the Attorney General may request a state's § 20701 documents:

> Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor.

The briefing primarily concerns whether the Attorney General's SVRL request contains an adequate "statement of the basis and the purpose therefor" under § 20703.  However, this issue is moot if the SVRL is not a § 20701 document in the first instance.

To summarize, under § 20703, the Attorney General may only request documents that are "required by [§ 20701] to be retained and preserved."  Again, these documents are those "which come into [the state's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in" certain federal elections." § 20701. Thus, the question becomes whether the SVRL fits this definition.  To answer this question, the Court explores the SVRL generally.

- 4 -

**B.  The SVRL**

The SVRL is "a statewide database of voter registration information that contains the name and registration information of every registered voter in [the] state."  A.R.S. § 16-168(J).  The information contained in a registration form is outlined in full by A.R.S. § 16-152 and includes details such as a registrant's name, address, birthday, and driver license number or social security number.[2]  Under Arizona law, Secretary Fontes must "provide for maintenance of the database, including provisions regarding removal of ineligible voters that are consistent with the [NVRA] and the [HAVA]."  § 16-168(J).  The Court will discuss the NVRA and HAVA in more detail below, but in short, the NVRA was enacted "to ensure that accurate and current voter registration rolls are maintained." § 20501(b)(4).    Similarly, the HAVA regulates and requires states to maintain a "computerized statewide voter registration list."  § 21083(a)(1)(A).

Secretary Fontes recognizes that "Arizona law provides for public access to portions of the [SVRL], but expressly bars release of certain identifying information," including a voter's social security number or driver's license number.   (Doc. 25 at 2 (citing § 16-168(F).)    Nonetheless, Secretary Fontes—adopting the court's holding in *Benson*—contends that the SVRL is not a § 20701 document. (Doc. 25 at 13.)  The Court agrees and finds *Benson* persuasive on this point and adopts its reasoning.

**C.  *Benson***

In *Benson*, one of the many cases identical to this one, the Attorney General requested Michigan's voter registration list ("VRL") pursuant to § 20703.   2026 WL 362789, at *1.  Ultimately, the court held that Michigan's VRL is not a § 20701 document because it is "created by state officials" and is not a "document[] that people submit to the State as part of the voter registration process."  *Id.* at *9.  The court's analysis proceeded as follows.

The court began by analyzing § 20701's use of the phrase "come into [the state's] possession."  *Id.* (quoting § 20701).  The court found that this phrase "refer[s] to only those

_____

[2] Section 16-152(A)(12)(a) provides that a voter registrant may provide the last four digits of their social security number if they do not have a driver license number.

documents that state election officials *receive* from prospective voters." *Id.* (emphasis added). In the court's view, that phrase would be superfluous if it also encompassed records the state *created*. *Id.* First, a natural reading of the phrase "come into [the state's] possession" "refers to a process by which someone acquires an item from an external source." *Id.* Second, if § 20701 was intended to encompass records created by the state, that meaning could have been achieved by omitting the phrase altogether. *Id.*

The court bolstered its interpretation based on the words following this phrase: "all records and papers which come into [the state's] possession *relating to any application, registration, payment of poll tax, or other act requisite to voting*." § 20701 (emphasis added). The court noted that "these terms refer[] to something that the voter submits or does as part of the registration process" and thus refers to "records that election officials receive, rather than create." *Benson*, 2026 WL 362789, at *9. "Such an interpretation makes sense given that when the CRA was passed, the federal government's attempts to protect the voting rights of Black citizens had been frustrated by state officials' destruction of voter registration applications." *Id.* Thus, "[t]he CRA responded to that problem by requiring states to preserve records that voters submit to them—not records that states create." *Id.*

*Benson* recognized that it might seem "needlessly pedantic" to distinguish "between voter registration applications and the voter registration list" because the latter "is largely a compilation of information from [voter] applications." *Id.* at *10. However, the court noted that Michigan's VRL: "is not assembled purely from information in voter registration applications"; is changed "based on data from the United States Social Security Administration and information shared by other states"; and "includes individuals' voting histories, which is not information that would appear on a voter registration application." *Id.* Even so, the court noted that the distinction between voter registration applications and VRLs "would still be significant" even if the VRL only comprised information contained in § 20701 documents. *Id.* The court highlighted that the CRA is designed to facilitate the disclosure of documents relating to voting eligibility, not voter information generally, even

if that voter information comes from § 20701 documents. *Id.* The court explained that "a voter application can be examined to determine whether it was unlawfully rejected, whereas a list of those who successfully registered to vote would be little help in such an investigation." *Id.*

The *Benson* court also noted that its interpretation of § 20703 is harmonious with Title III generally. *Id.* In particular, the court noted § 20701 requires states to preserve "any document subject to disclosure." *Id.* Thus, in *Benson*'s view, if the VRL was found to be "disclosable because it contains the same information as the individual voter registration applications," then "any document produced by a state that contains voter information," such as the VRL, "must be preserved." *Id.* The court found that this conclusion is untenable because "nothing in the CRA's text implies an intent to require states to preserve every election-related record that they create." *Id.*

This Court separately notes that *Benson*'s interpretation is also harmonious with § 20702. That provision creates liability for "[a]ny person . . . who willfully steals, destroys, conceals, mutilates, *or alters* any" § 20701 document. § 20702 (emphasis added). If the Attorney General can request the SVRL under § 20703, then § 20702 would necessarily outlaw any person from altering the SVRL. However, this interpretation conflicts with the very purpose of VRLs and would place Title III in conflict with the NVRA and the HAVA. *See United States v. Kittson*, 161 F.4th 619, 627 (9th Cir. 2025) (noting that "words of a statute must be read in their context and with a view to their place in the overall statutory scheme" and that there is a goal "to understand [statutes] as a symmetrical and coherent regulatory scheme and to fit, if possible, all parts into a harmonious whole" (citation modified)).

The NVRA was enacted, in part, to "ensure that accurate and current voter registration rolls are maintained." § 20501(b)(4). To fulfill this purpose, the NVRA creates a scheme, under which, states are required to "protect the integrity of the electoral process by ensuring the maintenance of an accurate and *current* voter registration roll." § 20507(b) (emphasis added). Considering this requirement, if the SVRL were deemed a

§ 20701 document, then the NVRA would conflict with § 20702 because it requires a state to update or amend the SVRL as necessary. In short, the NVRA outlines a variety of situations in which states are required to modify their VRLs where § 20702 would prohibit such an alteration—assuming that a VRL qualifies as a § 20701 document.

Like the NVRA, the HAVA similarly requires states to "implement . . . a single, uniform, official, centralized, interactive computerized statewide voter registration list . . . that contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State." § 21083(a)(1)(A). Like the NVRA, the HAVA requires state to "perform list maintenance with respect to the computerized list *on a regular basis*." § 21083(a)(2)(B) (emphasis added). Again, this requirement would be incongruous with § 20702 if the latter were interpreted to include VRLs. To briefly restate the point, § 20703 provides that the Attorney General may only request those documents states are required to preserve under § 20701. If the SVRL were deemed such a document, then § 20702 would prohibit the SVRL from being altered. This conclusion would directly conflict with both the NVRA and the HAVA, which affirmatively requires states to modify its VRLs under certain conditions.

Accordingly, based on the plain meaning of the text of § 20701, Arizona's SVRL is not a document subject to request by the Attorney General pursuant to § 20703. Nevertheless, the Attorney General still contends that "Arizona's [SVRL] falls within Section [20701]'s broad definition of 'all records and papers' relating to registration to vote in federal elections." (Doc. 35 at 9.) The Court disagrees and addresses the Attorney General's arguments in turn.

### D. The Attorney General's Arguments

The Attorney general first argues that "courts that have applied [§ 20701] concluded that . . . Title III does not exclude production of electronic or non-public records or what a state may deem to be private or confidential information." (*Id.*) Accepting this argument as true, it does not compel a certain outcome here. *Benson*'s holding that VRLs are not

covered by § 20701 did not depend on VRLs being "electronic," "non-public," "private," or "confidential."  The Attorney General's cited authority on this point does not suggest that *Benson* was wrongly decided.  The Attorney General relies on *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960) and *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962).  (Doc. 35 at 9.)  However, both cases essentially reiterate the plain text of § 20701 and do not make any affirmative findings which would suggest that the SVRL is covered by § 20701.  For example, *Gallion* merely recognized that "[t]here is nothing uncertain about that part of the [CRA] requiring the preservation and production of all records and papers which are in the possession of an election official . . . *if those records and papers relate to the acts requisite to voting*."  187 F. Supp. at 855 (emphasis added).  Similarly, *Lynd* merely recognized that the documents covered by § 20701 are "sweeping," but did not make any additional finding which would suggest that § 20701's "sweeping" language includes the SVRL.  *See* 306 F.2d at 226.

The Attorney General next argues that *Benson* "reached a few atextual conclusions" and "read [§ 20701] narrower than Congress intended."  (Doc. 35 at 9.)  The Attorney General points out that "no other federal court has adopted such a limitation." (*Id.* at 9–10.) The Attorney General's argument, while true, is of no value.  No other federal court has adopted the limitation imposed by *Benson*—a case that is only a few months old—because that it was among the first courts to consider whether VRLs are covered by § 20701.  More broadly, the issue of what documents are covered by § 20701 has not been a heavily litigated issue.

Nonetheless, the Attorney General avers that at least one court "addressed the scope of records to be produced similarly refused to impose an artificial limit."  (Doc. 35 at 10.)  The Attorney General refers to *Kennedy v. Lewis*, 325 F.2d 210 (5th Cir. 1963).  However, *Lewis* does not suggest that *Benson* is incorrect.  In *Lewis*, the court held that the Attorney General was improperly: (1) only given the ability to investigate "the records pertaining to [voters] who have successfully sought to qualify" to vote; and (2) denied the ability to review "papers in the office subsequent to the date of the filing of the suit dealing with

- 9 -

subsequent registrations or elections." *Id.* at 211–12.  Thus, *Lewis* found that (1) § 20703 requests must not necessarily be tethered to a particular election; and (2) § 20701 covers documents related to *unsuccessful* voter applications.  *Id.* at 212.  This second point was particularly important in *Lewis* because "to limit the inspection to the documents on file relative to those who have become qualified completely denies the Attorney General an opportunity to inspect the records as to those who may have been illegally denied the right to qualify." *Id.*  Indeed, the *Benson* court employed a similar logic in finding that § 20701 does not cover VRLs because a VRL is only "a list of those who successfully registered to vote." 2026 WL 362789, at \*10.  At bottom, *Lewis* does not comment on what documents § 20701 covers beyond the documents at issue in that case—none of which are remotely like the SVRL.

The Attorney General proceeds to argue that "courts addressing similar provisions of federal election law interpret election records expansively." (Doc. 35 at 10.)  Even assuming that this assertion is true, it is of little help in interpreting the statutes at issue in this case.  There is no canon of statutory construction which requires this Court to construe Title III broadly merely because it pertains to election records.  More importantly, the Court will not superimpose an expansive definition where Title III, by its plain text, does not tolerate such a definition.  Thus, the Court sees little probative value in the Attorney General's citations to *Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019), *Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012), and *Public Interest Legal Foundation, Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) to suggest that any statutory reference to election records must be construed broadly.

Nonetheless, these cases are of no import here.  First, Title III was not at issue or even discussed in those cases.  Second, those cases were interpretating statutory language from the NVRA which is sufficiently dissimilar from that at issue here.[3]  Again, the issue here is determining whether the SVRL is a document "relating to any application,

---

[3] Although the Attorney General has sought other state's VRLs under the NVRA, *see, e.g.*, *United States v. Weber*, No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026), the Attorney General has not done so here.

registration, payment of poll tax, or other act requisite to voting in [a federal election]." § 20701. It is true, however, that *Lamone* concerned, and ultimately concluded, that a VRL qualifies as "a record concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." *Lamone*, 399 F. Supp. 3d at 437 (citation modified) (quoting § 20507(i)(1)). But even accepting *Lamone*'s holding as true,[4] it is not clear to this Court that even if a VRL "concern[s] the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," *see* § 20507(i)(1), that it necessarily means a VRL is a document which "come[s] into [the state's] possession [and] relat[es] to [an] application, registration, payment of poll tax, or other act requisite to voting in [a federal election]," § 20701. While the NVRA and Title III both relate to voting registration, that similarity alone does little to aid this Court in interpreting the text of Title III. More importantly, the NVRA's statutory language is too dissimilar to be of any real value in interpreting the text of § 20701. Indeed, the Attorney General does not attempt to argue that § 20701 includes the SVRL based on its textual similarities to the NVRA. Rather, the Attorney General argues for an expansive reading of § 20701 based on other courts' expansive readings of the NVRA. This argument is too attenuated to assist this Court in interpreting the language of Title III itself.

The Attorney General then challenges *Benson*'s interpretation of the term "comes into possession." (Doc. 35 at 11.) To start, the Attorney General contends that *Benson* misinterpreted that phrase and "refer[ed] to it as a 'pedantic distinction' and faulting Congress for the confusion." (*Id.*) This characterization of *Benson* is disingenuous. *Benson* noted that "[i]f the distinction between voter registration applications and voter registration lists is overly pedantic, it is a pedantic distinction made by Congress." 2026 WL 362789, at *10 (emphasis omitted). However, *Benson* never asserted that the phrase "comes into possession" creates a pedantic distinction. Indeed, earlier in the opinion, the

---

[4] Other courts disagree with *Lamone*'s finding on this point. *See, e.g.*, *Benson*, 2026 WL 362789, at *6 ("[A] natural reading of § 20507(i) suggests that it requires states to disclose information regarding the process by which they maintain their voter registration list but not the list itself.).

court expressly disavowed the notion that "a distinction between voter registration applications and the voter registration list . . . may seem needlessly pedantic" by pointing out the salient differences between these documents. *Id.*

The Attorney General next argues that the phrase "come into his possession," "focus[es] on *how* and *when* the officer gains possession of the records or documents in the first instance. (Doc. 35 at 11.) This argument is unconvincing. Even accepting the Attorney General's proffered interpretation as tenable in isolation, it does not work in Title III's broader context. *See King*, 576 U.S. at 474 (noting that courts have a duty "to construe statutes, not isolated provisions" (citation modified)). As discussed, the Attorney General's interpretation places § 20702 in conflict with multiple provisions of the NVRA and HAVA. For example, the NVRA expressly allows states to develop a "program . . . to systematically remove the names of ineligible voters from the official lists of eligible voters." § 20507(c)(2)(A). However, if the SVRL were deemed a § 20701 document, § 20702 would preclude the state from altering the SVRL. The Court must avoid such an interpretation of Title III.

Finally, the Attorney General argues that "[n]owhere does Title III limit the information the Attorney General may receive." (Doc. 35 at 12.) This argument is not accurate. Section 20703 only allows the Attorney General to request § 20701 documents. Even if § 20701 includes a categorically "sweeping" number of documents, *see Lynd*, 306 F.2d at 226, it is not limitless.

In short, the Attorney General fails to convince this Court to abandon *Benson*'s logic. Neither does the Attorney General otherwise convince this Court that the SVRL is a § 20701 document. Accordingly, the Court will dismiss the Attorney General's claim with prejudice because amendment would be legally futile.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED granting** Secretary Fontes' Motion to Dismiss (Doc. 25) and dismissing the case.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment and terminate this case.

Dated this 28th day of April, 2026.

_____
Honorable Susan M. Brnovich
United States District Judge

- 13 -